**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

United States of America ex rel.

**EUGENE RHOINEY #A15243**
(Full name and prison number)
(Include name under which convicted)

PETITIONER

vs.

**Mc CANN**
(Warden, Superintendent, or authorized
person having custody of petitioner)

RESPONDENT, and **People of ILLINOIS**

**(Fill in the following blank only if judgment
attacked imposes a sentence to commence
in the future)**

ATTORNEY GENERAL OF THE STATE OF
**Cook County ILLINOIS**
(State where judgment entered)

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

08CV4261
JUDGE KENNELLY
MAG. JUDGE BROWN

CASE NO: _____
(Supplied by Clerk of this Court)

**F I L E D** LCW

JUL 2 8 2008
JUL 28 2008
**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

Case Number of State Court Conviction:

**No. 1 - 05 - 2489**

---

**PETITION FOR WRIT OF HABEAS CORPUS – PERSON IN STATE CUSTODY**

1. Name and location of court where conviction entered: **Cook County Circuit Court**
   **Chicago ILLINOIS**

2. Date of judgment of conviction: **SEPTEMBER 26th 1989**

3. Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)
   **FIRST DEGREE MURDER**

4. Sentence(s) imposed: **NAtural Life No ParoLL**

5. What was your plea? (Check one)     (A) Not guilty     ( ✓ )
                                         (B) Guilty          ( )
                                         (C) Nolo contendere ( )

   If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

   _____

   _____

Revised: 7/20/05

## PART I – TRIAL AND DIRECT REVIEW

1. Kind of trial: (Check one):    Jury ( ✓ )        Judge only ( )

2. Did you testify at trial?    YES ( )        NO    ( )

3. Did you appeal from the conviction or the sentence imposed? YES ( ✓ ) NO ▓

   (A) If you appealed, give the

   (1) Name of court: *FIRST DISTRICT ILLINOIS APPELLATE COURT*

   (2) Result: *FINLEY MOTION WAS FIELD by Appellate lawyer*

   (3) Date of ruling: *JUNE 28 th 1993*

   (4) Issues raised: *FINLEY MOTION WAS Field, Therefore NO Issues of State OR Federal LAW And CONSTITUTIONS WAS NOT DIVISED. ALL issues WAS side stepped by FINLEY MOTION INEFFECTIVENESS –*

   (B) If you did not appeal, explain briefly why not:

   _____

4. Did you appeal, or seek leave to appeal, to the highest state court? YES ( ✓ )    NO ( )

   (A) If yes, give the

   (1) Result: *Denied, conviction Affirmed*

   (2) Date of ruling: *February 2nd 1994*

   (3) Issues raised: *Finley Motion Granted by Appellate Counselor which left Petitioner without the one single oppitunity to Argue the Violations of LAWS And Due-process*

   (B) If no, why not: _____

5. Did you petition the United States Supreme Court for a writ of *certiorari*? Yes ( )  No ( ✓ )

   If yes, give (A) date of petition: _____ (B) date *certiorari* was denied: _____

Revised: 7/20/05

**PART II – COLLATERAL PROCEEDINGS**

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

   YES (✓)   NO ( )

   With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

   A. Name of court: Cook County Circuit Court

   B. Date of filing: MARCH 17th 1994

   C. Issues raised: Violation of Due pro-cess, Perjury, INEFFECTIVENESS Asistance of Lawyer, ILLEGAL ARREST, JURY PICKing when BLACKS WAS being excluded with out given A reason

   D. Did you receive an evidentiary hearing on your petition?    YES ( )   NO ✓

   E. What was the court's ruling? Denied evidentiary hearing

   F. Date of court's ruling: MARCH 28th 1994

   G. Did you appeal from the ruling on your petition?    YES (✓)   NO ( )

   H. (a)   If yes, (1) what was the result? Denied Petition APPELLATE Lawyer Finley MOTION

           (2) date of decision: December 27th 1995

     (b)   If no, explain briefly why not: _____

   I. Did you appeal, or seek leave to appeal this decision to the highest state court?

   YES (✓)   NO ( )

     (a)   If yes, (1) what was the result? DENIED

           (2) date of decision: APRIL 5th 1995

     (b)   If no, explain briefly why not: _____

3

Revised: 7/20/05

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?     YES (✓)          NO ( )

    A. If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

        1.   Nature of proceeding      2-1401

        2.   Date petition filed      October 4th 1993

        3.   Ruling on the petition      DENIED

        4.   Date of ruling      JANUARY 27th 1994

        5.   If you appealed, what was the ruling on appeal?      DENIED

        6.   Date of ruling on appeal      October 6th 1994

        7.   If there was a further appeal, what was the ruling ?

        8.   Date of ruling on appeal      JUNE 28th 1993

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**?     YES ( )     NO (✓)

    A. If yes, give name of court, case title and case number: _____

_____

    B. Did the court rule on your petition? If so, state

      (1) Ruling: _____

      (2)  Date: _____

4. With respect to this conviction or sentence, are there legal proceedings pending in any court, other than this petition?     YES ( )          NO (✓)

If yes, explain: _____

_____

_____

_____

_____

_____

_____

Revised: 7/20/05

## PART III – PETITIONER'S CLAIMS

1. State briefly every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground.. You may attach additional pages stating additional grounds and supporting facts. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

(A) Ground one  Police did not have no Reason to Arrest me or hold me
    Supporting facts (tell your story briefly without citing cases or law):

A    IN Police detention over a day, As They went out and sought out people who would make criminal statements Against me! Before my illegal Arrest Police had my girl friend to call home and tell me to pick her daughter up from school because she would not finish taking A Lie detective test. Police Knew where I was and where I'll be; So they could have easy gotten An arrest warrant from A Judge, IF they had Any criminal statements against me, IT WAS Aproximatly 2 days before police officially Arrested me and falsified An confession statement doing this illegal detention. Connecting my physical Actions in committing this crime. Police Reports clearly establish no statements against me with days of incarceration nor A confession To Police or A.S.A. As It states: I Refuses to give statements.

(B) Ground two _____ SELECTIVE PROSECUTION Police And A.S.A. had 6
    Supporting facts:

other People giving the same statements against EYEWITNESS and his Brother. Which so happenly they had this Bloody Fight with victim on the DATE claimed for victim murder to have taken place. I was selective out of all the statements and criminal confessions; Accordouly to A.S.A. reasons for only bringing First degree MURDER charges upon me. IF I had of cooperated and lied on some suspects I would not have been charged with this Murder, Plus since A.S.A. said: She brought charges upon me only After reviewing the Police Reports. Both brothers And All other People that gave Police statements All Admitted in their statements victim only Fight was with both brothers EVEN victim girl girl Admitted to Police of A hostil verbal fight between victim And EYEWITNESS BROTHER. Also Another witness gave Police A statement she witness Petitioner Co-Defender Jumping and Stumping up and down on victim head

5

(C)  Ground three   Conviction and INDICTMENT WAS founded upon Perjury
Supporting facts:

Police Reports states: I never gave A.S.As No Kind of statement, But she lied and her statement of my alledged confession was Identical to the only STATE WITNESS. Police Reports and Trial Testimony where completely different. Every one who Testified before the Grand Jury that indicted me, Gave False Testimony Accordenly to Police Reports which also makes this conviction VOID, PLUS STATE PROSECUTOR USE IDENTICAL FALSE STATEMENTS To give Credibility to their only witness.

(D)  Ground four   VIOLATION OF DUE-PROCESS Accordently to
Supporting facts:

Police reports EYEWITNESS GAVE ACCOUNTABILITY AND ACCESSARY To MURDER IN his Statement helping his brother Fight victim, But the jury never heard of the deal he made to give subordenated False testimony to help secure A conviction, Prosecutor lead Jury to beleave witness was AN innocent by-stander and He went straight to the nearest Phone and Reported this crime To Chicago Police, NOR DID the JURY learn ALL the different statements witness gave. Such deals was never disclose untill over heard in a Chicago housing Pro-Jet elevator

2.  Have all grounds raised in this petition been presented to the highest court having jurisdiction?

YES (✔)  NO ( )

3.  If you answered "NO" to question (2), state briefly what grounds were not so presented and why not:

6

## PART IV -- REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A)   At preliminary hearing _____

(B)   At arraignment and plea _____

(C)   At trial _____

(D)   At sentencing _____

(E)   On appeal _____

(F)   In any post-conviction proceeding _____

(G)   Other (state): _____

## PART V – FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES (   )   NO (   )

Name and location of the court which imposed the sentence: _____

Date and length of sentence to be served in the future _____

     WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on:  _____          _____
                  (Date)                    Signature of attorney (if any)


                                   **I declare under penalty of perjury that the foregoing is true and correct.**

                                   _____
                                   (Signature of petitioner)

                                   _____
                                   (I.D. Number)

                                   _____
                                   (Address)

7

Revised:  7/20/05

(E) Ground Five INEFFECTIVE ASISTANCE ON TRIAL Lawyers And Appeal Lawyers

Supporting Facts:

Ineffectiveness before triaL Simply because All Pre-TriaL motions should and could have gotton the (2) two people who testifid Against me for the state proseautor, impeached by the use of documents in Police reports before Arrest. One of TriAL counselors Admitted to the Bar Association After I field a complaint Against her. That she made NO Attempts to inperch no one out the two statement given against me; Because witness never said he witness Petitioner committ this murder. But Experts claim victim was Killed by hits upon his head. The Same testimony wittness gave to Petitioner Jury TriAL.

TriAL counselor surly could have impeached All witnesses by police reports Alone even with out the experts testimony ER The Experts was very much impostas and Rendered False Death Certificate And cause of Death.

Also All triAL counselors As well As Appeal counselors was shown where Petitioner clearly refused to speak with A.S.A. by the Police reports before the Arrest and no mention of ever speaking to the STATE PROSECUTOR. ALL REPRESENTATION FAN way below standards And left Petitioner an unarmed infant in A Lions Den. Also If Any Lawyer had of mentioned or brought to the jury Attention or an Court on Appeal the Expert Findings on the DATE of Death contradicts the STATE PROSECUTOR WITNESSES and A.S.A. alledge confession. Which No Doubt such Expert findings was Know to the state mouths before Petitioner Arrest OR Expert was an IMPOSTER. Also on Direct Appeal ud on every Post-conviction the Lawyers on Appeal Filed Finley Motions I never Attempted to Admend my Appeal for the one sigle single nity for relief that was so require after A glance of my claims.

CONTINUE:(E) GROUND FIVE: INEFFECTIVE ASSISTANCE
OF COUNSELORS

Pre-Trial counselor could have impeached the arresting
Police detectives doing Durash Arrest motions, by getting
A Court ORDER To prove this child was at school on the
date and day of Petitioner arrest As police claimed
this child never went to school this day, That they
took this child to her grandmom house so they could take
her mom to the Police station FOR A Lie-Detective test. Also
Petitioner had to sign and show Identification every time he
picked this child up from school. This Also was A scheme
to keep Petitioner home so they could force him to the Police
STATION AND ATTEMPT TO CONVINCE PETITIONER TO LIE GIVE
FALSE STATEMENTS TO EVENTS PETITIONER NEVER WITNESS

1-05-2489

IN THE

Appellate COurt of ILLINOIS

FIRST DISTRICT THIRD DIVISION

EUGENE RHOINEY,
Petitioner-Appellant

   -vs-

PEOPLE OF THE STATE OF ILLINOIS

Appeal from the Circuit Court

of Cook County, Illinois

    No.88 CR 6091 (02)

Honorable James M. Schreier
Judge Presiding

NOTICE OF WRIT OF MANDAMUS OR SUPERVISORY
AUTHORITY ORDER, FOR RELIEF FROM JUDGEMENT
ORDER OF MARCH 21,2007 TO THE ILLINOIS
SUPREME COURT UNDER VIOLATIONS OF DUE
PROCESS CRIMINAL LAW SUPREME COURT RULES
614, 615, 609, 23(a)(b) 3. (f)

    Now comes Appellant petitioner Eugene Rhoiney pro-se pursuant
to the caption motion style set above. Requesting that this
Honorable Court grant him relief and vacate it's order of March 21,
2007.To prevent the Illinois Supreme Court from using it's judicial
powers to over turn the Appellate Court improper order of granting
the appellate counselor Finley Motion and affirming the Circuit
Court denial of a evidentrary hearing, and appellate counselor claim
of no other meritourous claims to be raised.

        In SUPPORT OF THIS CLAIM PETITIONER STATES

1.   A post-conviction petition accompanied by affidavit and supporting
trial records was file on March 2005, and police investigation reports
was filed, which was denied under S.Ct.Rule 651,May 2005.

2.,  Motion for reconsideration was filed to the Circuit Court and
denied.

3.   Notice of appeal was filed July 14, 2005, to the Appeallate Court
of Illinois First District, Third divison.

4,   The Illinois Appeallate defender office was appointed to repre-
sent me on appeal July 22,2005.

5.   Appellant was not appointed an attorney to handle his case to
represent his appeal, until a year passed by before appellant got
his transcripts. Which was August 8, 2006.

6.    After appeallant read the transcripts, and notice in the
transcripts it stated. I was deied in the Circuit Court for a suc-
cessive post-conviction petition. Which the Circuit Court Order,
that was sent to petitioner, stated that petitioner was denied under
Supreme Court Rule 651. Which appellant filed a motion for recon-
sideration to this Supreme Court Rule 651, because appellant never
recieve the death penalty or had a hearing for the death penalty, and
the obviovs the circuit court ignored his affidavit, which stated
perjury at his trial and violations of Due Process, and Prosecutor
misconduct.
7.    Finally appellant was a pointed a attorney to handle his case,
behind this letter to the Deputy Defender Micheal J.
in concern of (2) different reasons why the Circuit Court denied his
post-conviction accompanied by an affidavit and trial records, support-
ing his affidavit. Attorney was appointed on August 21, 2006.
8.    This attorney contacted me by letter dated August 21,2006
inforning me, that she has appointed to represent me and is in the
process of reading my 21 page transcript from the lower court denial
of my post-conviction petition and that she will set up a phone c
conference for the near future and for me to have any questions and
matters ready, that I want to address with her.
9.    On August 29, 2006 this appellate counselor arrang ed this
phone conference that did not last 10 minutes at the most 15 minutes,
because as soon as ahe began to talk, she told me the guy that
give me the sworn affidavit, gave me hear-say evidence, so I imediately
said: He did not hear this from a second party, He heard this direct
from the state prosecutor eye witness. This attorney interrupted me
before I could finish speaking to tell her about the deal this eye
witness had to make and the A.S.A. false confession that was
identical to witness, whom just so happenly admitted to the investi-
gating Chicago Police why he committed the crime of concealment of
murder and his personal involvement in this crime. This very brief
phone encounter was meaningless inadequate and was basically to juat
inform me the hear-say and let me know her mind was already made up
and she would asist me on appeal.

10.    On August 31.2006 after my phone conversation with my asigned
attorney she Filed a Finley motion and motion to draw as counselor.
In this motion she introduce my dirrect appeal and other petitions
that this office has filed a Finley motion on. Which no doubt opens
the gate for me to respone to, which started at the behest of a c
conflict of interest for their office to even accept and handle my
dirrect appeal, since my original trial lawyer made bad decisions
and a bandoned me and started working for the Illinois Appellate
Defender Office First District and who was asigned to me on dirrect
appeal, which I imediately wrote and requested for a different
attorney. I wanted other representation than this appellate Defender
Office. It was a confict of interest and surly I up set this office.

                          CONCLUSION
    Appellant prays this Honorable Court render just one more
order/ruling on the facts presented and the integrity of the law.
Which would no doubt give appellant a counselor to represent him
on appeal to asist him with the oppitunity that the law requires.
To have a trial most iportant free from perjury and manufacture
evidence and finally a real level of asistance of a conselor once
this cause is reverse and remanded as the law require and or any
other justice this Honorable Court deems suita suitable.

No. 1-05-2489

IN THE
SUPREME COURT OF ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT THIRD DIVISION                    Petition for a
ILLINOIS FIRST DISTRICT APPELLATE
DEFENDER                                         Writ of Mandamuss
                                                    or a
-vs-                                             Supervisory Order

EUGENE RHOINEY APPELLANT

ILLINOIS SUPREME COURT RULES
ILLINOIS STATUES AND CONSTITUTIONS

                               MOTION FOR STAY UNTILL APPELLATE COURT
                               RESPONE TO MOTION FOR RECONSIDERATION
                               OR AND ENFORCEMENT OF ILLINOIS RULESand
                               STATUES TO MAKE APPELLATE COURT REVERSE
                               IT ORDER AND RETURN A ORDER COMPARABLE
T                             TO ILLINOIS PROCESS METHODS OF LAW STATUES

    Now comes Appellant petitioner EUGENE RHOINEY pro-se
pursuant TO Illinois Due process Criminal law and Supreme
Court rule 23(a) and Supreme Court rule 615(a)(B) and 609
untill Supreme Court Direct the Appellate Court to Reverse,
Remand this case back to Circuit Court with Instructions

    IN SUPPORT THEREOF, Appellant petitioner submits the
attacked affidavit and Issues of Jurisdiction for Illinois
Supreme Court to mandate ORDER reversal new trial or release
from incarceration.

EUGENE RHOINEY                          Respectfully Submitted by:
STATEVILLE CORRECTION                   /s/ *Eugene Rhoiney*
Ə  P.O. BOX 112                             pro-se petitioner
Joliet Illinois 60434

No. 1-05-2489

IN THE

SUPREME COURT OF ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS

-vs-

EUGENE RHOINEY APPELLANT AND
ILLINOIS UPREME COURT RULE 23(a)
AND ILLINOIS STATUES AND CRIMINAL
DUE PROCESS LAW

SUPERVISORY ORDER
or
WRIT OF MANDAMUS

No. 88 Cr 6091

CHARGE MURDER

JURISDICTION

Jurisdiction of The Illinois Supreme Court is invoked under
the provisions of Supreme Court Rule 614,615,315 (A) (b)
368 (b) (c) and 23 Supreme Court rules 23,(b)3.(f) Rule 615
(a) (b)1,2,3,4,5. 613(a)(b)

VENUE

2.    Venue is proper underr the provisions of the Illinois
constitution and the Illinois Supreme Court writ of mandamus
Supervisory Authority ORDER In the event giving rise to the Illinois
Constitutional violations and conflicts under minding Supreme
Court rules and to the Supervisory mamdamus Authority ORDER
request,that occured within this Illinois Supreme Court Judicial
District..

No. 1-05-2489

IN THE

SUPREME COURT OF ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS    |   Petition for a
APPELLATE COURT OF ILLINOIS      |   writ of mandamu
FIRST DISTRICT THIRD DIVISION    |      or a
ILLINOIS FIRST DISTRICT APPELLATE |   Supervisory ORDER
DEFENDER OFFICE                   |

vs.                              |

EUGENE RHOINEY APPELLANT       |
ILLINOIS SUPREME COURT RULES    |
ILLINOIS STATUES and CONSTITUTIONS |

AFFIDAVIT OF EUGENE RHOINEY

EUGENE RHOINEY being first duly sworn on oath, deposes and states as follows;

1.    I filed post-conviction petition accompanied by affidavit and trial records on

2.    My post-conviction petition was denied on May 3rd 2005, under Supreme Court Rule 651.

3.    1 filed a motion for Reconsideration on May 26, 2005, which was denied June 20, 2005.

4.    I file notice of appeal to the Illinois Appellate Court July 14,2005.

5.    Illinois Appellate Defender Office was appointed on July 22,2005.

6.    I recieve an Appellate Defender Office package on how they deal with cases they are appointed to handle, and informing me how as soon as a lawyer become available, one would be appointed, to handle my case.

7.    August 8, 2006 I recieve transcripts from the Appellate Defender Office on the proceedings of my Post-Conviction Petition. Exhibit attached# /

8.    On August 20, 2006 I wrote the Appellate Defender Office Michael J. Pelletier in concern of two different circuit court reasons as why I was denied and that I only recieve one, that was not mention in transcript and other events listed in transcript I never recieve knowledge of. Exhibit Attached# *2*

9.    On August 21, 2006 I was wrote a letter by an Asistance Appellate Defender Maria A. Harrigan, informing me she has been asigned to my case to represent me, and she was in the process of reading my 21 page transeript and will set up a telephone conferrence soon and for me to be prepared to ask and answer any question in concern of my appeal. Exhibit Attached. *Exhibit #3*

10.   On August 29, 2006 I recieve a telephone conference for i5 minutes or less with my asigned counselor, see Exhibit attached *#4*

11.   I wrote to Appellate Court after my 15 minute phone conference, requesting different representation.

12.   Appellate Counselor filed a Finley Motion 2 days after our first personal contact discussing my appeal, which was less than 15 minutes on August 31, 2006.

13.   Also August 31, 2006 counselor wrote me tell me her and another attorneys conclusion, as to why she filed a Finley motion and informing me what to do next. If I chose not to surrender with her decision to stay in prison the rest of my entire life. see exhibit attached# *5*

14.   After finley motion was filed, the next date September 1, 2006 the Appellate Counselor motioned the court for missing volumes. See exhibit # *6*

15.   I wrote a respones to the Finley motion and attacked the issues that had merit, that appellate counselor introduce in Finley Motion, that clearly convincingly pointed out Due Process Violations, false perjury testimony and inadmissable evidence that was use, alone with the showing of a conflict of interest for appellate counselor to stay the course and grant me the one single oppitunity to be represented on appeal on such issues, that she equally admitted to that perjury was present from trial records alone, with out an evidentrary hearing. Which should have been raised by her firm, office on

2.

dirrect appeal, see police recorts, M.D. examiner reports, eye witness rap sheet no charges of murder. Which in all makes my conviction based solely upon perjury and false stateements and state prosecutor in violation of misconduct, with selective prosecution and Due Process. see Respones to Finley Motion. *ex #7*

16.    The Appellate Court denied me and affirm the Circuit Court Ruleing and granted appellate counselor finley motion, because appellate counselor pointed the other evidence would have still got me convicted of this murder with out the star key eye witness perjury testimony on march 21, 2007 which must be contruched that a conviction can stand on complete perjury false material evidence or that a new trial need not be ordered to hear and decide with out perjury false testimony as a matter of right and fundamental fairness. see attached Appellate Court order and appellate counselor reason as to why conviction would still stand as to why her Finley was granted. see attached #8

17. I I filed a motion for Reconsideration to the Appellate Court on April 8th, 2007 within the time frame require and allowed, with in 15 days upon my reciept of denial. And shortly there after I admended my motion for reconsideration since the appellate court had not ruled responded to my motion for reconsideration on May 21, 2007 *SEE EX. 9 EX#9*

18.    I crystal clearly pointed out several other meterious claims that should been raise on Appeal by Appellate counselor, Such as deals made that jury never heard of for eye witness to testify falsely. The issue that jury never heard I refues to speak with A.S.A. that gives false testimony of a confession of guilt from me which was the same Identical testimony as the Star eye witness. I pointed out the deal that eye witness bragg on that he considered Sweet for him and his brother. That is being unnoticed, see affidavit exhibit #10

19.    I pointed out the facts of the records A plain conflict which either way decided stills grants me a new trial by Law Illinois statues, Supreme Court rules, presidented leading cases in the First District third Division Appellate court of Illinois which makes Expert M.D. EXAMINOR A IMPOSTER uncertified with false findings and testimony or all other evidence complete manufacture perjury false testimony

20.     Chief-en-case I pointed out how witness testified, how
and when I struck victim across the leggs and than that I imediattely
left the scene and after I was gone how victim picked up A bar stool
and ran across the basement and attacked eye witness brother across
the back with bar stool When expert gave examination findingg
that victim could not stand or move after he was struck across the
leggs. Which once again is A mertorious issue expert being A
IMPOSTER or witness given material false perjury testimony.

21.     I points in witness police reports how he confess to
his involvement in victim death and why he concealed the Murder
which is a murder charge for his involvement and not reporting
murder to police. Which proves eye witness bragging on why he
gave false testimony at Appellant trial was true and he was given
prosecutor leniency, which the jury never heard. No doubt
violates Due-process.

22.     I never recieved Appellate Court final entry ORDER on
my Motion and Admended Motion for reconsideration, which I
HAVE MADE ATTEMPTS TO THE Appellate Court clerk and to stateville
IDOC FOR MAIL RECORDS, BECAUSE THIS TIME FRAME SEEMS TO BE OUT
STANDING since the Appellate court already have documents
covering these issues raised for reliéf sought See Exhibit# 9) Exhibit# 11

24.     I produced the police reports records where the A.S.A.
attempted to speak with me in concern of this case and 2 police
detectives investigators stated they where present and I refues
to speak with her, which also makes the Finley Motion and
the Appellate Court ORDER of March 21,1007 in violation to the
government and the fore farthers who wrote the laws and constitution
that gurantee the public comminity fairness,  Qoute ,A.S.S. never
said re-interview or attempted to reinterview, whichmmeans
never a interview from me with A.S.A.  and the law reads once
I refues to speak with her the interigation must stop. The
forefarthers must be turning over in their graves with such
injustice.

25.  A.S.A. proves her self that the alledge confession was false manufacture to secure a conviction. In police report page #8. States: A.S.A. attempted to speak with appellant, But he refues, on 3/20/88 which was not an attempt to reinterview Eugene Rhoiney see exhibit #13, also see March 20,1988 redicous confession A.S.A. lied say appellant gave, but in this statement she said appellant asked for his lawyer after he said he hit victim across the head with a pipe to break up the fight. But her trial testimony surly states: pages of details of a phony confession, which also violates petitioner's due-process if he just said what she said in exhibit #13, because the interagation should have stopped imediately after he asked for his lawyer.

26.  Appellant requested these Honorable Supreme Court Judges to intervene in the Appellate Court improper ruling, while appellant sought for the appellate court reconsideration. Seeexhibit #12 which appellant writ of mamdanus or a supervisory authority order was a accept in the Supreme Court as me being a poor person. But has not yet intervene.


Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of perjurt, that I am a named party in the above action, that I have read the above documents, and that the information contained therein is true and correct to the best of my knowledge.

DATE: _June 18, 2007_

/s/ _Eugene Rhoiney_
  Eugene Rhoiney
IDOC _A-15245_
Stateville Correctional Center
P.O. BOX 112
Joliet, Il.

5.

ISSUES PRESENTED FOR
SUPERVISORY AUTHORITY ORDER
AND REVERSAL REMAND OR
EVIDENTRARY HEARING

1.    Wheather or not trial judge was improper for not granting a
evidentrary hearing. When Post-conviction Petition was accompanied
by affidavit and Trial Records supporting affidavit, which should
be taken as true. Unless a evidentrary hearing is held by Trial
Judge to determine wheather or not appellant should be granted
relief sought or not.

2.    Should Trial Judge, Appellate Court Judges and Appellate
Defender Counselor Office, let go unnoticed that keg-eyewitness
admitted that he made a deal with State Prosecutors to gi false
testimony against appellant, not to be charge with victim murder
himself.

3.    Wheather or not Appellant Due process was violated by the
State Prosecutors not discloseing the deal they made with key- eye-
witness to the Trial Jury.

4.    Should the Trial Judge warned the jury to be caution of key
eyewitness testimony, by eyewitness testimony confessed to some
involvement with victim death, But their was no kind of murder
charges against key eye witness as if he was a innocent by stander.

5.    Did State Prosecutor violate Appellant due process by leading
jury to believe eye witness was a innocent by stander good sermer-
ican by giving testimony against a friend, as if he reported murder
to police imediately which he did not report murder at all from
fear of murder charges brought against himself.

6.    Wheather State prosecutor should have corrected the false date
of death that eyewitness gave testimony that he witness appellant
comitt this crime when victim was very much alive. Which Prosecutors
knew up front the date of when victim was murdered, before any police
investigation or even before they learned who victim was.

7.    Should it go un-noticed that the jury never heard or learned
the real date of victim death, which would no doubt prove eyewitness
was giving false testimony.

8.      Wheather or not Appellant Trial counselor departed from
proffessional standards of representation, By not pointing out
all eyewitness different police statement, which all where
different from his trial testimony.

9.      Should not prosecutors attempted to correct at least one
of eyewitness false perjury statements to the jury that was material.

10.      Wheather or not m.d. Tease medical examiner was a imposter
and gave false fact findings to victim death and the wronge
date of victim death. which this M.D. TEASE have gave hundred
of sworn testimony to csriminal cases.

11.      Wheather or not eye witness, contradicted M.D. Tease
compбete examination since eyewitness gave sworn testimony to
different date of death and prove M.D. WRONG. by saying victim ran
across the basement carring A barstool and attacking eyewitness
brother, after Appellant hit victim with pipe across  the leggs when
M.D. Tease findings was victim could not walk or move after
he got hit across the leggs with the pipe.

12.      Should the Supreme Court mandate this cause back to
the circuit Court since the Appellate Court already  improperly
denied appellant an evidentrary hearing or NEW TRAIL, REVERSAL REMAND.

13.      Wheather or not Appellant, Appellate defender asistant
counselor can admit eyewitness gave false testimony, but
Appellant still would have been found guilty, even after
Appellant proved all the other evidence against him was manufactuure
by the showing of police and state prosecutor records alone.
And still refues to withdraw her Finley Motion and grant
Appellant his one single gurantee δppitunity to be represented
on APPEAL.

14.      Wheather or not Appellant Due process was violated after
Appellant proved he never gave confession, But confession was
given to Jury by A.S.A. which makes his conviction not based
larglY upon the perjury false testimony of eye witness. when
confession Ironically was Identical to eye witness testimony.

15.      Wheather Appellant is guranttee a fair trial free from
one or more material Lie.

16.    Should appellant conviction stand when victim Was alive
on the date given that appellant alledgally killed victim.

17.    Should Illinois presidented leading case law and statues
and Supreme Court rules and constitution give this Honorable
Illinois Supreme Court Judges the power to rule in appellant
favor, which would show the communities of Illinois that justice
will preveal as it so require..

18.    Wheather or not murder charges was brought against appellant
improperly, after A.S.A. admitted she only brought first degree
murder charges against Appellant after reviewing all the subspects
police statements, which every one who gave statements, Their
statements was inconsistant and contradicted their self or each
other. Yet none of them gave A statement against appellant
on the date that victim was killed or how he was killed or that
Appellant was the one who killed victim.

19.    Was appellant 5th admendment violated by A.S.A. TAKING
THE STAND GIVING FALSE TESTIMONY OF A confession, that need Appellant to
take the stand to rebukter . When it was known before trial
Appellant would not take the stand or was it a act of shifting
the burden on appellant.

20.    Wheather or not a Finley Motion was filed under. the conflict
of interest since this very same law firm represented appellant
on Direct Appeal and did not raise the issues that are presented
today, That was present all the time.

21.    Should all issues of merit be raised since Appellate
counselor claim their is no constitutional violation or merits
to raise, Which is part of the reason the Appellate Court
grantted her Finley Motion.

22.    Can this Illinois Supreme Court invoke its Jurisdiction
under the writ of mandamus or a Supervisory Authority ORDER and
ENFORCE the law, Rules and constitution upon the Appellate
Court with out them responding to appellant MOTION for reconsiderration
and Amended Motion for reconsideration.

23.     Wheather or not the Appellate Court denial should stand when it is in conflict with this very same district and division previous ruleings. As well as other Illinois Appellate Court districts.

*Ex#1*



## OFFICE OF THE STATE APPELLATE DEFENDER
## FIRST JUDICIAL DISTRICT

203 NORTH LASALLE STREET
24TH FLOOR
CHICAGO, ILLINOIS 60601
TELEPHONE: 312/814-5472
FAX: 312/814-1447

MICHAEL J. PELLETIER
DEPUTY DEFENDER

July 27, 2006

Mr. Eugene Rhoiney
Register No. A-15243
Stateville Correctional Center
P.O. Box 112
Joliet, IL 60434

Dear Mr. Rhoiney:

Attached are your transcripts. Please sign and return the enclosed receipt.

Sincerely,

OFFICE/STATE APPELLATE DEFENDER

IN THE
*FIRST DISTRICT APPELLATE*
*COURT OF ILLINOIS*

*People of the State of Illinois*
Plaintiff,

v.

*EUGENE RHOINEY*
Defendant

)
)
)   Case No. *88 CR 01691-02*
)
)
)

## PROOF/CERTIFICATE OF SERVICE

TO: *MICHAEL J. Pelletier Deputy Defender*
*OFFICE of the State Appellate*
*Defender: FIRST Judicial District*
*203 North LaSalle Street 24th Floor*
*Chicago Illinois 60601*

TO: *Appellate Court Clerk*
*First District Appellate Court of Illinois*
*160 No La Salle Suit 1400*
*Chicago Illinois 60601*

PLEASE TAKE NOTICE that on *August 20th*, 20 *06* I have placed the
documents listed below in the institutional mail at *Stateville* Correctional Center,
properly addressed to the parties listed above for mailing through the United States Postal
Service: *Letter to the Appellate defender office*
*with Exhibits. And i copy to be forwarded back to me stamp filed*
*3 copys of the same to Appellate Judges and i copy to be sent back stamp filed.*
*from the Appellate Court Clerk,*

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of
perjury, that I am a named party in the above action, that I have read the above
documents, and that the information contained therein is true and correct to the best of my
knowledge.

DATE: *August 20th 2006*

/s/ *Eugene Rhoiney*
NAME: *EUGENE Rhoiney*
IDOC#: *A-15243*
*Stateville* Correctional Center
P.O. BOX *112*
*Juliet*, IL *60434*

Revised Jan 2002

*Ex - #3*

# OFFICE OF THE MEDICAL EXAMINER
## COUNTY OF COOK, ILLINOIS

## REPORT OF POSTMORTEM EXAMINATION

NAME    (Stephen W. Edwards)
Unknown White Male     CASE NO.     522 of January 1988

AGE __35__ RACE _White_ SEX _Male_   DATE OF DEATH   01/24/88

ADDRESS OF DECEDENT Rte 522     DATE EXAMINED     01/25/88

CITY & STATE Shorewood, Ill.     EXAMINED BY    Shaku Teas, M.D.

### EXTERNAL EXAMINATION:

The body is apparently that of a 25 to 35-year-old white male, weighing 153 lb and measuring 71½ in. Rigor mortis is present throughout. Livor mortis is present in the posterior dependent parts of the body. The body is received dressed in a black sweatshirt jacket, gray and white striped shirt, a pair of blue ~~jeans with a belt, and red underwear. Also received with the~~ body is a pair of blue jeans with a gray sweatshirt, a green shirt, and a pair of black boots. Also found on the back of the body is a fragment of what appears to be a shirt that is printed. The same kind of fabric is found wrapped around the mouth and neck region.

The hair is brownish with a receding hairline. The irides are gray. The corneas are clouded. The pupils are dilated. The sclerae are white. There are multiple abrasions of the face, to be described under "evidence of injury." There is a mustache on the upper lip. The teeth are natural. Around the chin, mouth, and neck are gags. Around the superior-most mouth is a printed fabric that has been tied at the back. There are two other gags that are partially on the chin and on the neck. These consist of striped fabric with green and yellow and white stripes. These all tie at the back and will be described again under "evidence of injury."

The chest is symmetrical. There is a tattoo of a flower with the letters DFF written across it. The abdomen is scaphoid. The external genitalia are that of a normal male and circumcised. The knee region has been tied at the back with a portion of what appears to be a striped sheet. The ankles are also tied with the same kind of sheet, three times, with the knots being located posteriorly.

The wrists and hands have been tied at the back with the same kind of fabric that is seen around the neck and knee and ankle.

# MEDICAL CERTIFICATE OF DEATH

Ex. # 4

OK

Chicago

Cook

JANET EDWARDS

HAROLD W. EDWARDS

STEPHEN E. WARD

THIS WORK SHEET SHOULD BE RETAINED BY THE MAKER OF THE CERTIFICATE FOR REFERENCE PURPOSES

(Illinois Department of Public Health - Office of Vital Records - THIS IS NOT A STANDARD CERTIFICATE)

EX#4

OFFICE OF THE STATE APPELLATE DEFENDER
FIRST JUDICIAL DISTRICT

MICHAEL J. PELLETIER
  DEPUTY DEFENDER

MARIA A. HARRIGAN
  ASSITANCE APPELLATE DEFENDER

August 29th 2006

Dear Maria Harrigan
    I am writing you in regards to After our
Phone conversation. I went back to my cell to
Check and make sure, I had a complete copy of All
the documents I mailed to the Court and your office.
    I fill, I am missing a page or two from my
own personal records. So do you mine sending me
A copy back as you suggested over the phone. Stamped
the DATE RECIEVE.

    Also the statement you made to me during
our very brief phone conversation: About how you and
your office decided that my Newly Discovered Evidence
to my Actual innocent claim was Hear-Say. I did
not want to discuss this Issue over the phone, Because
It was our First conversation and I totally disAgreed with
that decision that you and your office made. My Witness
was present when the state Star witness DYES made the
confession statement. So therefore it would not fall under
hear-say

                    Thank You Sincerely
                    Eugene Rhoiney
                    Eugene Rhoiney
                    A-15243

*EX.# 5*



# OFFICE OF THE STATE APPELLATE DEFENDER
## FIRST JUDICIAL DISTRICT

**203 NORTH LASALLE STREET
24TH FLOOR
CHICAGO, ILLINOIS 60601
TELEPHONE: 312/814-5472
FAX: 312/814-1447**

**MICHAEL J. PELLETIER**
DEPUTY DEFENDER

August 31, 2006

**MARIA A. HARRIGAN**
ASSISTANT APPELLATE DEFENDER

Mr. Eugene Rhoiney
Register No. A-15243
Stateville Correctional Center
P.O. Box 112
Joliet, IL 60434

Dear Mr. Rhoiney:

As we discussed in our phone conversation, after reading your trial transcripts several times, researching possible issues and discussing your case with another attorney, who has also read the transcripts, I have concluded that there are no meritorious issues to be raised on your behalf. Therefore, I have filed the enclosed *Finley* motion which explains to the court that there are no meritorious issues and asks that I be permitted to withdraw as counsel. If the court allows my motion, your conviction and sentence will stand.

The decision that there are no meritorious arguments to be made does not prevent you from bringing matters to the appellate court's attention. You can do so by a letter to the court objecting to my motion. But you must do so as soon as possible, as the court could rule on the motion within 30 days. The address is: First District Appellate Court, 160 North LaSalle, Suite 1400, Chicago, Illinois 60601.

I am very sorry that there is nothing I can do in your case. Should you have any questions, please do not hesitate to contact me.

Sincerely,

MARIA A. HARRIGAN
Assistant Appellate Defender

*EX # 6*

No. 1-05-2489

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 88 CR 6091 (02). |
| | ) | |
| EUGENE RHOINEY, | ) | Honorable |
| | ) | James M. Schreier, |
| Petitioner-Appellant. | ) | Judge Presiding. |

## MOTION TO SUPPLEMENT THE RECORD ON APPEAL
## WITH 4 VOLUMES OF RECORD INSTANTER

Appellant, Eugene Rhoiney, by Michael J. Pelletier, Deputy Defender, and Maria A.

Harrigan, Assistant Appellate Defender, Office of the State Appellate Defender, respectfully

requests leave to supplement the record on appeal with 4 volumes of record instanter.

In support of this motion, Maria A. Harrigan states:

1.     Appellant's petition for post-conviction relief was dismissed on June 20, 2005 by

the Honorable James M. Schreier.

2.     Defendant is currently incarcerated.

3.     Notice of appeal was filed on July 14, 2005.

4.     The Office of the State Appellate Defender was appointed on July 22, 2005.

5.     Motion to withdraw pursuant to *Pennsylvania v. Finley* was filed on August 31,

2006.

6.     The proposed supplemental record consists of defendant's previous appeal

Final Response

FILED
APPELLATE COURT 1st DIST.

OCT 1 1 2006

STEVEN M. RAVID
CLERK

No.1-05-2489
IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

EUGENE RHOINEY,
Petitioner-Appellant,

-vs-

PEOPLE OF THE OF ILLINOIS

Appeal from the Circuit Court
of Cook County, Illinois

No.88 CR 6091 (02)

Honorable
James M. Schreier,
Judge Presiding

RESPONES TO APPELLATE
COUNSEL FINLEY MOTION
AND MOTION TO WITHDRAW

The office of the State Appellate, has always represented
petition    on Appeals, Direct and post-conviction petitions, with
the exception of one post-conviction appeal, that the Appellate
Court assigned a different lawyer. Which all representation on
appeals was inffective.

In support of this respones petitioner states:

1. Petitioner-Appellant, Eugene Rhoiney was convicted for first
degree murder under perjury and manufactored evidence. Appellate
Defender office represented him on appeal in the appellate
court. His conviction and sentence were affirmed on direct
appeal . Because no briefs was filed on ineffectiveness assistanc
of trial lawyer or on the perjury that clearly was in the
Trial transcripts on direct appeal in appellate court number
(1- 89--2891 ) see People v. Rhoiney 252 Ill. app. 3d. 320
( 1st Dist. 1993 ) Also Trial cou rt showed bias and prejudice
not granting petition equal protection of the law.

2 .  On May 2, 1990, Rhoiney petitioner filed a 2-1401
petition, which was denied on June 20, Because petitioner
had no reasonable level of assistance of counsel, see 2page
transcript of hearing. Also petitioner place of incarceration
was on lock down,  Which means no phone calls and no law
Library and late mail, See prison lock down dates.

3. On October 4 , 1993 pet tioner filed a state habeas
petition, In hopes that petitioner could get a court to review
all the constitutional violations. That he raise on post-conviction
petitions that the Trial court never decided nor rule on the claim
and that the appellate defender office never filed a brief

charged. (C. 52) Rhoiney attached to his petition affidavits from himself, Terrence Sims, and

Christopher Askew stating that this conversation occurred. (S.C. 2-4) Although Rhoiney fails to

explain this in his petition, Ray is most likely Ray Robinson, who was at the Pierce home on the

day of the offense, and "Dave" is Roosevelt Dyes, who testified for the State at trial. (T.C. 22;

T.R. 639-640, 810) However, even assuming these conversations occurred and their content

was factual, there is no allegation of who actually committed the offense, there is no affidavit

from Dave or Ray, and no showing of how this evidence, which consisted of conversations

overheard by persons not involved in the offense, could change the result on retrial. Therefore

Rhoiney's actual innocence allegation did not meet the standard for claims of actual innocence in

successive post-conviction petitions. *See People v. Morales*, 339 Ill.App.3d 554, 565 (1st Dist.

2003) (actual innocence claim supported only by affidavits which contained inadmissible

hearsay, and unpersuasive inconclusive evidence did not contain new, material evidence

sufficient to alter the outcome on retrial).

　　　For the reasons stated herein, counsel has concluded Rhoiney's claim of actual innocence

is non-meritorious. Therefore, counsel should be permitted to withdraw.

　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　MICHAEL J. PELLETIER
　　　　　　　　　　　　Deputy Defender

　　　　　　　　　　　　MARIA A. HARRIGAN
　　　　　　　　　　　　Assistant Appellate Defender
　　　　　　　　　　　　Office of the State Appellate Defender
　　　　　　　　　　　　203 North LaSalle Street - 24th Floor
　　　　　　　　　　　　Chicago, Illinois 60601
　　　　　　　　　　　　(312) 814-5472
　　　　　　　　　　　　COUNSEL FOR PETITIONER-APPELLANT

8

*EX #8*

*NOTICE*
The text of this order may be
changed or corrected prior to the
time for filing of a Petition for
Rehearing or the disposition of
the same.

No. 1-05-2489

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| v. | ) | No. 88 CR 6091 |
| EUGENE RHOINEY, | ) | Honorable James M. Schreier, |
| Defendant-Appellant. | ) | Judge Presiding. |

O R D E R

Following a 1989 jury trial, defendant Eugene Rhoiney was convicted of first degree murder and sentenced to natural life in prison. That judgment was affirmed on direct appeal. People v. Rhoiney, 252 Ill. App. 3d 320 (1993). The Illinois Supreme Court denied defendant's petition for leave to appeal. People v. Rhoiney, 154 Ill. 2d 567 (1994).

Defendant subsequently filed a pro se petition for a writ of habeas corpus which was dismissed by the circuit court of Will County for failure to state a cause of action. The Third District of this court affirmed that judgment on appeal. Rhoiney v. Godinez, No. 3-94-0120 (1994) (unpublished summary order under Supreme Court Rule 23). The Illinois Supreme Court denied defendant's petition for leave to appeal. Rhoiney v. Godinez, 157 Ill. 2d 522 (1994).

1-05-2489

<u>Finley</u>.  <u>People v. Rhoiney</u>, No. 1-98-2760 (1999) (unpublished order under Supreme Court Rule 23).  The supreme court denied defendant's petition for leave to appeal.  <u>People v. Rhoiney</u>, 189 Ill. 2d 698 (2000).

In April 2005, defendant filed the instant successive <u>pro</u> <u>se</u> post-conviction petition, his fourth, alleging that he had new evidence to support his claim of actual innocence.  The circuit court summarily dismissed that petition, and subsequently denied defendant's motion to reconsider the dismissal.

Defendant appealed and the State Appellate Defender, who was appointed to represent him, has filed a motion for leave to withdraw as appellate counsel based on her conclusion that there are no meritorious issues to be raised.  The motion was made pursuant to <u>Finley</u> and is accompanied by a brief.  Defendant submitted a response.

In compliance with the mandate of <u>Finley</u>, we have carefully reviewed the record in this case, the aforesaid brief and defendant's response and have found no issues of arguable merit. We therefore grant the motion of the State Appellate Defender for leave to withdraw as counsel and affirm the judgment of the circuit court of Cook County.

Affirmed.

KARNEZIS, J., with THEIS, P.J., and GREIMAN, J., concurring.

- 3 -

*EX# 9*

No.1-05-2489
IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

ILLINOIS APPELLATE DEFENER          ⎪ Appeal from the Circuit Court
OFFICE FIRST DISTRICT and ILLINOIS  ⎪ of Cook County, Illinois
APPELLATE COURT THIRD DIVIISION     ⎪
                                    ⎪ No. 88 CR 6091 (02).
-VS-                                ⎪
                                    ⎪ Honorable Schreier, James M.
EUGENE RHOIEY                       ⎪ Judge Presiding.
ILLINOIS SUPREME COURT RULE         ⎪
23(a)                               ⎪

MOTION FOR RECONSIDERATION FROM COURT
ORDER TO GRANT FINLEY MOTION, MOTION TO
ENFORCE RULES CONSTITUTTIONAL RIGHT 110
K 641. 13 (7) and MANDATE CAUSE BACK TO
THE CIRCUIT COURT UNDER THE ILLINOIS
SUPREME COURT NEW RUL 23 (A) WITH
INSTRUCTIONS TO PREVENT FURTHER FUNDAMENTAL
MISCARRIAGE OF JUSTICE AND FREE FROM PREJURY,
INCONSISTANCE TESTIMONY EVIDENCE.

Now comes Appellant Defender EUGENE RHOINEY Pro-se, and
moves this Honorable Court to vacate it's order to appellate
deffender office finley motion against appellant Eugene Rhoiney and
review constitutional violations that are meritorious issues that
could have and should have been raise to support post-conviction
petition of prejury even with out an evidentrary hearing, Supported
by the Records already in this cause.

In support of this motion Eugene Rhoiney pro-se appellant
states;

1. Petitioner-Appellant, Eugene Rhoiney was arrested on multiple
statements of prejury and inconsistency from subspects. The Chicago
Police and Cook County States Attorney manul factured evidence of
complete prejury at the behest of police investigation and based

1

NO. 1-05-2489

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS<br>APPELLATE COURT OF ILLINOIS<br>FIRST DISTRICT THIRD DIVISION | Appeal from the Circuit Court<br>of Cook County, Illinois |
| -vs- | No. 88 CR 6091 (02) |
| EUGENE RHOINEY<br>ILLINOIS SUPREME COURT RULE<br>23(a) | HONORABLE SCHREIER, JAMES M.<br>Judge Presiding. |

MOTION TO AMEND,
MOTION FOR RECONSIDERATION


NOW Comes Appellant EUGENE RHOINEY and moves this court to review Identical ruleings with the same senerio of perjury and manufacture evidence by government and government eye witness. From this very same District and Division.

In MARION HOLMES v. People state of Illinois 606 N. E. 2d. 439, 238 Ill. App. 3d. 480( ILL. 1 Dist. 1992 ). As in this case of EUGENE RHOINEY the state characterize their only eye witness as a innocent bystander, when in fact eye witness, equally admitted in his police reports that he had physical envolvement of a fight doing the date and time of his eyewitness of a fight between victim and brother. Which just so happenly is his testimony to date and time of the murder offense, EYE witness testimony clearly made him accountability for this murder sense eye witness stated ; After his physical involvement, victim stayed on the floor and he left the site, apartment basement. This surly violated EUGENE RHOINEY right to due process.

EYEWITNESS established in his out of court confession that he lied at RHOINEY Jury Trial to keep his brother and him self from being charged with the actual murder of victim. which no doubt. explans the explanation andtheory to the mystery as to why hewas not charge with no count of murder and why he gave false testimony. This court must construde behind his testimony and police report testimony, eye witness was indeed given prosecutorial leniency, which also violated EUGENE RHOINEY due process rights.

Evidence showed that state principal witness, performed acts
before during and after commission of murder. And possessed
requisite mens rea at time murder was committed in victim
apartment, such that he was legally accountable for murder.
Eye witness testifyed he just set and watched the murder, DID
nothing or said, nothing to help victim, Most important eyewitnesss
did not report murder to police, S.H. A.ch 38, 5-2 ( c )Homicde
K 30 ( 1 ) 203 II murder 203 K 30  principles and accessories.

Also see 203 K 18 ( 1 ) Person who intends to promote or
faciliate only a battery is accountable for resulting murder
 Also see  7   criminal law K 1171.3 110xxIV U.S.C.A. Const.
Amends 514 harmless and reversible error.
       8   Criminal law k. 1171.8 ( 1 )
See post-conviction petition page 7, where SIMS witness STATE
prosecutor only witness confession of why he lied, Which
was to prevent his-self and brother from being charge with
murder, As if the police and prosecutor gave him the option
to lie or go to prison, which violated DUGENE RHOINEY right
to due process unddr Criminal Law K 700 ( 4 ) 110 110xx Trial
110xx ( e ) , 110 k 700 right and duties of prosecuting attorney
110 k 700 ( 2 )Disclosure or suppression of information 110 K
700 ( 4 ) Impeachment evidence, Agreements withwitnesses.


    On MARCH 20, 88 key eye witness admitted his involvement
and why he did not report the murder, and his lies of the account
of what he witness and his involvement, which the Chicago Corner'
for Cook County Dr.Shaku Teas M.D date 1-25-88, examined and
stated, That once the victim was hit across the leggs victim could
no longer walk. (TR.   ) which contridicts eyewitness testimony and
shows his perjury and involvement with murder. Which also raises
possivbility of more than a lesser charge of accountability murder
it self. Which surly make witness no innocent by stander.

In Umberto perkins 686 N. E. 2d. 663 292 Ill. App. 3d. 624
( Ill. App. 1 Dist. 1997 ) Thired Divison. witness testimony
at EUGENE RHOINEY trial did not indicate witness was given
favorable treatment in exchange for witness cooperation.
witness false testimony could have affected verdit and thus
require reversal of conviction. see page 12 Post conviction.
Eyewitness confess, If he did not cooperate and lie, thenhe
Himself would have been on trial for murder. also police
Reports of 3-20 - 88 why he broke the law and not reporting murder.
Which makes it crystal clear to any reasonable person, eyewitness
back was up against the wall and was force lie. Yet the prosecutors
could have easily gotton around this issue by asking witness question
to his previous contradictions to correct the prejury even if prosecutors
did not solicite eyewitness testimony.Constitutional Law
K 268 ( 9 ) U.S.C.A. Amend 14.

In Leroy Shannon and Melvin Garrett v. People of the State of
Illinois 329 N.E. 2d. 399 N.E. 2d. 399, 28 Ill. App. 3d. 873 (Ill.
App.1Dis. 1975) As in Eugene Rhoiney case he provided supporting
requirements that proueeye witness perjured testimony contribute
to his conviction.Criminal law K-1537 110xxx (BJ 110K998(10)

Prosecutor use of testimony that they knew was false by police

reports, Corner Report, Death Certifcate, Corner examination, eye

witness inconsistance statements to such material issues raises an

issue of constitutional S.H.A. ch: 38   122-1 et seq.

Eye witness nor prosecutor, never informed jury that eyewitness

was testifying against Rhoiney, because if he didn't surly some type

of charges would have been brought against him especially sense he

conceal murder from police and had involvement in a battery against

victim that resulted in victim death. see Criminal Law K 702 (2)

110xx (E) 110K705 110K706 (2) Also police report 3-20-88 Page 8.

Also review appellate counselors Finley motions on Direct

Appeal and on above especially the perjury issue. Appellate Coonse-

lor representation was inadequate for not raiseing issues on immed-

iate appeal in order to avoid the waiver rules.

Appellate counselor Finley motion and claim of no other merits

of constitutional claims. allegations surly contradicts the Appellate

court rulings criminal law K 1652 110xxx ( 3 ) 1651 , Since relief

- 3 -

for petitioner is indeed require sense his petition iswupported by
the trial records with out the accompanying affidavit that
petitioner attached that made a substantial showing of a
violation of constitutional right S. H. A.  725 ILCS 5/122-1 et seq.
Appellate counselor once again attempts to re-write the law
and give petitioner only inches as she use the law as a yardstick.
As she equally attempts to re-write the Illinois Supreme Court
rule 23 ( a ) and not gaive petitioner no inches of such law.

Finally see VALLI MOSER v. UNITED STATES of America


UNITED STATE COURT of Appeals Seventh circuit 18 F. 3d.469
Moser v. U.S. ( c.a. 7 ( wis. ) 1994 ) Count II, whoever. in any
matter within the jurisdiction of any department or agency of
the UNITED STATES  knowingly and willf lly falsifies, conceals
or covers up by any trick, scheme, or device material fact,
or makes any false, fictitious or fraudulent statement or
representation, or makes uses any false writing or documents
knowing the same to contain any false, fictitious or fraudulent
statement or entry . Is absolute in violation, of committing a crime.


As in EUGENE RHOINEY case such violations started at the
police station, and not justbecause inconstitance statements of
witnesses or the confession of other people admitting their
involvement in victim death. nor most important the date of
death and cause of death by experts, That was rendered before
the questiong of any witness, which Ironically contradicts all
witnesses. Yet trial counselor failed to have a hearing to
Impeach every one who took the stand before trial. Simply because
police reports would not have allowed none of the prosecutor
witnesses to take the stand in Rhoiney trial, and also trial
counselor use Rhoiney right to take the 5th as a trick, scheme device
to keep the perjury, false statements from being rebuttered with
the knowledge knowing no one eles was going to take the stand either
that would have contridected witness, which had already did so in
police reports as well as in medical examination report.

-4 -

Next the issue at hane, Appellate conselor on Direct
imediate Appeal failed to raise what perjury that they claim
exsist now. But would not have made a difference in RHOINEY
Jury verdict. which shows their concealment and cover up.
by filing a Finley motion, which was repeated on other post
conviction. Appellate counselor continues to attempt to conceal
cover up perjury fraudulent government testimony with Finley
motions.

### CONCLUSION

Since Appellate Court allowed appellant RHOINEY to respone
to Finley motion pro-se, RHOINEY  has been able to present
the facts from the records that shows a D N A  match that this
conviction is based solely upon perjury and manufacture evidence,
alone with the criminal activities of state government employees.
WHERE fore Appellant petitioner prays APPELLATE COURT GRANT
him justice and the relief that is so require and over-due.

*Eugene Rhoiney*

IDOC# R-15243
State Vie Cor. Center
P.O. Box 112
Joliet, Ill. 60434-0112

- 5 -

APPELLATE COURT OF
ILLINOIS FIRST DISTRICT

People Of the State of )
Plaintiff, Illinois Appellate )
Court of Illinois )
First District Third Division ) Case No. 1-05-2489
)
)
Eugene Rhoiney Appellant )
Defendant and Illinois Supreme )
Court Rule 23(a) Victor Garcia

### PROOF/CERTIFICATE OF SERVICE

TO: Steven M. Ravid          TO: Illinois Supreme Court
Clerk of Appellate Court 1st
District
160 North LaSalle, Room S1460
Chicago, Illinois 60601

PLEASE TAKE NOTICE that on May 21 , 200 7, I have placed the documents listed below in the institutional mail at Stateville Correctional Center, properly addressed to the parties listed above for mailing through the United States Postal Service: Motion to Amend Motion For Reconsideration

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of perjury, that I am a named party in the above action, that I have read the above documents, and that the information contained therein is true and correct to the best of my knowledge.

DATE: May 21, 2007

/s/ Eugene Rhoiney A-15245
NAME: Eugene Rhoiney
IDOC#: A-15245
Stateville Correctional Center
P.O. BOX 112
Joliet, Ill. 60434, IL 60112

*EXHIBIT #10*

STATE OF ILLINOIS )
                  )  SS:
COUNTY OF WILL    )

## A F F I D A V I T

I, <u>TERRENCE SIMS</u>, being first duly sworn upon oath, depose and says that the foregoing information contained within this affidavit is true and correct to the best of his knowledge and belief.

1.    That I am incarcerated at the Stateville Correctional Center situated in Joliet, Illinois.

2.    That the following is given freely and voluntarily, without any threats or promises being made:

The reason that I'm giving this statement is because I now know what I heard Dave told Ray was untrue. After I read Eugene Rhoiney's statement, I now realize that Eugene <u>did</u> <u>not</u> give a statement against Dave, as I had been mislead to believe. Because of this injustice, I decided to prepare the following statement to clear this matter up.

When I opened the door and entered the building at 1900 W. Washington, I noticed Dave standing in front of the elevator. As I walked towards him, he greeted me and I spoke back. As I was talking to him, Ray came around the corner and told Dave that he came to see him and to let him know that Angelo was in prison. When the elevator opened, as I begin to enter I noticed several kids on the elevator. I heard Dave tell Ray "so what, I didn't testify against Angelo". The elevator closed and Ray said "Are you forgetting that Angelo jumped on me when he was released on bond, and I never said anything about him?" Ray then said that he was worried because he (Dave) lied on Eugene. Dave said "if I had not lied on Eugene at trial, we would have been on trial for murder". The kids that were on the elevator when we got on it, must've pushed all of the floor buttons, because the elevator stopped at each floor. This gave Dave and Ray time to talk. When the elevator reached the 6th floor, the kids left the elevator and he went to the 7th floor.

If needed to testify to the above, I will do so.

SUBSCRIBED & SWORN to before me

on this 21st day of March, 2005.

_Terrence Sims_
Terrence Sims, affiant
Reg. No. R-32837
Stateville Correctional Center
Post Office Box 112
Joliet, IL   60434-0112

_Phyllis Baker_
N O T A R Y   P U B L I C

- 12 -

"OFFICIAL SEAL"
Phyllis Baker
Notary Public, State of Illinois

No. 1-05-2489

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

ILLONS APPELLATE DEFENDER                 Appeal from the Circuit Court
OFFICE FIRST DISTRICT AND ILLINOIS        of Cook County, Illinois
APPELLATE COURT THIRD DIVISION
                                           No. 88 CR 6091 (02).

                                           Honorable Schreier, James M.
-vs-                                       Judge Presiding.

EUGENE RHOINEY

ILLINOIS SUPREME COURT RULE

23 ( a )

TO: Appellate Court Clerk
     Steve Ravid

                    Request for status up date on Motion
                    For Reconsideration and court Docket
                    SHEET of case.

Dear clerk it has been brought to my attention by some one
during my travel with in stateville prison that the time
frame for this court to have responded to my motion for reconsideration
has pass the time frame.

    Also I would like to bring to your attention, that all
the mail from your office is not marked Confidentrial or
Legal mail. Which means it sits around with thousands of
letters untill decidedby mail room staff  which claims to
be short on staff members, which means on dates of orders
It lessens my time frame to respond and make attempts to
get to the prison LAW LIBRARY to seek aid..

*Ex #11*

Mr. Clerk could you please asist me in the matters above with the most urgency as possivble. So I can cure any any and all damages.

Thank you for your cooperation and assistance.

Sincerely

Eugene Rhoiney A-15243

*Eugene Rhoiney A-15245*

6/1/2007

/s/

IDOC#15243

STATEVILLE CORRECTION CENTER

P.O. Box 112 Route 53

Joliet, Illinois 60434

2 of 2

*EX.# il*

# WARDEN'S BULLETIN #2006-61

August 1, 2006

TO:    ALL OFFENDERS

RE:    **MAIL ROOM PROCEDURES – LEGAL MAIL**

Effective August 15, 2006, the Mail Room staff will no longer, log incoming offender legal mail on a legal card or in a legal log. Incoming legal mail will be received and written up on a legal transfer slip, IL 426 9289, DCA 16174. The transfer slip (IL 426 9289, DCA 16174) will be delivered to all offenders. Offenders upon receipt of the legal mail will sign the transfer slip as receiving legal mail and given a copy of the signed slip along with their legal mail. Offenders are required to keep their copy of the transfer slip as proof legal mail was received.

The Mail Room staff will continue to track all **outgoing** legal mail. Outgoing legal mail when received will be logged in a legal log. The log will show date, name on mail, such as Public Defender, Atty. Smith and Smith etc., and destination of mail, city and state. Offenders may request copies of the original legal log. Requested copies of this log will be subjected to copy charges:

    .25¢ per copy for the first five copies, and
    .10¢ for each additional copy over five copies

Dee L. Battaglia, Warden
Stateville Correctional Center

Offenders
Bulletin
SCC/NRC/MSU
District 1

6/5/2007

Outgoing Legal Mail Log

| | | | | | | |
|---|---|---|---|---|---|---|
| A15243 | RHOINEY | EUGENE | 8/3/2006 | GOV | SPFD | IL | |
| A15243 | RHOINEY | EUGENE | 8/22/2006 | S.A.D | CHICAGO | IL | PKG |
| A15243 | RHOINEY | EUGENE | 8/22/2006 | CLERK | CHICAGO | IL | PKG |
| A15243 | RHOINEY | EUGENE | 9/6/2006 | DEPUTY DEF. | CHICAGO | IL | |
| A15243 | RHOINEY | EUGENE | 9/8/2006 | ASST. APPEL DEF. | CHICAGO | IL | |
| A15243 | RHOINEY | EUGENE | 10/12/2006 | APPEL CLERK | CHICAGO | IL | PKG |
| A15243 | RHOINEY | EUGENE | 1/4/2007 | CLERK | CHICAGO | IL | PKG |
| A15243 | RHOINEY | EUGENE | 4/10/2007 | ILL APPEL CRT | CHICAGO | IL | PKG |
| A15243 | RHOINEY | EUGENE | 4/24/2007 | SUP CRT | SPFD | IL | 3PKG |
| A15243 | RHOINEY | EUGENE | 5/23/2007 | SUP CRT | SPR | IL | PKG |
| A15243 | RHOINEY | EUGENE | 5/23/2007 | CLK OF THE APPEL CRT | CHICAGO | IL | PKG |
| A15243 | RHOINEY | EUGENE | 6/2/2007 | CIR CLK/APPEL CRT | CHICAGO | IL | |

Page 1

NO.1-05-2489
IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

To: Appellate Court Clerk
    First District Third
    Division

June 15,2007

Dear Clerk, I have wrote you once already on June 2, 2007 in concern of timely filed motions. Which I have never recieve a respones to as of yet.

Due to the time elasped, I have a strange feeling you haven't recieved my motions or letter. I hear tales about how Stateville Correction Center with hold legal mail.

My request is for you to send me this case docket sheet and a status up-date.

Also I have enclosed my previous letter to you and also is my verification of my attempts to have stateville correction produce what I'm asking you for. Alone is attached what I recieved from the legal mail room, that proves my letter of request above was mailed to you. But as you can see, they will not confirm nothing this court has mailed to me. But as the prison rule and Illinois Supreme Court Rule 614 states:I have not signed no documents upon reciept thats in questioning.

Therefore could you request the reciept I signed if this court has mailed me any documents and I will pay the same as require for prisoners to pay here at Stateville C.C.

Sincerely Thank you for your Cooperation.

Date---------

Respectfully Submitted By:

/s/ Eugene Rhoiney

Eugene Rhoiney
IDOC #A-15243
P.O. Box 112
Joliet, Ill. 60434

No. 1-05-2489

IN THE

SUPREME COURT OF ILLINOIS

THE STATE OF ILLINOIS APPEALLATE
DEFENDER OFFICE FIRST DISTRICT
APPELLATE COURT OF ILLINOIS
THIRD DIVISION                             Original Petition
          Respondents                     for
                            Writ of Mandamus
      vs.                              or a
                            Supervisory Order

EUGENE RHOINEY
ILLINOIS SUPREME COURT Rule 23(a)
          Petitioner

LEAVE TO FILE PETITION FOR WRIT OF
MANDAMUS OR SUPERVISORY ORDER OF THE
APPELLATE COURT OF ILLINOIS THIRD DIVISION
RESPONSE TO THE STATE APPELLATE DEFENDER
OFFICE FIRST DISTRICT FINLEY MOTION.

TO THE HONORABLE JUSTICES OF THE SUPREME COURT OF ILLINOIS:

    Attached is the respones of the defendant appellant to the
state defender Appellate office Finley Motion and motion to with
draw, which is a transcript of April 5 , May 20 ,2006 proceedings
before the Honorable James M. Schreier, dismissing the post
conviction accompanied with affividavit with out an edvidentrary
hearing. Also the illinois THIRD Division Appellate Court
ORDER in agreement with Appellate defender office admitting
key witness lied at trial but a conviction would still stand
Because of other wittnesses of alledgedly confessions of hear-say
to police and conflict confession to state asistance prosecutor.

                            Respectfully submitted;
                            /s/
                            EUGENE RHOINEY

                            P. O. Box 112 route 53
                            Joliet Illinois 60434

Ex. #13

# SUPPLEMENTARY REPORT

CHICAGO POLICE – FOR USE BY B.I.S. PERSONNEL ONLY

All descriptions and statements in this entire report are approximations or summarizations unless indicated otherwise.

**4. DATE OF ORIG. OCCURRENCE—TIME**
| DAY | MO. | YR. |
|---|---|---|
| 23 | Jan. 88 | 100 |

| OFFENSE/CLASSIFICATION LAST PREVIOUS REPORT | I.UCR OFF. CODE | ADDRESS OF ORIG. INCIDENT/OFFENSE ☐ VERIFIED ☒ CORRECTED | 3. BEAT OF OCC. |
|---|---|---|---|
| HOMICIDE/FIRST DEGREE MURDER | 0110 | ( 3841 W.Adams Basement ) | (1122 |

| 5. VICTIM'S NAME AS SHOWN ON CASE REPORT | CORRECT ☒ YES ☐ NO | IF NO, CORRECT ALL VICTIM INFORMATION IN BOXES 20 THROUGH 27. ☐ YES ☒ NO | 6. FIRE RELATED | 7. BEAT ASSIGN. 5432 |
|---|---|---|---|---|
| EDWARDS,Stephen | | | | |

| 8. TYPE OF LOCATION OR PREMISE WHERE INCIDENT/OFFENSE OCCURRED | LOCATION CODE ( 290 ) | 9. NO. OF VICTIMS One | 10. NO. OF OFFENSE Two |
|---|---|---|---|
| ( Residence ) | | | |

| 11. ☐ VERIFIED ☒ UPDATE TO | 12. OBJECT/WEAPON CODE 06 04 NOS. | 13. FIREARM FEATURES CODE NO. | 14. POINT/ENTRY CODE NO. | 15. POINT/EXIT CODE NO. | 16. BURGLAR ALARM CODE NO. | 17. SAFE BURGLARY METHOD CODE NO. | 18. IF RESIDENCE WHERE WKR |
|---|---|---|---|---|---|---|---|

19. DESCRIBE PROPERTY IN NARRATIVE.  T = TAKEN;   R = RECOVERED

☐ VERIFIED / ☐ UPDATE TO — DNA

| 1 MONEY ☐ T $ ☐ R | 2 JEWELRY ☐ T $ ☐ R | 3 FURS ☐ T $ ☐ R | 4 CLOTHING ☐ T $ ☐ R | 7 OFFICE EQUIPMENT ☐ T $ ☐ R | 8 TV, RADIO, STERE ☐ T $ ☐ R |
|---|---|---|---|---|---|
| 9 HOUSEHOLD GOODS ☐ T $ ☐ R | 6 CONSUM. GOODS ☐ T $ ☐ R | 11 FIREARMS ☐ T $ ☐ R | 5 NARC./DANGEROUS DRUGS ☐ T $ ☐ R | 1 OTHER ☐ T $ ☐ R | 6 NONE ☐ T $ ☐ R |

| 20. NAME (LAST—FIRST—M.I.) | 21. I.UCR OFFENSE CODE | 22. HOME ADDRESS (NO., DIR., STREET, APT. NO.) | 23. SEX—RACE—AGE CODE | 24. HOME PHONE | 25. BUSINESS PHONE |
|---|---|---|---|---|---|
| 1. | | | | | |
| 2. | | | | | |
| 3. | | | | | |

DOCUMENT RETENTION

| 28. OFFENDER'S NAME (OR DESCRIBE CLOTHING, ETC.) | 29. HOME ADDRESS | 30. SEX-RACE-AGE CODE | HEIGHT | WEIGHT | EYES | HAIR |
|---|---|---|---|---|---|---|
| 1. RHOINEY,Eugene | 1315 S.Kolin 1st. Fl. | M/1/37 | 5'8 | 155 | Brn | Blk |
| 2. ROBERTS,Angelo | 1647 W.Lake | M/1/17 | 5'8 | 150 | Brn | Blk |

| | 31. C.B. NO. | I.R. NO., Y.D. NO. OR J.O.A. NO. | 10 OFFENDER IREL CODE | C.B. NO. | I.R. NO., Y.D. NO. OR J.O.A. NO. | OFFENDER IREL CODE ARRESTED |
|---|---|---|---|---|---|---|
| OFF. 7991-782 | 249 180 | | 22 | OFF. 7992-206 | 834 139 | 2   2 |

| 33. OFF'S VEHICLE | YEAR | MAKE | BODY STYLE | COLOR | V.I.N. | STATE LICENSE NO. |
|---|---|---|---|---|---|---|
| ☒ USED ☐ STOLEN | 76 | Buick | 2dr. | red | 8749 R7 J 153296 | JED 473 Ill |

| SERIAL NOS. OR IDENTIFICATION NOS. ☐ 1 ONA ☐ 2 VERIFIED ☐ 3 CORRECTED | LIST ALL CORRECTIONS & NEW OR ADDITIONAL NOS. OBTAINED IN NARRA |
|---|---|
| D   N   A | |

| 50. OFFENSE/CLASS. THIS DATE (IF SAME ENTER DNA) | REV. CODE | 51. METHOD CODE | 52. METHOD ASSIGNED ☒ FIELD ☐ 3 SUMMARY | UNIT NO. 642 | 53. STATUS ☐ 0 PROGRESS ☐ 1 SUSPENDED ☐ 2 UN |
|---|---|---|---|---|---|
| D   N   A | | | | | |

| STATUS CONT'D. | 54. IF CASE CLEARED, HOW CLEARED |
|---|---|
| ☒ 3 CLRD. CLOSED  ☐ 4 CLRD. OPEN  ☐ 5 EXC. CLRD. CLOSED  ☐ 6 EXC. CLRD. OPEN  ☐ 7 CLSD. NON- CRIM. | ☒ 1 ARREST & PROSEC.  ☐ 2 DIRECTED TO JUV. CAT.  ☐ 3 COMPL. REFUSD. TO PROSECUTE  ☐ 4 COMMUNITY ADJUSTMENT  ☐ 5 OTHER EXCEPT.  ☐ AD |

55. ☐ FOR SUMMARY CASES ONLY – THE ORIGINAL CASE REPORT IS SUBSTANTIALLY CORRECT, AND CONTACT WITH THE VICTIM HAS DISCLOSED NO ADDITIONAL PERTINENT INFORMATION.

**80. NARRATIVE**

FIELD INVESTIGATION:                    CLOSED/CLEARED BY ARREST

DATE & TIME ASSIGNED:                   18 March 1988 at 0830 hrs.

VICTIM:                                 EDWARDS,Stephen M/W 36 yrs. Dob. 8 Jan.

                                        Lot 167 Imperial Trails,Shorewood,Ill.

                                        I.R. # 772 823

IN CUSTODY:                             RHOINEY,Eugene M/B 37 yrs. Dob.20Nov50,

                                        1315 S. Kolin 1st. Fl.N/P Single,Unemp
                                        I.R.249 180 CB#7991-782 5'8 155 Blk,Br

Continued Page # 2

| 90. EXTRA COPIES REQUIRED (NO. & RECIPIENT) | 81. DATE THIS REPORT SUBMITTED – | | TIME | 27. SUPERVISOR APPROVING (PRINT NAME) | STAR NO. |
|---|---|---|---|---|---|
| Normal | DAY 20 | MO. YR. March 1988 | 1000 | M. CHARLEY | |
| 92. REPORTING OFFICER (PRINT NAME) | STAR NO. | 94. REPORTING OFFICER (PRINT NAME) | STAR NO. | SIGNATURE | |
| Det.David Dal Ponte 1421 | | Det.Gene Harris 2510 | | DATE & TIME | |
| SIGNATURE | | SIGNATURE | | | |

HOMICIDE/1st DEGREE MURDER    PAGE # 2    K-031-525
EDWARDS,Stephen    20 Mar.88

IN CUSTODY CONT'    ROBERTS,Angelo M/B 17yrs. Dob.24 Jun.70
    1647 W. Lake N/P,Single,Unemployed
    I.R.#834139 C.B.#7992-206 5'8 150 lbs.
    Blk. Brn. Light Comp.

ARRESTING OFFICERS:    Det. David DalPonte # 14241 Area 4 V C
    Det, Gene Harris # 2510 Area 4 V C

DATE,TIME & LOCATION OF ARREST:    Rhoiney,Eugene 19 Mar. 0100 hrs 3151W.F
    Roberts,Angelo 19 Mar.1800hrs, 3151 W.F

CHARGES,COURT Br,& DATE;    Rhoiney/Murder Br.66 on 21 Mar. 88
    Roberts/Concealing a Homicidal Death
    Br. 66 on 21 Mar. 88

INJURIES:    Victim died from multiple stab wounds
    multiple blunt injuries,per M.E.Teas.

WEAPON:    Metal Pipe (Recovered Inv.#484 545)
    Knife ( Not Recovered)

LOCATION:    Murder occurred on the morning of 23 J
    in the basement of 3841 W. Adams.
    The body was later moved to 3552 W.Gra
    Jewel Parking lot where it was discard
    found on the morning on 24 Jan.88

DATE & TIME:    23 Jan.88 (Saturday) at 1000 hrs.

MANNER/MOTIVE:    Victim was killed when a fight ensued
    an argument.

VEHICLE USED:    1976 Red Buick 4dr VIN#8749R7J153296 Jl
    Ill. 88.

EVIDENCE:    One section of metal pipe recovered in
    basement of 3841 W. Adams 19 Mar.88
    Inv. # 484 545
    Above auto towed Pound#7 for Crime Lat

NOTIFICATIONS:    Felony Review ASA Thompson

PERSONNEL ASSIGNED:    Det. D.DalPonte #14241 Area 4 V C
    Det. G. Harris # 2510 Area 4 V C

WITNESSES:    DYES,Roosevelt M/B 39yrs.Dob.18 Feb.49
    1900 W.Washington Apt.#610 Ph.#243-227
    Married,Employed at Bd.of Trade Buildi
    a Stripper. No. I.R.
    SULLIVAN,Sharon M/B 24yrs.Dob.25 Nov.63
    3841 W. Adams 1st. Fl. Ph.722-5134 Sir
    Unemployed.

PERMANENT RETENTIO

HOMICIDE/1st. DEGREE MURDER          PAGE # 3              K-031-525
EDWARDS.Stephen                                            20 Mar.88

WITNESSES CONT'                      PIERCE,Janice F/B 3lyrs. Dob.11 May.5
                                     3841 W. Adams 1st. Fl.Ph.# 7225134 Si
                                     Employed as private nurse.

                                     ROBINSON,Ray M/B 30yrs. Dob.26 Jun.57
                                     111 N. Wood Apt. # 1208 Ph.3733-4543
                                     Single,Employed Red Top Parking 1701
                                     Madison. Ph.# 421-4136

STATEMENTS:                          Written statement given by Arrestee A
                                     Roberts to ASA Thompson.


INVESTIGATION;                       Continuing the on going investigation
                                     the death of Stephen Edwards,the R/D'
sheduled SHARON SULLIVAN for a polygraph examination. On 18 Mar.at 1300 hr
Polygraph Technician Tovar # 12814 administered the  test to SULLIVAN.Afte
test it was Tovars feeling that SULLIVAN was not being truthful as to her
ledge but possible her involvement in EDWARDS death.SULLIVAN then indicates
she was scarred and would now like to tell the  truth.She indicated that F
ROBINSON was involved in EDWARDS death,and that EUGENE Rhoiney may also kr
more than he has told thus far.Tovar  then stopped his interview and the F
transported SULLIVAN to Area four,stopping in route at 3841 W. Adams where
located RHOINEY.Both SULLIVAN and RHOINEY were then brought into the Area

                                     Once in the Area SULLIVAN was intervi
                                     at greater length.The following is wh
she related in summary and is not verbatim;

SULLIVAN,Sharon                      On Saturday morning (23 Jan,88) I hea
                                     Steven and his girlfriend arguing in
kitchen.My bedroom is by the kitchen and I was in the bed.I could not hear
was being said but Stephen 's friend left and Stephen went down stairs.Ray
down stairs also.About a half an hour later Stephens girlfriend came back,
told EUGENE that STEPHEN had stolen something from her home and that he ha
taken her auto.

                                     Later that evening about (2200) hrs.STE
                                     and RAY ROBINSON got into an argument
were in the basement.EUGENE and I were upstairs, JANICE was in bed,I asked
what they were arguing about.EUGENE said he thought they were arguing abou
conversation they had earlier that morning.

                                     A short time later RAY came  upstairs
                                     he was crying,he went into the kitche
got a knife.I asked RAY what happened he said STEPHEN had hit him with a b
stool.RAY then went back downstairs and I could hear that he and STEPHEN b
started arguing again.After a  while the arguing stopped and RAY came back
stairs,he was acting very strange,and laid on the floor.I went into my bed
and listened to some music.

PERMANENT RETENTIC

Continued  On  Page # 4

HOMICIDE/1st. DEGREE MURDER          PAGE #4                    K-031-525
EDWARDS,Stephen                                                20 Mar.88


SULLIVAN,Sharon Cont'                    Later maybe about an hour later I go
                                         and asked EUGENE what had happened.E
said that RAY had told him that he had cut STEPHEN.At this  time RAY was
laying on the floor.JANICEgot up and cooked some food,and she yelled down
for STEPHEN to come up and eat.There was no answer from the basement and
asked RAY if STEPHEN had left and RAY said "yeah STEPHEN left".SULLIVAN s.
she went to bed a short time later and EUGENE,RAY,and JANICE were still u
ting high.She remembered EUGENE getting into bed with her later but can n
certain of what time.SULLIVAN could add nothing further at this time.

                                         From previous interviews the R/D's k
                                         that RAY ROBINSON worked as a lot at
ant for Red  Top Parking at 1701 W. Madison.We then proceeded to that loc
where we ascertained that RAY was at work and a short time later found RA
ing toward his parking lot.At this time RAY ROBINSON was placed under arr
transported  in to the Area.Upon arrival at Area 4 ROBINSON was advised o
rights and related the following which is a summary and not verbatim;


ROBINSON,RAY                             stated he got to JANICES (3841 W.Adam
                                         about 0030-0100 hrs.Saturday morning
I stayed around and got high with DAVE,(Roosevelt Dyes,Robinson's brother
and STEPHEN,STEPHEN'S girlfriend was asleep in the bedroom.At about 0745
I left with DAVE,he  took me  to pick up my welfare check and then we wen
cashed the check.We went to buy some dope and then we returned to JANICE'
get high,at about 0900 or 0930 hrs. When we walked in the building STEPHE
EUGENE,JANICE and STEPHEN'S lady were standing in the frontroom.Dave and
downstairs,as-I passed EUGENE he came up behind me and  wispered "get me
pipe off the jack,keep it for me downstairs".After DAVE and I were downst
STEPHEN came down,he  saw I had some dope and wanted some,but I refused t
him any.We started arguing about the drugs and when I turned my back on hi
picked up a stool and hit me across the back with it.DAVE grabbed the cha
him and STEPHEN and I began rolling on the  floor,I was hitting STEPHEN wi
fists.We stopped fighting and I got up my back was hurting me so I laid o
couch,STEPHEN was still laying on the floor.
                                         JANICE and EUGENE heard the fight and
                                         down  the stairs.JANICE saw me laying
the couch I was crying and she rubbed my back for me.She gave me some pill
the pian,I took these pills and then I went upstairs and laid  on the foo
asleep and didn't wake up until sometime in the evening.When I did wake up
my cigarettes were gone and I got mad.JANICE,EUGENE,SHARON and a guy named
GASTON were in the room with me and JANICE told me that JACKIE had smoked
my cigarettes while I was asleep.EUGENE gave JACKIE money and told him to
and buy me some more cigarettes.When he returned with the cigarettes I too
and went downstairs and got into the bed.I fell asleep again and did not w
again until Sunday morning,when I got up I left for home.I never saw STEPH
again after our fight.

                                                    PERMANENT RETENTI

Continued On Page # 5

23 MAR 1988  12 16

HOMICIDE/1st DEGREE MURDER          PAGE # 5              K-031-525
EDWARDS.Stephen                                          20 Mar.88


INVESTIGATION CONT'                    R/D's then interviewed EUGENE RHOINE
                                       following is a summary of what he re.

and is not verbatim;

RHOINEY,Eugene                         On Saturday morning (23 Jan.88)STEPH
                              CAT,(Carolyn Lewis girlfriend of EDW)
and I were standing in the livingroom,we were discussing the fact that ST
had taken CAT'S VCR.STEPHEN denied having taken it,and I promised CAT tha
would get her VCR back for her.While  we  were talking RAY,DAVE,and anoth
came into the house and went into the basement.At this time CAT left and
went back into  the basement.After a short time I went into the basement
STEPHEN and I talked about the VCR.STEPHEN was sitting down and I got tir
trying to talk to him,I took a piece of pipe from the jack and  I hit STE
across the leg with it.STEPHEN lunged at me and I hit him on the  left si
the head with the pipe.His head was bleeding and he sat back down I hit h
couple of more times across the legs.I told RAY not  to let STEPHEN out u
tells what happened to the VCR.I went back upstairs a short time later I
someone holler in the basement,so I went back down to see what had happen
STEPHEN and RAY were fighting on the floor I, broke them up,DAVE and the
guy were still in the basement.RAY was complaining about his back being h
and I checked it for  him,RAY said STEPHEN had hit him with the stool.I pun
STEPHEN a couple of times for hitting RAY.When I hit him it was with my f
and across his back,he was still laying on the floor.DAVE and the  other
left the house,and RAY and I went upstairs,RAY laid on the floor and fell
STEPHEN bugged me for about an hour he wanted to come upstairs but I told
stay in the basement until he cooled out.A couple of hours later I was wa
a basketball game and STEPHEN came upstairs,he said he was cool,so I chec
his head wound and he looked alright.
                              At this time STEPHEN said he was goi
get the VCR.I asked him how he could get it back now,I thought that he ha
it.He told me he  could get it back so I let him leave the  house.He retur
about 1730 hrs.he came in through the basement side entrance.He yelled up
that he  would have the  money for me.STEPHEN never came back out of the
ment.I left about  2000 hrs. and went to the Wood St. Police Station and
the Henry Horner Homes to pick up JANICE.We returned home about 2200 hrs.
was on the  floor asleep JACKIE GASTON was sitting in one of the empty be
At this time I thought STEPHEN was still in the basement I stayed upstair
watched T.V.I went to bed late that night and I did not see STEPHEN again
                              In an earlier interview EUGENE had s
had seen STEPHEN leave the house and get into a Beige Station wagon with
When asked why he had told this story he said that he  felt like lying.

                              Since both RAY and EUGENE indicated
the  fight took place in the morning hours of 23 Jan.88 (Saturday)SHARON
was reinterviewed and she now states  that she had her times confused and
Saturday morning.

                              R/D's then obtained the real name of
                              (Roosevelt Dyes) and his correct add
We then responded to 1900 W.  Washington Apt.# 610 where we spoke to Mr.D
The following is a summary of what DYES related and is not verbatim;

PERMANENT RETENTI

HOMICIDE/1st DEGREE MURDER          PAGE #6          K-031-525
EDWARDS,Stephen                                     20 Mar.88

DYES,Roosevelt(AKA DAVE)          related that he gotten to JANICE'S P[
                                  house early in the morning on Saturda
Jan.88.At about 1000 hrs, RAY and I left to pick up RAY'S check.We cashed
check and returned to JANICE'S we went right into the basement and RAY was
ing up some drugs for himself.STEPHEN came down and wanted  some RAY refus
give him any.Ray turned away from STEPHEN and he (STEPHEN) picked up a cha
hit RAY across the back with it I tried  to stop him and was able to pull
chair from STEPHEN.Both RAY and STEPHEN fell to the  floor and began roll:
around but they weren't hurting each other.They stopped tusseling and I g[
and left.When I left the were both alright and were still arguing. Mr. DY[
could add nothing further at this time.

                                  R/D's the returned to the Area and r[
interviewed EUGENE RHOINEY who insisted that RAY'S brother in law DAVE(Ro[
Dyes) was present in the basement when he struck STEPHEN with the pipe an[
not leave until the fight was over.

                                  R/D's then prepared arrest reports o[
                                  RAY ROBINSON and EUGENE RHOINEY.Hold
were also prepared and both men were placed in the 11th. Dist lock up.R/D
continued thier investigation the following morning 19 March 1988.

                                  On 19 Mar,R/D's recontacted DAVE,SHA
                                  and JANICE,and all three were brough
Area 4 to continue this investigation.While at JANICE'S home the R/D's re
a length of pipe from an automobile jack that was located in the basement

                                  R/D's re interviewed DAVE the follow
                                  a summary of what he related and is

verbatim;

DYES,ROOSEVELT (DAVE)             After  being told that R/D's knew he
                                  stayed in JANICE'S basement and had
the entire fight DAVE said he did not want to get involved in no murder a
would tell what he knew. As in the earlier interview he states that he ar
at JANICE'S early Saturday morning and  sat around smoking Marijuana.At 1
He and RAY left to pick up RAY'S check,returning about 1030 hrs.When they
ed the building EUGENE,STEPHEN,JANICE and another black lady were in the
room.We walked right down into the basement,and a short time later STEPHE
down.As soon as he saw that RAY had some  dope STEPHEN wanted some.RAY wo
give him any.STEPHEN and RAY were yelling at each other at this point,EUG
apparantly heard the comotion and came down stairs.EUGENE walked up to ST
and hit him two or three times across  the knees with a piece of pipe and
his hand).STEPHEN went down on one knee and said "my leg is  broke".EUGENE
STEPHEN "Your fucking  up",he (EUGENE) then returned upstairs.When RAY tu
away from STEPHEN,he picked  up a stool and hit him across the back with
grabbed the stool away from STEPHEN and both of them fell to the floor an
rolling around.EUGENE heard the noise and came back downstairs he pulled
off of STEPHEN.RAY got up and laid on the couch he said his back was hurt
he was crying.I saw EUGENE srike STEPHEN at least twice in the head with
or possibly a bat.

PERMANENT RETENTION

*impeachment*

HOMICIDE /1st DEGREE MURDER          PAGE # 7                K-031-525
EDWARDS, Stephen                                             20 Mar. 88

DYES, Roosevelt *takes pictures of the Hillman*          I could tell he was hitting him hard
the sound of blows. Both EUGENE and S
were in a little hallway that leads to the bathroom. EUGENE sat on a stool
STEPHEN came crawling out of the hallway on his hands and knees. He was bl
real bad from the back of his head, and he was asking to be taken to the h
EUGENE said "I,m going to take you to the hospital. STEPHEN kept saying "I'
gonna pass out take me to the hospital". EUGENE told Janice, Me, and anothe
skinned boy I didn't know to leave the basement. We went upstairs and I go
coat and left. When I left RAY, EUGENE and STEPHEN were in the basement and
young boy was upstairs with JANICE. I heard the next morning in the neighbo
that STEPHEN was dead. DAVE was then shown the piece of pipe EUGENE struck
basement at 3841 W. Adams and he identified it as the pipe EUGENE struck
with. In regards to the young light skinned boy present during the fight D
thought his name was ANGELO.;

                              R/D's then re interviewed SHARON SUL
                              who after being told that EUGENE had
ed striking STEPHEN and that DAVE had said that EUGENE had stuck STEPHEN,
~~she lied about RAY coming upstairs and taking a knife from the kitchen~~ SULLIVAN agreed to
for EUGENE. When asked about a boy named ANGELO SHARON SULLIVAN agreed to
the R/D's where this person lived.

                              R/D's then proceeded to 1647 W. Lake
                              where we were able to locate ANGELO
This person was brought into Area 4 to be interviewed. The following is a s
of what he related and is not verbatim;

ROBERTS, Angelo                    stated that he was at the home of EU
                              RHOINEY (3841 W. Adams) on Sat. 23 J.
at about 1000 hrs.. In the house also were RAY ROBINSON, STEPHEN EDWARDS, DA
ROOSEvelt DYES and JANICE PIERCE, SHARON SULLIVAN also a boy named HENRY.
he was upstairs while STEPHEN, DAVE, EUGENE, and RAY were downstairs in the
ANGELO states he heard scuffling downstairs and went down to see what was
on. He saw RAY with a lead pipe making motions as if to hit STEPHEN, who wa
huddled on the floor against a wall, STEPHENS head was bleeding badly. EUG
standing by the wall next to STEPHEN with a knife in his hand. Angelo sai
asked why they were beating STEPHEN, EUGENE grabbed him by the neck and wa
him not to say anything. EUGENE then told ANGELO to go back upstairs and st
there. ANGELO said he complied and remained upstairs until about 1700 hrs.,
ing T.V. EUGENE came upstairs and told ANGELO that he needed help hiding th
body. ANGELO went downstairs and saw STEPHEN wrapped up in a blanket or p
a sheet. ANGELO, EUGENE and a boy named HENRY then carried STEPHEN outside
red Buick. ANGELO said they put the body into the trunk of this auto. EUGE
drove the car to the projects and picked up a guy named EDDIE and anothe
ed CRUNCH. They then drove to the Jewel at 3552 W. Grand, where EUGENE gave
ed money and told him to buy some things to clean up the basement with. ANGE
out of the car and EUGENE pulled away. EUGENE and the others returned a sh
time later and picked ANGELO up they all then returned to EUGENES house 3
Adams. EUGENE told ANGELO to pick up some bloody toilet paper and while he
this EDDIE and CRUNCH were scrubbing the floor with Pine Sol. ANGELO said
was again warned by EUGENE not to say anything about what had happened.

PERMANENT RETEN

HOMICIDE/1st. DEGREE MURDER          PAGE# 8                    K-031-525
EDWARDS,Stephen                                                20 Mar. 88

ROBERTS,Angelo  Cont                 Angelo  said that he was then transpo
                                     back home by EUGENE.

                                     R/D's then interviewed JANICE PIERCE
owner of  the home at 3841 W. Adams the following is a summary of what she
related and is not verbatim;

PIERCE,Janice                        stated she was upstairs when she hear
                                     someone  yell downstairs.She said she
to see what had happened and saw STEPHEN crawling on the floor bleeding fr
the head.She  asked what had happened and was told thet STEPHEN had hit RA
a stool.RAY was laying on the couch he said his back was hurt.JANICE said
rubbed RAY'S back with alcohol and gave him some pain pills.She then took
upstairs  where he fell asleep.She says she  then left the house,goimg to
this was at about 1000 hrs.She could add nothing further.

                                     R/D's then contacted the office  of t
                                     Review and ASA Thompson responded.AS
Thompson interviewed all parties and took a written statment from ANGELO F
This statement contained the same basic facts given to the R/D's,however y
giving his written statement,ANGELO added the fact that he saw EUGENE sta
STEPHEN'S body several times before it was moved to the auto.
                                     ASA Thompson attempted to interview E
RHOINEY but he refused.  Ray ────→   ASA Thompson then interviewed RAY ROE
                                     who related the same facts as he had
the R/D's earlier.He now adds that when he was laying on the couch he saw E
strike STEPHEN on the head with what he thinks was a pipe.He also added th
as he was going back upstairs he saw EUGENE tearing up bed  sheets into st

                                     After considering the facts in this c
                                     based on the statements of  the witne
ASA determined that the charge of Murder should be lodged against EUGENE F
And since by his own admission ANGELO ROBERTS helped move the body from 38
Adams to the Jewel Parking lot ANGELO will be charged with The Concealmen
Homicidal Death.

                                     RAY ROBINSON was released without ch

                                     R/D's ordered a tow on 20 March 1988
1600 hrs. for the auto used to transport STEPHEN EDWARDS body from 3841 W
This auto belongs to JANICE PIERCE of 3841 W. Adams.The auto is to be towe
Auto Pound # 7 where the Crime Lab will process the trunk area for blood c
item of evidentiary value.

This case is CLOSED/CLEARED BY ARREST          PERMANENT RETENTIO

The Report of; Det.David Dal Ponte #14241
              Det. Gene Harris
              Area 4 Violent Crimes

23 MAR 1988  12 18

*Ex. # 13*

MARCH 20, 1988
MEMORANDUM

TO:                WILLIAM G. GAMBONEY, A.S.A.
                   SUPERVISOR, FELONY REVIEW UNIT

FROM:              DELCINE THOMPSON, A.S.A.
                   FELONY REVIEW UNIT

RE:                HOMICIDE OF STEPHEN EDWARDS
                   DEFENDANTS: EUGENE RHOINEY
                               ANGELO ROBERTS

On March 19, 1988 Assistant State's Attorney Delcine Thompson was called
regarding the fatal beating and stabbing of Stephen Edwards.

Assistant State's Attorney Thompson interviewed the defendant Eugene Rhoiney
in the presence of Detective Harris and Detective Dalponti at Area 4 Violent
Crimes, 3151 West Harrison.  The defendant was explained his rights pursuant
to MIRANDA and he indicated that he understood those rights.  It was also
explained that Assistant State's Attorney Thompson is a lawyer working with
the police and not his lawyer.  The defendant indicated he understood and
that he wished to speak to Assistant State's Attorney Thompson.

In summary and not verbatim the defendant stated that the victim Stephen Edwards
was downstairs in the basement of the defendant's home.  The defendant stated
that the victim had stolen a VCR from a friend and that he was angry at the
victim for doing that.

The defendant stated he went into the basement with a lead pipe to punish
the victim.  The defendant stated he struck the victim on the back of the legs
and that the victim fell to the floor.  The defendant stated he then left the
basement.

The defendant stated that he returned to the basement a short while later and
broke up a fight with the victim and Ray Robinson by striking the victim on
the head with the pipe.  The defendant stated that the victim left shortly
thereafter and was never seen again.  At that point the defendant refused to
answer any more questions and asked to speak to his attorney.  The interview
was then concluded. *look at the police report dated March 18, 1988, page*
                                                                            *8*

The defendant Eugene Rhoiney appeared to be under no pressure or duress and
spoke clamly and matter-of factly.  The defendant spoke of no ill treatment
by the police or Assistant State's Attorney Thompson, nor did the defendant
indicate that he felt threatened or that he was promised anything to make a
statement.

Assistant State's Attorney Thompson also interviewed the defendant Angelo
Roberts in the present of Detective Harris.  Roberts gave a written statement
in which he placed himself at the scene and stated he helped to take the victim's
body to another location.

IN THE

APPELLATE COURT

APPELLATE COURT

 Plaintiff,

        v.                              Case No. 1-05-2489

EUGENE RHOINEY
 Defendant

PROOF?/ CERTIFICATE OF SERVICE

To: Appellate Court
    of Illinois

PLEASE TAKE NOTICE that on   July        ,2007, I have placed the
documents listed below in the institutional mail at Stateville
Correctional Center, properly addressed to the parties listed
above mailing through the United States Postal Service:

Pursuant to 28 USC 1746, 18USC $21 or 735 ILCS 5/109, I declare,
under penalty of perjury, that I am a named party in the above
action, that I have read the above documents, and that the infomation
contained therein is true and correct to the best of my knowledge.

DATE:                        /s/ *Eugene R. Rhoiney A-15243*

                             NAME:  Eugene Rhoiney
                             IDOC#: A-15243
                             Stateville Correctional Center
                             P.O. BOX 112
                             Joliet, Il. 60434

No. 1-05-2489

IN THE

SUPREME COURT OF ILLINOIS

THE STATE OF ILLINOIS APPEALLATE
DEFENDER OFFICE FIRST DISTRICT
APPELLATE COURT OF ILLINOIS
THIRD DIVISION
               Respondents

vs.

EUGENE RHOINEY
ILLINOIS SUPREME COURT Rule 23(a)
               Petitioner

Original Petition
for
Writ of Mandamus
or a
Supervisory Order

LEAVE TO FILE PETITION FOR WRIT OF
MANDAMUS OR SUPERVISORY ORDER OF THE
APPELLATE COURT OF ILLINOIS THIRD DIVISION
RESPONSE TO THE STATE APPELLATE DEFENDER
OFFICE FIRST DISTRICT FINLEY MOTION.

TO THE HONORABLE JUSTICES OF THE SUPREME COURT OF ILLINOIS:

Attached is the respones of the defendant appellant to the
state defender Appellate office Finley Motion and motion to with
draw, which is a transcript of April 5 , May 20 ,2006 proceedings
before the Honorable James M. Schreier, dismissing the post
conviction accompanied with affividavit with out an edvidentrary
hearing. Also the Illinois THIRD Division Appellate Court
ORDER in agreement with Appellate defender office admitting
key witness lied at trial but a conviction would still stand
Because of other wittnesses of alledgedly confessions of hear-say
to police and conflict confession to state asistance prosecutor.

Respectfully submitted;
/s/
EUGENE RHOINEY

P. O. Box 112 route 53
Joliet Illinois 60434

-2-

No. 1-05-2489

IN THE

SUPREME COURT OF ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT THIRD DIVISION
                        Respondents,

EUGENE RHOINEY Appellant
Defendant and ILLINOIS SUPREME
COURT Rule 23 (A), VICTOR GARCIA
                    Petitioner,

Petition for A

Writ of Mandamus
        Or A

Supervisory Order

MOTION FOR LEAVE TO FILE PETITION
FOR WRIT OF MANDAMUS OR A SUPERVISORY
ORDER IN RESPONSE TO THE FIRST DISTRICT
APPELLATE COURT THIRD DIVISION ORDER.

TO THE HONORABLE JUSTICES OF THE SUPREME COURT OF ILLINOIS:

Request to resolve the conflict of the Appellate CourtORDER
that a prosecutor key eye witness can gave complete prejured
testimony and the conviction can still stand, with out a jury
not hearing the only key eye witness testimony that carried
the weight that help the jury come to the fact finding of  A gulty
verdit. Also to ORDER the Appellate Court to vacate it order,
of no other mirits issues to raise. Even after the Appellate
Court found key eye witness has committed perjury with out
the required evidentary hearing and attempts to ignor the
conflict controversity testimony from the state prosecutor
testimony their self used as a wittness against petition.

STATE OF ILLINOIS)
                 )SS.
COUNTY OF WILL   )

IN THE SUPREME COURT OF ILLINOIS

THE ILLINOIS APPELLATE COURT
FIRST DISTRICT, THIRD DIVISION
ana the STAT of ILLINOIS
APPELLATE DEFENDER OFFICE FIRST
DISTRICT

                              Case No. 88 CR 6091

            vs.
                              Charge: Murder, etc.

EUGENE RHOINEY Appellant and
ILLINOIS SUPREME COURT Rule 23 (a)

REPORT OF PROCEEDINGS

    Be it remembered that these proceedings came up for hearing
on the 21 st day of MARCH,2007,in the Appellate COURT of ILLINOIS
FIRST JUDICIAL DISTRICT, THIRD DIVISION BEFORE the Honorables
KARNEZIS, J with THEIS,P. J. and GREIMAN, J. concurring.Judges
of the said COURT.

APPEARANCES:
    Hon. KARNEZIS, J
         THEIS P. J.
         GREIMAN. J.

No one appeared for EUGENE RHOINEY.

- 3 -

ILLINOIS SUPREME COURT : In this case, The defendant,
EUGENE RHOINEY, ,Filed a post-conviction petition, accompained by
an affidavit, On out of Court hear-say confession from state
prosecutor key,eye witness, Admitting he lied at Defendant
Jury Trial. The Trial Judge Honorable James M. Schreier, disssmissed
post-conviction with out defendant having no level of representation
After Motioning Court for appointment of counselor same day
petition was filed. Trial Court summarily dismissed defendant
Post-conviction petition under ILLINOIS SUPREME COURT Rule 651
on May 3, 2005. EUGENE RHOINEY was appointed Appellate defender
office to represent him on appeal.

The Illinois state Appellate defender office represented
EUGENE RHOINEY on direct Appeal and filed Motion to with draw anda
A  Finley Motion, which was granted by the Illinois Appellate court.
Ironically the Appellate  defender office and the Appellate
Court agree, That state key, eye witness committed Perjury
at EUGENE RHOINEY JURY TRIAL and both agree EUGENE RHOINEY
CONVICTION WOULD STILL STAND BECAUSE OF OTHER EVIDENCE OFD
the prosecutor other wittness that testified that EUGENE RHOINEY
confessed committing this crime to. Also the illinois Appellate
Court agree that even so perjury has been discovered more than
once through the trial records and discovery from the key eye
witness. EUGENE RHOINEY does not nbed an evidentary hearing or
a Trial FREE from perjury or that EUGENE RHOINEY has maeitireous
claims to seek a trial, fair from perjury untainted. For a
Jury to decide soley on the evidence of the alledged confession
to a asistan ce states attorney. As if the assumption and Theory
thaat Key Eye witness testimony DID NOT contribute no weight
or FACT FINDINGS TO EUGENE RHOINEY conviction with CERTAINLY NO
DOUBT.

_4_

Even If this Appillate Court followed the new rule 23 ( a ) EUGENE RHOINEY still will have proven state prosecutor key eye witness lied and still defendant EUGENE RHOINEY would have been afford a faif trial as the law and justice so require. Yet the Appellate Court and Appellate defender office attempts to insult the human intellect, by agreeing state prosecutor key eye witness committed perjury. to prevent another trial, Simply because it will prove ineffective asistance of Appellate counsel and trial counselor because the facts show EUGENE RHOINEY never DID NOT give NO statement nor confession. Therefore the asistance states attorney could not take the stand against EUGENE RHOINEY and that leaves no other evidence to link EUGENE RHOINEY TO this crime and murder charges so therefore the and charges must be diddmissed against Appellant Defender EUGHENE RHOINEY with prejudice.

The Appellate Court ORDER granting appellate defender office Finley motion, affirming circuit Court denial, Is a complete conflict between two ( 2 ) Judicial branches of the Government, the Chicago police department and the state of Illinois Cook county prosecutor office. sense Appellant defender had a Jury trial and the Illinois Supreme Court resolve conflicts Acts as Refferes. it is only logical and legally a decision that should only be made by jury or Illinois SUPREME COURT.

IT is clear the Appellate Court reviewed carefully the key eye witness testimony and statements in the Appellant defendant respones to Appellate defender office Finley motion, In order to have conclued, In fact eye witness Indeed committed perjury. How ever the Appellate Court clearly established THE review on the state prosecutor other witness, assistance states attorney was not given the inches of review that justice so require that would have made their ruling, ORDER in Appellant favor.

- 5 -

The Finley motion that the Appellate Court eroneously Granted alone with the Circuit Court dismissal of post conviction petition accompanied with affidavit. Are construded by Appellate Court language, That the conviction would still stand because of other evidence. And their is no other isssues to raise concerning the issue Appellant raised, with proof thus far of perjury.

Issues over looked that should and could be raise to help prove Appellant innocense of First degree murder. For starters A.S.A. stated she brought first degree murder charges against Appellant behind reviewing police reports and interviews of all people interviewed and who gave statements. Even given most favor to this A.S.A. review of these few people, WHEN EACH OF THEM GAVE DIFFERENT STATEMENTS EACH TIME THEY SPOKE TO POLICE OR A.S.A. she over looked their lies, inconsistant statements. Still. The EXPERT EXAMINER, POSTMIRTEM REPORT, DEATH CERTIFICATE contradicts all of their statements, Yet she made the decision to charge Appellant with first degree murder as she stated, even over looking the lies and expert findings. wherefore the Appellate Court has eroneously granted finley motion and affirmed lower Court dismissal, because such ORDERdeprives Appellant a single oppitunity on Appeal, that guranteed to him by Appellate counselor .

Onne Appellant is granted a single oppitunity to raise issues of perjury alone sidewith supporting affidavit from a confession of perjury from key eye witness ,him self. Will be enough to cure some of the miscariage of justice thats been poored on appellant so far.

- 6 -



Appellant surely looks for Appellate counselor to raise other
issues of perjury from A . S. A. as police records states, she
made by giving testimony of an alledge confession, Police report
MARCH , 18, 1988 also to raise issues of the inadmisable alledgely
confession from or to police, with no maranda rights given, and
hear-say confession. Plus the evidence obtainted through illegally
search and seizures are all considered to be perjury and once
a jury is able to determine or decide. No reasonable person
could fore see or be with out doubt that Appellant verdit
would still be guilty.

      SUPPORTING THE ENRONEOUS, IMPROPER
      FIRST DISTRICT, THIRD DIVISION APPELLATE COURT
      OF ILLINOIS ORDER OF 21 st MARCH 2007
      IS ATTACHED, WHICH CONTRADICTS OTHER
      ILLINOIS APPELLATE COURT DECISIONS AND
      UNDER MINDS THE ILLINOIS SUPREME
COURT RULE 23 ( a ) .

              / s/
              name:
               I D O C # :
              P. O. Box 112 route 53
              Joliet Illinois 60434
              stateville correctional center

-7 -

**FILED**
APPELLATE COURT 1st DIST.

No.1-05-2489
IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

APR 1 0 2007

**STEVEN M. RAVID**
**CLERK**

ILLINOIS APPELLATE DEFENER
OFFICE FIRST DISTRICT and ILLINOIS
APPELLATE COURT THIRD DIVIISION

Appeal from the Circuit Court
of Cook County, Illinois

No. 88 CR 6091 (02).

-VS-

Honorable Schreier, James M.
Judge Presiding.

EUGENE RHOIEY
ILLINOIS SUPREME COURT RULE
23(a)

MOTION FOR RECONSIDERATION FROM COURT
ORDER TO GRANT FINLEY MOTION, MOTION TO
ENFORCE RULES CONSTITUTTIONAL RIGHT 110
K 641. 13 (7) and MANDATE CAUSE BACK TO
THE CIRCUIT COURT UNDER THE ILLINOIS
SUPREME COURT NEW RUL 23 (A) WITH
INSTRUCTIONS TO PREVENT FURTHER FUNDAMENTAL
MISCARRIAGE OF JUSTICE AND FREE FROM PREJURY,
INCONSISTANCE TESTIMONY EVIDENCE.

Now comes Appellant Defender EUGENE RHOINEY Pro-se, and
moves this Honorable Court to vacate it's order to appellate
deffender office finley motion against appellant Eugene Rhoiney and
review constitutional violations that are meritorious issues that
could have and should have been raise to support post-conviction
petition of prejury even with out an evidentrary hearing, Supported
by the Records already in this cause.

In support of this motion Eugene Rhoiney pro-se appellant
states;

1. Petitioner-Appellant, Eugene Rhoiney was arrested on multiple
statements of prejury and inconsistency from subspects. The Chicago
Police and Cook County States Attorney manul factured evidence of
complete prejury at the behest of police investigation and based

1

soly on police reportrof investigation. (see discovery Chicago Area
4 Police Investigation Report 1/29-31/88 , 3/18-21/88). Office of
the medical Examiner for Cook County of Illinois report of postmortem
examination-date of death 01/24/88.

2. Every statement from witnesses adout Steven Edwards victim
and his girl friend arguement were the same that took place 1/23/88
early saturaday morning.

3. Date and time detectives was assigned :26 Jan. 88 at 1700 hrs.
same date 26 Jan.88 detectives Report states: To be interviewed:
Robert, Ray M/B 29 yrs., lives in or near horner housing projects.
With out no reason to do so accorden ly to report, just failed to
report who link Ray Roberts to victim last hours alive.

4. On 26 Jan. 88 1700 hrs Chicago Police investigator Report
admitted! No maranda rights was read or given to Eugene Rhoiney or
Janice Pierce Nor did they "Detective" have a search warrant. But
with out regards to their rights, Detectives enterred uninvited and
confisgated items. Appellant Rhoiney has attempted to get every a
attorney whom represented him to raise such constitutional violations
that has such merit, that was at the behest of the Chicago Police
investigation.

A). Ironically on 26 Jan. Jan 88 at 1630 hrs the Chicago Detectives
recieved information from other detectives of items found on victim,
which made them draw a concluesion that the coverings "Sheets" where
similar, that they took from Rhoiney residence. With out a search
warrant.

5. On 1/26/88 Janice Pierce and Eugene Rhoiney gave detectives
statements at their residence, which was simllar about the argument
between Steven Edwards and his girl friend Carolyn Lewis that took
place 1/23/88.

6. 1/26/88 Carolyn Lewis told the investigator Detectives the
same story about her Steve arguement. But she never seen Steven
Edwards again after that arguement.

Alladove report of: Det.William Wendt#4268

Det. Thomas Pofpat#10740

2

Filed Investigation
Date and time assigned: 29 Jan 88 at 0830 hrs.

This is where the Chicago Police Detectives Started Falsifying
Police Report Investigation and the manufacting the evidence
in this case, which leads to more merits of constitutional
violations which arresting detectives report clearly shows
as stated:

1.  From an illegal search and alledge seizure on 26 Jan 88 of a
bed sheet. Detectives where able to abtain a search warrant #88
s.w. 4388. Which is no mysteroy and the obvious explannation as to
why they needed a search warrant after they falsifyed their report
that they was given permission to enter Rhoiney residence and take
items which the bed sheet alledgely taken on 1-26-88 matched the
covering over victim body at the location where victim body was
found.
2.  On 31 Jan. 88 Detectives went back to Rhoiney residence on this
search warrant #88 S.W. 4388 and took every one in the house to the
police station by force of the authority of a uniform and documents
to just serch the house for evidence only.
A).  Upon arriving at police station, Detective falsifyed their re-
port once again by stating Sharon Sullivan and Robinson Ray are being
reinterviewed. No where,in on Detective, Police investigation Report
states or shows a single converstion or review with either of these
two people.
B).  However Investigator Detectives admit, that someone gave them
anonmous tip on Ray Robinson, who just so happenly had a bloody fight
with victim during his last hours alive. Police stated this in the
very beining of their report even before leaning who the victim was.
Supplementary Report Field Investigation date and time assigned
26, Jan. 88
3    Interviewing Detectives admits they never read Eugene Rhoiney
his maranda rights before or doing quest ioning.

3

A)    Detective intent ionally falsifyed report: claiming Rhoiney
stated to lewis he was concern adout a matching sheet. Using the
corcern and matching to prove or the Cook County States Attorney
and a Judge, That Rhoiney did have Knowledge of the offense and made
attempts to conceal his involement.

B)    When in fact Rhoiney never amitted, that from Detective illegally
search, that a bed sheet was taken, or any knowledge of a bed sheet.

C).  On this same date 1-31-88 right before Eugene Rhoiney interview
detectives reports states Carolyn Lewis admitted she never seen the
sheet in the evidence. In fact on 1-26-88 Carolyn Lewis stated: in
her interview she sleept at victim Steven Edwards house in his bed,
which makes her the best witness to give testimony if sheet alledgely
found covering victim body or illegally taken out of victim residence
belonged to victim or was ever in victim apartment as the Chicago
Detectives Investigation implies. Just to make it apear as if the
offense was committed at Rhoiney residense.

D)    This is the date 1-31-88 where Detectives aggressively makes
attempts to link Eugene Rhoiney and his residence to victim death.

4.    On 1-29-88 the search warrant was served upon Janice Pierce
and everyone was taken out the house to the police station.
leaving the police and crime lab technicans and other experts along
at Eugene residence for hours to locate any evidence.

A).  On 1-29-88 no evidence was found at Rhoiney residence once
again, soley because more than ASA Decline Thompson and Det. DelPonte
and Det. Harris was present.

B).  On 1-29-88 is the second time Chicago Police Department entered
Eugene Rhoiney residence by force, where was the first time legally
authorize by a court of law. Which also was the first time no
evidence was found, even through it was more trained experts on
location with knowledge of what to look for concerning this offense.

5).  After a complete search of Rhoiney residence was completed.
All the people that were taken to the police station was release.

4

FIELD INVESTIGATION
Date and time assigned 18 March 88
Arresting Detectives Det. Dal Ponte
Det. Gene Harris

On 18 March 88 the chicago police came out with all their
butality they are known for and every scare tactive possivble
that could make every one that was in EUGENE RHOINEY residence
or visited his residence an accessory to murder from the date of
Jan. 22,88to 24 Jan.88 when medical experts examination reported
1/24/88 was the date of the offense..

On 18 March 88 1300 hrs. the arresting detectives sheduled
a polygraph examination for Sharon Sullivan. The test conclued she
had no involement but was not being truthful as to her know-
ledge about victim STEFEN EDWARDS death. Sharon Sullivan
admitted she eas scare, but now is willing to tell the truth
so Sullivan states as follows:

1.    That Ray Robinson was involed in Edwards death.
2.    Shealso stated: That Eugene Rohiney may also know more
than he has told the police so far.
3.    The polygraph examinator stopped his test, interview
with Sharon Sullivan and the arresting detectives took her
straight to Rhoiney residence and grought Eugene Rhoney and
SULLIVAN straight into the area 4 ploice station.
4.    Sullivan agreed to now tell the truth.
a).    Sullivan states: Ray Rogbinson and STEVEN EDWARDS got
into a loud arguement in the basement, and Eugene Rhoiney
and her was up stairs and Janice Pierce was in bed. So she asked
Rhoiney what they were arguing about .Rhoiney answered he thinks
abouts a conversation they had earlier that morning.
b).    Aharon Sullivan next states, A short time later doing
Robinson and Edwards arguement, That Ray  Robinson came up
stairs to the ketchen where her bed room sits in and
Ray Robinson got a knife and returned to the basement and
him and Robinson came back upstairs and was acting noticable
very strange and laid on the floor. Sullivan than imediately
went back in her room and began listening to music.

c).   Sharon Sullivan states about
an half hour later, She asked Rhoiney what gappened, and Rhoiney
dtold her, That Ray Robinson told him, that he cut stab Steven
Wdwards, and Sullivan states Robinson was still la;ying on
sthe floor.

d).   Sullivan states Janice Pierce cooked some food and called
Steven Edwards to come up stairs and eat. But Edwards never
answered or came up stairs, Ray Robinson was asked did Edwards
leave the basement, because he was last doen stairs with Edwards,
ROBINSON answered yeah steve Edwards left.

5. After Sharon Sullivan statements the arresting detectives
went straight to where they knew where to find Ray Robinson
andplaced him under arrest at his job Red Top Parking at
1701 w. Madison. plice, detectives admitted reading giving
Ray Robinson his maranda Rights

6.   Ray Robinson admitted to police accordenluy to police
report, That him and Steven Edwards got in to a fight about
drugs and he beat Steve Edwards with his fist.
a).   Robinson also states Dave Dyes was present in the basement
when this fight started and Dyes helped him by taking a Bar
stool from Steven Edwards
b).   Robinson states: They stopped fighting he got up off
the floor and laid on the couch and Steven Edwards was still
laying on the floor.

7.   Ray Robinson had to file a police burtality; report against
arresting detectives because the;y beat him and made him sign sta
tements against himself and Eugene Rhoiney that he did not give.
a).   I.A. report against police burtality attached.

On March 20, 1988 police finally reinterviewed Eugene
Rhoiney after having him in police custody since March 18,88

1.    Police concocked manufacture a statement from parts of all
the statements from their investigation and attempted to get
Rhoiney to give statements against Ray Robinson and RO::OSERVELT
Dyes.

a).    Eugene Rhoiney refues to lie or give in to police soare
tactives.
b).    Rhoiney reminded police he had been to prison already
for a murder and it was nothing they could do to him, behind
a few punches the detectives gave him, For him to lie or get
involved.

2.    ONCEagain arresting detectives admitts they did not
read Eugene Rhoiney his maanda rights doing or before the
interview of March 20, 1988.

3.    Eugene Rhoiney attaches an affidavit under oath to the
accounts of his police investigation interview. By signing this
document.

    On March 20, 88 after Ray Robinson implicated Rooservelt
Dyes his brother in this fight between him and Steven Edwards
they went to his home and picked him up and brought him in to be
interviewed.

1.    Rooservelt Dyes gave statements stating his brother
and Edwards indeed had a fight and he pulled a bar stool from
Edwards and Robinson snd 'fell to the floor after doing so, But
they stopped fighting and neither of them was hurt and the DYES left.
2.    After police lied and tricked Rooservelt Dyes telling him that
Rhoiney told them he stayed in the basement the entire time until
Edwards was Murder..
a).    Dyes admitted he lied since he learn and thought Rhoineyy
did not stick to the same story him and his brother Robinson told
see Rhoiney affidvit.

- 7 -

3.     Rooservelt Dyes now tells a different story and admitts
he only lied because he did not want to get involved eith a
murder or be a wittness.

a).     Rooservelt states Rhoiney hit Edwards with a base ball bat
int the head and with a piece of pipe across Edwards leggs.

b).     Rooservelt Dyes states it was a young boy name Angelo
present doing the fight between Ray Robinson and victim Steven EDWARDS.

4.     Arresting detectives reinterviewed Sharon Sullivan who
took them to Angelo Roberts house.

5.     Angelo Roberts gave statements at interview implicating
that Ray Robinson and Eugene Rhoiney were the only two people
he seen witness making motions to harm Edwards and with weapons
But did not wittness no one harm Edwards, but stated Edwards
head was bleeding badly Edwards onlyyinjury at this time
and RAY ROBINSON had a pipe.

- 7 (a) -

a).    Angelo states he left the basement and returned to see
Steven Eswards being wrapped up in a blanket or a sheet./

6.    Angelo roberts was reinterviewed by the asistance states
attorney and now recalls seeing Eugene Rhoiney stabbing the
dead victim body several times before it was moved to the
auto trunk.

7.    Asistance states attorney Thompson attempted to interview
EUGENE RHOINEY but he refused and admitted she never Read
Eugene Rhoiney rights, or told Eugene Rhoiney who she was./

        The ASA determined that Murder charges will be brought
        against Eugene Rhoiney do to the witnesses testimony
only in the police reports, MARCH 20, 1988.
THEarresting detectives states the confession statement from
Eugene Rhoiney was part of the reason Rhoiney was arrested.( Tr. 83)

Arrestomg detectoves eqia;;u ad,otted pmce agaom tjat tjeu
entered Rhoiney residence unarthorized on 3/ 19 / 88 ,while
all residenceses was at the police station and now amazenly
recovered the peice of a pipe use in this crime.

Arresting detective Harris gave testimony ( Tr. 98-99 ) that
Sharon Sullivan gave statements she seen Rhoiney and Roberts
carring Edwards dead body out of the basement. When in fact
not in no police report, interview with Sharon sullivan states
she gave such statement or had such knowledge.

Arresting detective Harris testified that Rhoiney gave asa a
statement and Rhoiney stated he did not want to talk any more to
her ( Tr. 50 -51 ) yet police report 3- 18-88 page # 8 clearly
states A.S.A. attempted to talk to Eugene Rhoiney But he refuse to
give statements or speak to her.

Arresting detective harris testified that his first conversation
interview with Eugene Rhoiney eas on 1- 26 - 88 and it lasted a
couple of hours hown at Area 4 police station ( Tr. 40 -41 )
Rhoiney was release not arrested. How ever note : 1 - 26- 88
police report, which states , First conversation took place
at Rhoiney residence.

Detective Harris stated in his testimony that Sharon Sullivan
told him in one of her interview that she seen witness Angelo .
Roberts jumping up and down, stumping victim STEVEN EDWARDS on
the head (Tr. 66 line 11 ) yet the ASAreported she brought
concealment charges against Angelo Roberts because of his willingly
confession of helping to conceal hide victim body, But brought
first degree murder charges only on Eugene from only the
witnesses police investigation reports. Ironically charges was
not brought against Angelo Roberts or against Ray Robinson
whom both witnesses indeed give statements against, That
would have enabled the ASA to bring charges and get a conviction.
Police investigator detectives and ASA both gave statement against
Eugene Rhoiney from an alledged confession from appellant Rhoiney
to . Which is so happenly the only evidence that could have the
charge of murder against Rhoiney. Sadly neither of them gave
Rhoiney his maranda rights before or doing or even after such alledge
confessions., which no boubt a Court of law should review and
rule on the statue and presidented cases on these issues of
conclict and constitutional violations against Eugene Rhoiney.

Detective arris admits he did not read Rhoineymaranda rights
at the time alledgely Rhoiney gave a confession, and that his
partner Dal Ponte was not present doing confession, but detective
Dal Ponte lied sig   the report stating by signiture he was
present doing conffession, which is inadmissable double hear-say
see Naples v. U. S. C. A. D. C .1964, 344 F.2d. 508, 120 U.S.
App. D.C. 123 &riminal Aaw K 407 (1 ) Criminal Law K 419 ( 10 ).

-9-

ASA Thompson testified that Rhoiney gave her a confession which such statement of this alledge condession was attributed to ASA from police investigation reports. Which also constituted collateral double hear-say and is inadmissible under sound rules of evidence U.S. V. Ettorre E. D. PA? 1975 387 F. Supp. 582 witnesses K 331.5.

Appellate counselor finley motion, which is based upon the facts that key witness did committ perjury more than once.. How ever the other edvidence would still not made a difference in the out come of appellant Rhoiney jury trial verdit. Therefore it is agreed just on trial records and police reports Rooservelt Dyes committed perjury. Yet the appellate counselor gives no credit,no weight to his testimony, as if it had no effectin their decision to render a guilty verdit.

Also appellate counselor ignors the fact that police reports states appellant defender Eugene Rhoiney refues to speak to A.S.A. who testify at Rhoiney jury trial that he gave her a confession. And if the trial jury had of known police stated he refues to give A.S.A. a statement, would they have gave any credibility to her testimony isn't it appellant constitutional right to have had the jury decide this issue instead of appellate counselor who is suppose to gurantee appellant every single opportunity to have such constitutional violations raised. As a matter of fact would any reasonable person be in a uproar to hear a confession given to a A.S.A. and learn no statement was never given.But is being use to take the life of an innocent human being.

The other out rageous confession that was alledgly given to the arresting Detectives, which also shows ineffectiveness of trial counselor and ineffectiveness of Appellate Counselor on Direct Appeal. Which no doubt brings strong possivbility of a conflict of interest in appellant representation right now. The way police did the interview with Eugene Rhoiney admitting no maranda rights was given to Rhoiney before or doing any interview with Rhoiney. Than the hearsay issue which makes such statement inadmissable in every court of law.

-10-

Finally Appellate counselor must think since it was so many statements given, but not against Rhoiney, he would have been found guilty of a lesser charge of murder. Which no one took the stand against appellant Rhoiney but key witness Rooserveit Dyes, A.S.A. and arresting detectives, never th. less all the other witnesses lived in a 2 block radist among each other, also all of them gave statements of getting high using drugs, dope. And to especially p point out every witness interviewed in this case got caught lying and admitted lying about the actual events in this case. See(17) Witnesses 410 K342 4101v, 410 1v(B),

Appellate counselor finley motion side steps and ignors the facts that all the weapons, key witness identified in this offense. Police clearly states in their report was obtained illegally which adds more constitutional violations and gives appellate counselor more meritoriques claims to raise to at the very least, have given appellant one single right thats gurantee to him by the Illinois Appellate Counselor.

It is clear Appellate counselor agree perjury was committed, but an evidentrary hearing would not make a difference in th out coime of Rhoiney jury verdit. Which all the other evidence is inadmissadle and also with certainly will be challenge under perjury and obstruction of justice. The scale of Justicc will till in Rhoiney's favor where justice is so require!

Appellant Pray the Honorable Judges reconsider their ORDER
In this cause after the facts surrounding this cause has finally
been presented for the First time in this court. Unfortunately
as a pro-se litigant, which no doubt appellant want this
Courtto construde, appellant literally throws him self at their
Mercy to review De Novo as if each of you are my lawyer and
pick out facts that will allow justice to preveal in my interest.
Which no doubt will mandate this cause back to the lower court
with instructions that only the chicago police superintendent
cshief comander will once again be shame of by chicago police
conduct. Not to mention the states attorney prosecutor would not
even attempt to rendrr no explanation to the ASA Thompson conduct.

This appellate Court Third Divison ORDER granting appellate counselor
Finley motion, because as appellate counselor states, Evene
Even with evidentrary hearing still verdit of the jury would still
convict Rhoiney of first degree murder. Even through appellate feels
 that decision is for a jury to convict him with out prejury
testimony. which leaves this Court to review the other ttwo witnesses
plain perjury impeachment. ASA Thompson and detective Harris.
Therefore it would not be another Trial, because no witnesses,
Wherfore this surly shows ineffectiveness of appellate counselor
on direct appeal, which appellant hopes this conflict is visable
by this Court or at least raise the supicion to where this
Honorable court will review even more closely to see if in fact
issue of constitutional violations are indeed a miscaraige of
justice and deprive appellant the fundalmental rights as the
law require or have been given.

Appellant has spent endless nights seeking the knowledge on how
to convey his innocents. Only to constantly come across how
strongly this Court tollerance is qero for perjury. which is
the reason for such lenghty citation on all the people interviewed
in this case and trhe reasons to point out the manufacture
evidence and the ASAand arresting detective lies. which the
records reflect this conviction stadds soley upon perjury.

Appellant request this Court to consider an highly request thatsu unusally In order to gain a deeper reality that laids at the very heart of this offense and the perjury. Also for permission to present for review a affidavitt from appellant defender especially since it is the first time appellant been granted permission to speak with out representation or a Judge telling him not to speak making all the decisions forceing appellant to go alone with every thing or be threaten with the Death penalty because of appellant conviction for a murder years before this offensd.

The first request is for this Court to liik at Angelo Roberts back round his street influence for more than the county of cook or the state of Illinois ,His street gang intellegence recored is worst than a drug cartail ,exceptmoney and drugs did not appeal to him higher or as equal than hurting people. His involvement in murders along would make one think hes Osoma bin latin great great grand child. Yet no witness never made it to testify against him and refues to testify against him. Please reflect back to detective Harris testimony that Sharon' Sullivan told him she seen Angelo Roberts jumping up and down and stumping victim Steven Edwards in the head,m but forsome strange reason it never made it to the police reports mainly requested to review. In afficant affidavit in post-conviction key witness attempts to convince his brother they have nothing to worry about because He did not tell on Angelo Roberts more concern about Angelo Roberts liberity than theirs another key ingrediant and answer to appellate counselor question why Rhoiney did not or will not say who committed the offense he did not personally witness. but as the police confess witnesses came forward against Angelo Roberts. But the unknown to this Court of his track record, The police already knew to give the murder witnesses would disppear no trial as time and time before with ROBERTS.

Appellant maken no attempt to retryu this case or bring issues before this Honorable Court, Other than whats in the affidavit and also points out events after afficant gave sworn testimonym He wanted appellant to with hold out of fear and threats to his family and himself, which the prison security records reflect, Therefore the thought of any disrespecting Roberts in the under world still holds a Red terrist alert. Even through the affidavit eas on Rooservelt Dyes, who son just sohappenly has street rank, influence under Roberts in the same street gang.

-13-

Appellant  as told by Sharon Sullivan what she seen and that
she would not repeat it in a court of law or to a grand jury
Appellant told his lawyer to put him on the stand so he can testify
to all the above events and accounts but Trial counselor stated
it is only hear say, and stated that Ray Robinson was in this
same street gang and most   likely would not testify for
Rhoiney .

Appellant request for this court to consider appellate
counselor reasons and support for her Finley motion, which opens
up the gate way to challendge dir·ect appeal and other appeals this
Appellate office represented defender appellant on. Which also
allows other constitutional violations to be presented as
Appellant has done so, wherefore appellant wishes this Honorable
Cort to consider it ruleing on, with Supreme Court Rule 23 (a ) .
Which makes Appellate conselor herself challedging the Illinois
Supreme Court or acting as the Illinois states attorney,
But now that the evidence has been allowed to be prsented for
thefirst time before this Court, simply because of the Obvious
Finley motions and issues that only appellate counselor chose
to raise with the knowledge from a legal stand point would not
grant petitioner justice that are so require.

Appellant understand this court make ruleing at the issues
raise, But Appellant askes this Court to examine the points and
senero in this case to Froster the appreciation where justice
laids, wherefore the Fore Fa thers who wrote the constitution
andlaws to protect the innocent and give every one equal
protection with due process that is not use as a yard stick
only constantly attempting to  give appellant Rhoiney only
inches. Wherefore he would have to relinguis the rest of his life
in prison on a conviction base upon perjury testimony and
obstruction of Justice by the Government agencys Them self.
Just to clos e one (1 ) murder case leaving other innocent
civilians unprotected by the uncapture murders and constantly
taking lives them selt,

- 14 -

Rhoiney certainly want this Honorable Court to review the Lower Court abuse of discretion, and bias and prejudice that suduce a Fundalmental miscariage of justice doing suppression, doing motion to Quest arrest and the impeachment of some witnesses for one lie, but allowed other witnesses to give hours of lies, Which naturally falls on Trial counselor and Direct appellate counselor on appeal.

APPELLANT DEFENDER EUGENE RHOINEY PRAYS THIS COURT GRANT HIM A EVIDENTRARY HEARING NOT ON JUST THE OUT OF COURT CONFESSION FROM KEY WITTNESS ADMITTING HE LIED AT RHOINEY JURY TRIALWHICH THIS COURT HAS ALREADY AGREED KEY WITNESS INDEED LIED ACCORDENLY TO THE RECORDS. . BUT SO THE LOWER COURT CAN DETERMINE WHEATHER OR NOT RHOINEY CONVICTION CAN REST AFTER REMOVING KEY TESTIMONY AND REST SOLEY UPON PERJURY TESTIMONYAND MANUFACTURE EVIDENCE OR AND CONSTITUTIONAL VIOLATIONS THAT WOULD NOT HAVE ALLOWED APPELLANT TO HAVE A JURY TRIAL AND CHARGES DISMISSED WITH PREJUDICE.

Respectfully Submitted by :

IDOC#_____

P.O. BOX 112 Route

Joliet Illinois 60434

EUGENE RHOINEY #

P. O. BOX  112 Route 53
Joliet Illinois  60434

- 15 -

IN THE

APPELLATE COURT OF

ILLINOIS FIRST DISTRICT

People Of the State of
~~Illinois Appellate~~
Plaintiff, ~~Court of Illinois~~
First District Third Division
    v.

Eugene Rhoiney Appellant
Defendant and Illinois Supreme
~~Court Rule 23(a), Victtor Garcia~~

)
)
)
)
)   Case No. 1-05-2489
)
)
)
)

## PROOF/CERTIFICATE OF SERVICE

TO: Maria A. Harrigan

Affice of the State App. Defender
203 North LaSalle Stt24th Fl.

Chicago, Illinois 606o1

TO: Steven M. Ravid

Clerk Of Appellate Court, ~~1st.~~
District
~~160 North LaSalle~~, Room S1400
Chicago, Illinois 60601

PLEASE TAKE NOTICE that on ⋅ April 8  2007 _____, 2007, I have placed the documents listed below in the institutional mail at Stateville ___ Correctional Center, properly addressed to the parties listed above for mailing through the United States Postal Service: MOTION FOR Reconsideration
with purpose ORDER _____

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of perjury, that I am a named party in the above action, that I have read the above documents, and that the information contained therein is true and correct to the best of my knowledge.

DATE: April 8, 2007

/s/ Eugene Rhoiney A15243
NAME: _____
IDOC#: A-15243
_____ Correctional Center
P.O. BOX 112
Joliet, Ill. 60434 -0112

No.1-05-2489
IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT


ILLINOIS APPELLATE DEFENER
OFFICE FIRST DISTRICT and ILLINOIS
APPELLATE COURT THIRD DIVIISION

-VS-

EUGENE RHOIEY
ILLINOIS SUPREME COURT RULE
23(a)

Appeal from the Circuit Court
of Cook County, Illinois

No. 88 CR 6091 (02).

Honorable Schreier, James M.
Judge Presiding.


MOTION FOR RECONSIDERATION FROM COURT
ORDER TO GRANT FINLEY MOTION, MOTION TO
ENFORCE RULES CONSTITUTTIONAL RIGHT 110
K 641. 13 (7) and MANDATE CAUSE BACK TO
THE CIRCUIT COURT UNDER THE ILLINOIS
SUPREME COURT NEW RUL 23 (A) WITH
INSTRUCTIONS TO PREVENT FURTHER FUNDAMENTAL
MISCARRIAGE OF JUSTICE AND FREE FROM PREJURY,
INCONSISTANCE TESTIMONY EVIDENCE.


Now comes Appellant Defender EUGENE RHOINEY Pro-se, and
moves this Honorable Court to vacate it's order to appellate
deffender office finley motion against appellant Eugene Rhoiney and
review constitutional violations that are meritorious issues that
could have and should have been raise to support post-conviction
petition of prejury even with out an evidentrary hearing, Supported
by the Records already in this cause.

In support of this motion Eugene Rhoiney pro-se appellant
states;

1. Petitioner-Appellant, Eugene Rhoiney was arrested on multiple
statements of prejury and inconsistency from subspects. The Chicago
Police and Cook County States Attorney manul factured evidence of
complete prejury at the behest of police investigation and based

1

soly on police reportrof investigation. (see discovery Chicago Area
4 Police Investigation Report 1/29-31/88 , 3/18-21/88). Office of
the medical Examiner for Cook County of Illinois report of postmortem
examination-date of death 01/24/88.

2. Every statement from witnesses adout Steven Edwards victim
and his girl friend arguement were the same that took place 1/23/88
early saturaday morning.

3.. Date and time detectives was assigned :26 Jan. 88 at 1700 hrs.
same date 26 Jan.88 detectives Report states: To be interviewed:
Robert, Ray M/B 29 yrs., lives in or near horner housing projects.
With out no reason to do so accorden ly to report, just failed to
report who link Ray Roberts to victim last hours alive.

4. On 26 Jan. 88 1700 hrs Chicago Police investigator Report
admitted! No maranda rights was read or given to Eugene Rhoiney or
Janice Pierce Nor did they "Detective" have a search warrant. But
with out regards to their rights, Detectives enterred uninvited and
confisgated items. Appellant Rhoiney has attempted to get every a
attorney whom represented him to raise such constitutional violations
that has such merit, that was at the behest of the Chicago Police
investigation.

A). Ironically on 26 Jan. Jan 88 at 1630 hrs the Chicago Detectives
recieved information from other detectives of items found on victim,
which made them draw a concluesion that the coverings "Sheets" where
similar, that they took from Rhoiney residence. With out a search
warrant.

5. On 1/26/88 Janice Pierce and Eugene Rhoiney gave detectives
statements at their residence, which was simllar about the argument
between Steven Edwards and his girl friend Carolyn Lewis that took
place 1/23/88.

6. 1/26/88 Carolyn Lewis told the investigator Detectives the
same story about her Steve arguement. But she never seen Steven
Edwards again after that arguement.

Alladove report of: Det.William Wendt#4268

Det. Thomas Pofpat#10740

2

Filed Investigation
Date and time assigned: 29 Jan 88 at 0830 hrs.

This is where the Chicago Police Detectives Started Falsifying
Police Report Investigation and the manufacting the evidence
in this case, which leads to more merits of constitutional
violations which arresting detectives report clearly shows
as stated:

1.    From an illegal search and alledge seizure on 26 Jan 88 of a
bed sheet. Detectives where able to abtain a search warrant #88
s.w. 4388. Which is no mysteroy and the obvious explannation as to
why they needed a search warrant after they falsifyed their report
that they was given permission to enter Rhoiney residence and take
items which the bed sheet alledgely taken on 1-26-88 matched the
covering over victim body at the location where victim body was
found.

2.    On 31 Jan. 88 Detectives went back to Rhoiney residence on this
search warrant #88 S.W. 4388 and took every one in the house to the
police station by force of the authority of a uniform and documents
to just serch the house for evidence only.

A). Upon arriving at police station, Detective falsifyed their re-
port once again by stating Sharon Sullivan and Robinson Ray are being
reinterviewed. No where,in on Detective, Police investigation Report
states or shows a single converstion or review with either of these
two people.

B). However Investigator Detectives admit, that someone gave them
anonmous tip on Ray Robinson, who just so happenly had a bloody fight
with victim during his last hours alive. Police stated this in the
very beining of their report even before leaning who the victim was.
Supplementary Report Field Investigation date and time assigned
26, Jan. 88

3    Interviewing Detectives admits they never read Eugene Rhoiney
his maranda rights before or doing quest ioning.

3

A)    Detective intent ionally falsifyed report: claiming Rhoiney
stated to lewis he was concern adout a matching sheet. Using the
corcern and matching to prove or the Cook County States Attorney
and a Judge, That Rhoiney did have Knowledge of the offense and made
attempts to conceal his involement.

B)    When in fact Rhoiney never amitted, that from Detective illegally
search, that a bed sheet was taken, or any knowledge of a bed sheet.

C).  On this same date 1-31-88 right before Eugene Rhoiney interview
detectives reports states Carolyn Lewis admitted she never seen the
sheet in the evidence. In fact on 1-26-88 Carolyn Lewis stated: in
her interview she sleept at victim Steven Edwards house in his bed,
which makes her the best witness to give testimony if sheet alledgely
found covering victim body or illegally taken out of victim residence
belonged to victim or was ever in victim apartment as the Chicago
Detectives Investigation implies. Just to make it apear as if the
offense was committed at Rhoiney residense.

D)    This is the date 1-31-88 where Detectives aggressively makes
attempts to link Eugene Rhoiney and his residence to victim death.

4.    On 1-29-88 the search warrant was served upon Janice Pierce
and everyone was taken out the house to the police station.
leaving the police and crime lab technicans and other experts along
at Eugene residence for hours to locate any evidence.

A).  On 1-29-88 no evidence was found at Rhoiney residence once
again, soley because more than ASA Decline Thompson and Det. DelPonte
and Det. Harris was present.

B).  On 1-29-88 is the second time Chicago Police Department entered
Eugene Rhoiney residence by force, where was the first time legally
authorize by a court of law. Which also was the first time no
evidence was found, even through it was more trained experts on
location with knowledge of what to look for concerning this offense.

5).  After a complete search of Rhoiney residence was completed.
All the people that were taken to the police station was release.

4

FIELD INVESTIGATION
Date and time assigned 18 March 88
Arresting Detectives Det. Dal Ponte
                     Det. Gene Harris


On 18 March 88 the chicago police came out with all their
butality they are known for and every scare tactive possivble
that could make every one that was in EUGENE RHOINEY residence
or visited his residence an accessory to murder from the date of
Jan. 22,88to 24 Jan.88 when medical experts examination reported
1/24/88 was the date of the offense..

On 18 March 88 1300 hrs. the arresting detectives sheduled
a polygraph examination for Sharon Sullivan. The test conclued she
had no involement but was not being truthful as to her know-
ledge about victim STEFEN EDWARDS death. Sharon Sullivan
admitted she eas scare, but now is willing to tell the truth
so Sullivan states as follows:


1.    That Ray Robinson was involed in Edwards death.

2.    Shealso stated: That Eugene Rohiney may also know more
than he has told the police so far.

3.    The polygraph examinator stopped his test, interview
with Sharon Sullivan and the arresting detectives took her
straight to Rhoiney residence and grought Eugene Rhoney and
SULLIVAN straight into the area 4 ploice station.

4.    Sullivan agreed to now tell the truth.

a).    Sullivan states: Ray Rogbinson and STEVEN EDWARDS got
into a loud arguement in the basement, and Eugene Rhoiney
and her was up stairs and Janice Pierce was in bed. So she asked
Rhoiney what they were arguing about .Rhoiney answered he thinks
abouts a conversation they had earlier that morning.

b).    Aharon Sullivan next states, A short time later doing
Robinson and Edwards arguement, That Ray  Robinson came up
stairs to the ketchen where her bed room sits in and
Ray Robinson got a knife and returned to the basement and
him and Robinson came back upstairs and was acting noticable
very strange and laid on the floor. Sullivan than imediately
went back in her room and began listening to music.

-5-

c).    Sharon Sullivan states about
an half hour later, She asked Rhoiney what gappened, and Rhoiney
dtold her, That Ray Robinson told him, that he cut stab Steven
Wdwards, and Sullivan states Robinson was still la;ying on
sthe floor.

d).    Sullivan states Janice Pierce cooked some food and called
Steven Edwards to come up stairs and eat. But Edwards never
answered or came up stairs, Ray Robinson was asked did Edwards
leave the basement, because he was last doen stairs with Edwards,
ROBINSON answered yeah steve Edwards left.

5. After Sharon Sullivan statements the arresting detectives
went straight to where they knew where to find Ray Robinson
andplaced him under arrest at his job Red Top Parking at
1701 w. Madison. plice, detectives admitted reading giving
Ray Robinson his maranda Rights

6.    Ray Robinson admitted to police accordenluy to police
report, That him and Steven Edwards got in to a fight about
drugs and he beat Steve Edwards with his fist.
a).    Robinson also states Dave Dyes was present in the basement
when this fight started and Dyes helped him by taking a Bar
stool from Steven Edwards
b).    Robinson states: They stopped fighting he got up off
the floor and laid on the couch and Steven Edwards was still
laying on the floor.

7.    Ray Robinson had to file a police burtality; report against
arresting detectives because the;y beat him and made him sign sta
tements against himself and Eugene Rhoiney that he did not give.
a).    I.A. report against police burtality attached.

On March 20, 1988 police finally reinterviewed Eugene
Rhoiney after having him in police custody since March 18,88

1.    Police concocked manufacture a statement from parts of all
the statements from their investigation and attempted to get
Rhoiney to give statements against Ray Robinson and RO::OSERVELT
Dyes.

a).    Eugene Rhoiney refues to lie or give in to police soare
tactives.
b).    Rhoiney reminded police he had been to prison already
for a murder and it was nothing they could do to him, behind
a few punches the detectives gave him, For him to lie or get
involved.

2.    ONCEagain arresting detectives admitts they did not
read Eugene Rhoiney his maznda rights doing or before the
interview of March 20, 1988.

3.    Eugene Rhoiney attaches an affidavit under oath to the
accounts of his police investigation interview. By signing this
document.·

     On March 20, 88 after Ray Robinson implicated Rooservelt
Dyes his brother in this fight between him and Steven Edwards
they went to his home and picked him up and brought him in to be
interviewed.

1.    Rooservelt Dyes gave statements stating his brother
and Edwards indeed had a fight and he pulled a bar stool from
Edwards and Robinson snd ˉfell to the floor after doing so, But
they stopped fighting and neither of them was hurt and the DYES left.
2.    After police lied and tricked Rooservelt Dyes telling him that
Rhoiney told them he stayed in the basement the entire time until
Edwards was Maɪder...
a).    Dyes admitted he lɩed since he learn and thought Rhoineyy
did not stick to the same story him and his brother Robinson told
see Rhoiney affidvit.

- 7 -

3.    Rooservelt Dyes now tells a different story and admitts he only lied because he did not want to get involved eith a murder or be a wittness.

a).    Rooservelt states Rhoiney hit Edwards with a base ball bat int the head and with a piece of pipe across Edwards leggs.

b).    Rooservelt Dyes states it was a young boy name Angelo present doing the fight between Ray Robinson and victim Steven EDWARDS.

4.    Arresting detectives reinterviewed Sharon Sullivan who took them to Angelo Roberts house.

5.    Angelo Roberts gave statements at interview implicating that Ray Robinson and Eugene Rhoiney were the only two people he seen witness making motions to harm Edwards and with weapons But did not wittness no one harm Edwards, but stated Edwards head was bleeding badly Edwards onlyyinjury at this time and RAY ROBINSON had a pipe.

- 7 (a) -

a).   Angelo states he left the basement and returned to see Steven Eswards being wrapped up in a blanket or a sheet./

6.   Angelo roberts was reinterviewed by the asistance states attorney and now recalls seeing Eugene Rhoiney stabbing the dead victim body several times before it was moved to the auto trunk.

7.   Asistance states attorney Thompson attempted to interview EUGENE RHOINEY but he refused and admitted she never Read Eugene Rhoiney rights, or told Eugene Rhoiney who she was./

The ASA determined that Murder charges will be brought against Eugene Rhoiney do to the witnesses testimony only in the police reports, MARCH 20, 1988.
THEarresting detectives states the confession statement from Eugene Rhoiney was part of the reason Rhoiney was arrested.( Tr. 83)

Arrestomg detectoves eqia;;u ad,otted pmce agaom tjat tjeu entered Rhoiney residence unarthorized on 3/ 19 / 88 ,while all residenceses was at the police station and now amazenly recovered the peice of a pipe use in this crime.

Arresting detective Harris gave testimony ( Tr. 98-99 ) that Sharon Sullivan gave statements she seen Rhoiney and Roberts carring Edwards dead body out of the basement. When in fact not in no police report, interview with Sharon sullivan states she gave such statement or had such knowledge.

Arresting detective Harris testified that Rhoiney gave asa a statement and Rhoiney stated he did not want to talk any more to her ( Tr. 50 -51 ) yet police report 3- 18-88 page # 8 clearly states A.S.A. attempted to talk to Eugene Rhoiney But he refuse to give statements or speak to her.

-8-

Arresting detective harris testified that his first conversation
interview with Eugene Rhoiney eas on 1- 26 - 88 and it lasted a
couple of hours hown at Area 4 police station ( Tr. 40 -41 )
Rhoiney was release not arrested. How ever note : 1 - 26- 88
police report, which states , First conversation took place
at Rhoiney residence.

Detective Harris stated in his testimony that Sharon Sullivan
told him in one of her interview that she seen witness Angelo
Roberts jumping up and down, stumping victim STEVEN EDWARDS on
the head (Tr. 66 line 11 ) yet the ASAreported she brought
concealment charges against Angelo Roberts because of his willingly
confession of helping to conceal hide victim body, But brought
first degree murder charges only on Eugene from only the
witnesses police investigation reports. Ironically charges was
not brought against Angelo Roberts or against Ray Robinson
whom both witnesses indeed give statements against, That
would have enabled the ASA to.bring charges and get a conviction.

Police investigator detectives and ASA both gave statement against
Eugene Rhoiney from an alledged confession from appellant Rhoiney
to . Which is so happenly the only evidence that could have the
charge of murder against Rhoiney. Sadly neither of them gave
Rhoiney his maranda rights before or doing or even after such alledge
confessions., which no boubt a Court of law should review and
rule on the statue and presidented cases on these issues of
conclict and constitutional violations against Eugene Rhoiney.

Detective  arris admits he did not read Rhoineymaranda rights
at the time alledgely Rhoiney gave a confession, and that his
partner Dal Ponte was not present doing confession, but detective
Dal Ponte lied sig    the report stating by signiture he was
present doing conffession, which is inadmissable double hear-say
see Naples v. U. S. C. A. D. C .1964, 344 F.2d. 508, 120 U.S.
App. D.C. 123 &riminal Aaw K 407 (1 ) Criminal Aaw K 419 ( 10 ).

-9-

ASA Thompson testified that Rhoiney gave her a confession which such statement of this alledge condession was attributed to ASA from police investigation reports. Which also constituted collateral double hear-say and is inadmissible under sound rules of evidence U.S. V. Ettorre E. D. PA? 1975 387 F. Supp. 582 witnesses K 331.5.

Appellate counselor finley motion, which is based upon the facts that key witness did committ perjury more than once. How ever the other edvidence would still not made a difference in the out come of appellant Rhoiney jury trial verdit. Therefore it is agreed just on trial records and police reports Rooservelt Dyes committed perjury. Yet the appellate counselor gives no credit,no weight to his testimony, as if it had no effectin their decision to render a guilty verdit.

Also appellate counselor ignors the fact that police reports states appellant defender Eugene Rhoiney refues to speak to A.S.A. who testify at Rhoiney jury trial that he gave her a confession. And if the trial jury had of known police stated he refues to give A.S.A. a statement, would they have gave any credibility to her testimony isn't it appellant constitutional right to have had the jury decide this issue instead of appellate counselor who is suppose to gurantee appellant every single opportunity to have such constitutional violations raised. As a matter of fact would any reasonable person be in a uproar to hear a confession given to a A.S.A. and learn no statement was never given.But is being use to take the life of an innocent human being.

The other out rageous confession that was alledgly given to the arresting Detectives, which also shows ineffectiveness of trial counselor and ineffectiveness of Appellate Counselor on Direct Appeal. Which no doubt brings strong possivbility of a conflict of interest in appellant representation right now. The way police did the inter- view with Eugene Rhoiney admitting no maranda rights was given to Rhoiney before or doing any interview with Rhoiney. Than the hear- say issue which makes such statement inadmissable in every court of law.

Finally Appellate counselor must think since it was so many statements given, but not against Rhoiney, he would have been found guilty of a lesser charge of murder. Which no one took the stand against appellant Rhoiney but key witness Rooservelt Dyes, A.S.A. and arresting detectives, never th. less all the other witnesses lived in a 2 block radist among each other, also all of them gave statements of getting high using drugs, dope. And to especially p point out every witness interviewed in this case got caught lying and admitted lying about the actual events in this case. See(17) Witnesses 410 K342 4101v, 410 1v(B),

Appellate counselor finley motion side steps and ignors the facts that all the weapons, key witness identified in this offense. Police clearly states in their report was obtained illegally which adds more constitutional violations and gives appellate counselor more meritorioues claims to raise to at the very least, have given appellant one single right thats gurantee to him by the Illinois Appellate Counselor.

It is clear Appellate counselor agree perjury was committed, but an evidentrary hearing would not make a difference in th out coime of Rhoiney jury verdit. Which all the other evidence is inadmissadle and also with certainly will be challenge under perjury and obstruction of justice. The scale of Justice will till in Rhoiney's favor where justice is so require!

Appellant Pray the Honorable Judges reconsider their ORDER
In this cause after the facts surrounding this cause has finally
been presented for the First time in this court. Unfortunately
as a pro-se litigant, which no doubt appellant want this
Courtto construde, appellant literally throws him self at their
Mercy to review De Novo as if each of you are my lawyer and
pick out facts that will allow justice to preveal in my interest.
Which no doubt will mandate this cause back to the lower court
with instructions that only the chicago police superintendent
cshief comander will once again be shame of by chicago police
conduct. Not to mention the states attorncy prosecutor would not
even attempt to rendrr no explanation to the ASA Thompson conduct.

This appellate Court Third Divison ORDER granting appellate counselor
Finley motion, because as appellate counselor states, Evene
Even with evidentrary hearing still verdit of the jury would still
convict Rhoiney of first degree murder. Even through appellate feels
 that decision is for a jury to convict him with out prejury
testimony. which leaves this Court to review the other ttwo witnesses
plain perjury impeachment. ASA Thompson and detective Harris.
Therefore it would not be another Trial, because no witnesses,
Wherfore this surly shows ineffectiveness of appellate counselor
on direct appeal, which appellant hopes this conflict is visable
by this Court or at least raise the supicion to where this
Honorable court will review even more closely to see if in fact
issue of constitutional violations are indeed a miscaraige of
justice and deprive appellant the fundalmental rights as the
law require or have been given.

Appellant has spent endless nights seeking the knowledge on how
to convey his innocents. Only to constantly come across how
strongly this Court tollerance is qero for perjury. which is
the reason for such lenghty citation on all the people interviewed
in this case and trhe reasons to point out the manufacture
evidence and the ASAand arresting detective lies. which the
records reflect this conviction stadds soley upon perjury.

Appellant request this Court to consider an highly request thatsu unusally In order to gain a deeper reality that laids at the very heart of this offense and the perjury. Also for permission to present for review a affidavitt from appellant defender especially since it is the first time appellant been granted permission to speak with out representation or a Judge telling him not to speak making all the decisions forceing appellant to go alone with every thing or be threaten with the Death penalty because of appellant conviction for a murder years before this offense.

The first request is for this Court to liik at Angelo Roberts back round his street influence for more than the county of cook or the state of Illinois ,His street gang intellegence recored is worst than a drug cartail ,exceptmoney and drugs did not appeal to him higher or as equal than hurting people. His involvement in murders along would make one think hes Osoma bin latin great great grand child. Yet no witness never made it to testify against him and refues to testify against him. Please reflect back to detective Harris testimony that Sharon' Sullivan told him she seen Angelo Roberts. jumping up and down and stumping victim Steven Edwards in the head,m but forsome strange reason it never made it to the police reports mainly requested to review. In afficant affidavit in post-conviction key witness attempts to convince his brother they have nothing to worry about because He did not tell on Angelo Roberts more concern about Angelo Roberts liberity than theirs another key ingrediant and answer to appellate counselor question why Rhoiney did not or will not say who committed the offense he did not personally witness. but as the police confess witnesses came forward against Angelo Roberts. But the unknown to this Court of his track record, The police already knew to give the murder witnesses would disappear no trial as time and time before with ROBERTS.

Appellant maken no attempt to retryu this case or bring issues before this Honorable Court, Other than whats in the affidavit and also points out events after afficant gave sworn testimonym He wanted appellant to with hold out of fear and threats to his family and himself, which the prison security records reflect, Therefore the thought of any disrespecting Roberts in the under world still holds a Red terrist alert. Even through the affidavit eas on Rooservelt Dyes, who son just sohappenly has street rank, influence under Roberts in the same street gang.

Appellant  as told by Sharon Sullivan what she seen and that
she would not repeat it in a court of law or to a grand jury
Appellant told his lawyer to put him on the stand so he can testify
to all the above events and accounts but Trial counselor stated
it is only hear say, and stated that Ray Robinson was in this
same street gang and most   likely would not testify for
Rhoiney .

Appellant request for this court to consider appellate
counselor reasons and support for her Finley motion, which opens
up the gate way to challendge dir ect appeal and other appeals this
Appellate office represented defender appellant on. Which also
allows other constitutional violations to be presented as
Appellant has done so, wherefore appellant wishes this Honorable
Cort to consider it ruleing on, with Supreme Court Rule 23 (a ) .
Which makes Appellate conselor herself challedging the Illinois
Supreme Court or acting as the Illinois states attorney,
But now that the evidence has been allowed to be prsented for
thefirst time before this Court, simply because of the Obvious
Finley motions and issues that only appellate counselor chose
to raise with the knowledge from a legal stand point would not
grant petitioner justice that are so require.

Appellant understand this court make ruleing at the issues
raise, But Appellant askes this Court to examine the points and
senero in this case to Froster the appreciation where justice
laids, wherefore the Fore Fa thers who wrote the constitution
andlaws to protect the innocent and give every one equal
protection with due process that is not use as a yard stick
only constantly attempting to  give appellant Rhoiney only
inches. Wherefore he would have to relinguis the rest of his life
in prison on a conviction base upon perjury testimony and
obstruction of Justice by the Government agencys Them self.
Just to clos e one (1 ) murder case leaving other innocent
civilians unprotected by the uncapture murders and constantly
taking lives them selt,

- 14 -

Rhoiney certainly want this Honorable Court to review the
Lower Court abuse of discretion, and bias and prejudice that
suduce a Fundalmental miscariage of justice doing suppression,
doing motion to Quest arrest and the impeachment of some
witnesses for one lie, but allowed other witnesses to give hours
of lies, Which naturally falls on Trial counselor and Direct
appellate counselor on appeal.


APPELLANT DEFENDER EUGENE RHOINEY PRAYS THIS COURT
GRANT HIM A EVIDENTRARY HEARING NOT ON JUST THE OUT OF
COURT CONFESSION FROM KEY WITTNESS ADMITTING HE LIED
AT RHOINEY JURY TRIALWHICH THIS COURT HAS ALREADY AGREED
KEY WITNESS INDEED LIED ACCORDENLY TO THE RECORDS. .
BUT SO THE LOWER COURT CAN DETERMINE WHEATHER OR NOT RHOINEY
CONVICTION CAN REST AFTER REMOVING KEY TESTIMONY AND REST
SOLEY UPON PERJURY TESTIMONYAND MANUFACTURE EVIDENCE OR AND
CONSTITUTIONAL VIOLATIONS THAT WOULD NOT HAVE ALLOWED
APPELLANT TO HAVE A JURY TRIAL AND CHARGES DISMISSED
WITH PREJUDICE.


Respectfully Submitted by :

IDOC#

P.O. BOX 112 Route

Joliet Illinois 60434

EUGENE RHOINEY #

P. O. BOX  112 Route 53
Joliet Illinois  60434

- 15 -

No. 1-05-2489

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | Appeal from the Circuit Court of Cook County, Illinois. |
| APPELLATE DEFENDER OFFICE | |
| | |
| −vs− | No.88 CR 6091 (02). |
| | |
| EUGENE RHOINEY | Honorable |
| SUPREME RULE 23 ( a) | James M. Schreier, Judge Presiding. |

ORDER

This matter coming to be heard on motion of the Appellant Appellant Defendant Eugene Rhoiney Pro-se

**It IS HEREBY ORDERED:**

That Appellants motion to reconsider pursuant To Supreme Court rule 23(a) is taken with the case.

Presiding Justice

justice

Justice

DATE;

EUGENE RHOINEY A15243
Stateville Correctional Center
P.O Box 112
Joliet, Il. 60434

IN THE

APPELLATE COURT OF

ILLINOIS FIRST DISTRICT

People Of the State of
Illinois Appellate
Plaintiff, Court of Illinois ) ) )
First District Third Division )  Case No. 1-05-2489
v. )
)
)
Eugene Rhoiney Appellant )
Defendant and Illinois Supreme
Court Rule 23(a), Victtor Garcia

## PROOF/CERTIFICATE OF SERVICE

TO: Maria A. Harrigan

Affice of the State App. Defender
203 North LaSalle Stt24th Fl.

Chicago, Illinois 60601

TO:  Steven M. Ravid

Clerk Of Appellate Court, 1st.
District
160 North LaSalle, Room S1400
Chicago, Illinois 60601

PLEASE TAKE NOTICE that on  April    2007  8  , 2062, I have placed the
documents listed below in the institutional mail at Stateville    Correctional Center,
properly addressed to the parties listed above for mailing through the United States Postal
Service: MOTION FOR Recon sideration
With purpose ORDER


Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of perjury,
that I am a named party in the above action, that I have read the above documents, and that the
information contained therein is true and correct to the best of my knowledge.

DATE: April 8, 2007

/s/ Eugene Rhoiney A15243
NAME: Eugene Rhoiney
IDOC#: A-15243
        Correctional Center
P.O. BOX 112
Joliet, Ill. 60434 -0112
        IL

NO. 1-05-2489

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

**RECEIVED**

MAY 2 9 2007

CLERK
SUPREME COURT

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS APPELLATE COURT OF ILLINOIS FIRST DISTRICT THIRD DIVISION | Appeal from the Circuit Court of Cook County, Illinois |
| -VS- | No. 88 CR 6091 (02) |
| EUGENE RHOINEY ILLINOIS SUPREME COURT RULE 23(a) | HONORABLE SCHREIER, JAMES M. Judge Presiding. |

MOTION TO AMEND,
MOTION FOR RECONSIDERATION

NOW Comes Appellant EUGENE RHOINEY and moves this court to review Identical ruleings with the same scenerio of perjury and manufacture evidence by government and government eye witness. From this very same District and Division.

In MARION HOLMES v. People state of 1llinois 606 N. E. 2d. 439, 238 Ill. App. 3d. 480( ILL. 1 Dist. 1992 ). As in this case of EUGENE RHOINEY the state characterize their only eye witness as a innocent bystander, when in fact eye witness, equally admitted in his police reports that he had physical envolvement of a fight doing the date and time of his eyewitness of a fight between victim and brother. Which just o happenly is his testimony to date and time of the murder offense, EYE witness testimony clearly made him accountability for this murder sense eye witness stated ; After his physical involement, victim stayed on the floor and he left the site, apartment basement. This surly violated EUGENE RHOINEY right to due process.

EYEWITNESS established in his out of court confession that he lied at RHOINEY Jury Trial to keep his brother and him self from being charged with the actual murder of victim. which no doubt. explans the explanation andtheory to the mystery as to why hewas not charge with no count of murder and why he gave false testimony. This court must construde behind his testimony and police report testimony, eye witness was indeed given prosecutorial leniency, which also violated EUGENE RHOINEY due process rights.

Evidence showed that state principal witness, performed acts
before during and after commission of murder. And possessed
requisite mens rea at time murder was committed in victim
apartment, such that he was legally accountable for murder.
Eye witness testifyed he just set and watched the murder, DID
nothing or said, nothing to help victim, Most important eyewitnesss
did not report murder to police, S.H. A.ch 38, 5-2 ( c )Homicde
K 30 ( 1 ) 203 II murder 203 K 30  principles and accessories.

Also see 203 K 18 ( 1 ) Person who intends to promote or
faciliate only a battery is accountable for resulting murder
 Also see  7   criminal law K 1171.3 110xxIV U.S.C.A. Const.
Amends 514 harmless and reversible error.
        8   Criminal law k. 1171.8 ( 1 )
See post-conviction petition page 7, where SIMS witness STATE
prosecutor only witness confession of why he lied, Which
was to prevent his-self and brother from being charge with
murder, As if the police and prosecutor gave him the option
to lie or go to prison, which violated DUGENE RHOINEY right
to due process undår Criminal Law K 700 ( 4 ) 110 110xx Trial
110xx ( e ) , 110 k 700 right and duties of prosecuting attorney
110 k 700 ( 2 )Disclosure or suppression of information 110 K
700 ( 4 ) Impeachment evidence, Agreements withwitnesses.


    On MARCH 20, 88 key eye witness admitted his involvement
and why he did not report the murder, and his lies of the account
of what he witness and his involvement, which the Chicago Corner'
for Cook County Dr.Shaku Teas M.D date 1-25-88, examined and
stated, that once the victim was hit across the leggs victim could
no longer walk. (TR.   ) which contridicts eyewitness testimony and
shows his perjury and involvement with murder. Which also raises
possivbility of more than a lesser charge of accountability murder
it self. Which surly make witness no innocent by stander.

-2-

In Umberto perkins 686 N. E. 2d. 663 292 Ill. App. 3d. 624
( Ill. App. 1 Dist. 1997 ) Thired Divison. witness testimony
at EUGENE RHOINEY trial did not indicate witness was given
favorable treatment in exchange for witness cooperation.
witness false testimony could have affected verdit and thus
require reversal of conviction. see page 12 Post conviction.
Eyewitness confess, If he did not cooperate and lie, thenhe
Himself would have been on trial for murder. also police
Reports of 3-20 - 88 why he broke the law and not reporting murder.
Which makes it crystal clear to any reasonable person, eyewitness
back was up against the wall and was force lie. Yet the prosecutors
could have easily gotton around this issue by asking witness question
to his previous contradictions to correct the prejury even if prosecutors
did not solicite eyewitness testimony.Constitutional Law
K 268 ( 9 ) U.S.C.A. Amend 14.

In Leroy Shannon and Melvin Garrett v. People of the State of
Illinois 329 N.E. 2d. 399 N.E. 2d. 399, 28 Ill. App. 3d. 873 (Ill.
App.1Dis. 1975) As in Eugene Rhoiney case he provided supporting
requirements that proueeye witness perjured testimony contribute
to his conviction.Criminal law K-1537 110xxx (B) 110K998(10)

Prosecutor use of testimony that they knew was false by police

reports, Corner Report, Death Certifcate, Corner examination, eye

witness inconsistance statements to such material issues raises an

issue of constitutional S.H.A. ch: 38   122-1 et seg.

Eye witness nor prosecutor, never informed jury that eyewitness

was testifying against Rhoiney, because if he didn't surly some type

of charges would have been brought against him especially sense he

conceal murder from police and had involvement in a battery against

victim that resulted in victim death. see Criminal Law K 702 (2)

110xx (E) 110K705 110K706 (2) Also police report 3-20-88 Page 8.

Also review appellate counselors Finley motions on Direct

Appeal and on above especially the perjury issue. Appellate Coonse-

lor representation was inadequate for not raiseing issues on immed-

iate appeal in order to avoid the waiver rules.

Appellate counselor Finley motion and claim of no other merits

of constitutional claims. allegations surly contradicts the Appellate

court rulings criminal law K 1652 110xxx ( 3 ) 1651 , Since relief

- 3 -

for petitioner is indeed require sense his petition iswupported by
the trial records with out the accompanying affidavit that
petitioner attached that maðe a substantial showing of a
violation of constitutional right S. H. A.  725 ILCS 5/122-1 et seq.
Appellate counselor once again attempts to re-write the law
and give petitioner only inches as she use the law as a yardstick.
As she equally attempts to re-write the Illinois Supreme Court
rule 23 ( a ) and not gaive petitioner no inches of such law.

    Finally see VALLI MOSER v. UNITED STATES of America

UNITED STATE COURT of Appeals Seventh circuit 18 F. 3d.469
Moser v. U.S. ( c.a. 7 ( wis. ) 1994 ) Count II, whoever. in any
matter within the jurisdiction of any department or agency of
the UNITED STATES  knowingly and willf lly falsifies, conceals
or covers up by any trick, scheme, or device material fact,
or makes any false, fictitious or fraudulent statement or
representation, or makes uses any false writing or documents
knowing the same to contain any false, fictitious or fraudulent
statement or entry . Is absolute in violation, of committing a crime.

    As in EUGENE RHOINEY case such violations started at the
police station, and not justbecause inconstitance statements of
witnesses or the confession of other people admitting their
involvement in victim death. nor most important the date of
death and cause of death by experts, That was rendered before
the questiong of any witness, which Ironically contradicts all
witnesses. Yet trial counselor failed to have a hearing to
Impeach every one who took the stand before trial. Simply because
police reports would not have allowed none of the prosecutor
witnesses to take the stand in Rhoiney trial, and also trial
counselor use Rhoiney right to take the 5th as a trick, scheme device
to keep the perjury, false statements from being rebuttered with
the knowledge knowing no one eles was going to take the stand either
that would have contridðcted witness, which had already did so in
police reports as well as in medical examination report.

                              -4 -

Next the issue at hane, Appellate conselor on Direct
imediate Appeal failed to raise what perjury that they claim
exsist now. But would not have made a difference in RHOINEY
Jury verdit. which shows their concealment and cover up.
by filing a Finley motion, which was repeated on other post
conviction. Appellate counselor continues to attempt to conceal
cover up perjury fraudulent government testimony with Finley
motions.

### CONCLUSION

Since Appellate Court allowed appellant RHOINEY to respone
to Finley motion pro-se, RHOINEY  has been able to present
the facts from the records that shows a D N A  match that this
conviction is based solely upon perjury and manufacture evidence,
alone with the criminal activities of state government employees.
WHERE fore Appellant petitioner prays APPELLATE COURT GRANT
him justice and the relief that is so require and over-due.

Eugene Rhoiney
IDOC# A-18243
State Vie Cor. Center
P.O. Box 112
Joliet, Ill. 60434-0112

- 5 -

APPELLATE COURT OF
ILLINOIS FIRST DISTRICT

People Of the State of
Plaintiff, Illinois Appellate
Court of Illinois
First District Third Division                     ) Case No. 1-05-2489
                                                  )
                                                  )
                                                  )
Eugene Rhoiney Appellant                          )
Defendant and Illinois Supreme
Court Rule 23(a) Victor Garcia

PROOF/CERTIFICATE OF SERVICE

TO: Steven M. Ravid                    TO: Illinois Supreme Court
    Clerk of Appellate Court 1st
    District
    160 North LaSalle, Room S1400
    Chicago, Illinois 60601

PLEASE TAKE NOTICE that on May 21 _____, 2007, I have placed the
documents listed below in the institutional mail at Stateville Correctional Center,
properly addressed to the parties listed above for mailing through the United States Postal
Service: Motion to Amend
Motion For Reconsideration

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of perjury,
that I am a named party in the above action, that I have read the above documents, and that the
information contained therein is true and correct to the best of my knowledge.

DATE: May 21, 2007

                                    /s/ Eugene Rhoiney A-15245
                                    NAME: Eugene Rhoiney
                                    IDOC#: A-15245
                                    Stateville Correctional Center
                                    P.O. BOX 112
                                    Joliet, Ill. 60434, ILO112

# SUPPLEMENTARY REPORT

CHICAGO POLICE – FOR USE BY B.I.S. PERSONNEL ONLY

All descriptions and statements in this entire report are approximations or summarizations unless indicated otherwise.

| 4. DATE OF ORIG. OCCURRENCE—TIME | | |
|---|---|---|
| DAY | MO. | YR. |
| 24 | Jan 88 | 0940 |

| 1. OFFENSE/CLASSIFICATION LAST PREVIOUS REPORT | 1.UCR OFF. CODE | 2. ADDRESS OF ORIG. INCIDENT/OFFENSE ☒1 VERIFIED ☐2 CORRECTED | 3. BEAT OF OCCUR. |
|---|---|---|---|
| HOMICIDE/1st DEGREE MURDER | 0110 | 3552 W. Grand | 1121 |

| 5. VICTIM'S NAME AS SHOWN ON CASE REPORT | CORRECT ☒1 YES ☐2 NO | IF NO, CORRECT ALL VICTIM INFORMATION IN BOXES 20 THROUGH 27. | 6. FIRE RELATED ☐1 YES ☒2 NO | 7. BEAT ASSIGNED |
|---|---|---|---|---|
| EDWARDS, Stephen | | | | 5432 |

| 8. TYPE OF LOCATION OR PREMISE WHERE INCIDENT/OFFENSE OCCURRED | LOCATION CODE | 9. NO. OF VICTIMS | 10. NO. OF OFFENDERS |
|---|---|---|---|
| Parking Lot | 330 | 1 | Unk |

(property / circumstances grid)

19. ☒ VERIFIED ☐ UPDATE TO

DESCRIBE PROPERTY IN NARRATIVE. T = TAKEN; R = RECOVERED

FILL IN THE FULL AMOUNT OF ONLY THOSE VALUES WHICH EITHER DIFFER FROM OR WERE REPORTED ON THE ORIGINAL CASE REPORT OR THE LAST PREVIOUS SUPPLEMENTARY REPORT

| 1 MONEY ☐T $ ☐R | 2 JEWELRY ☐T $ ☐R | 3 FURS ☐T $ ☐R | 4 CLOTHING ☐T $ ☐R | 7 OFFICE EQUIPMENT ☐T $ ☐R | 8 TV, RADIO, STEREO ☐T $ ☐R |
|---|---|---|---|---|---|
| 9 HOUSEHOLD GOODS ☐T $ ☐R | 0 CONSUM. GOODS ☐T $ ☐R | 1 FIREARMS ☐T $ ☐R | 8 NARC./DANGEROUS DRUGS ☐T $ ☐R | 9 OTHER ☐T $ ☐R | 1 NONE ☐T ☐R |

VICTIMS UPDATE ONLY

| 20. NAME (LAST—FIRST—M.I.) | 21. I-UCR OFFENSE CODE | 22. HOME ADDRESS (NO., DIR., STREET, APT. NO.) | 23. SEX—RACE—AGE CODE | 24. HOME PHONE | 25. BUSINESS PHONE | 26. IN. / 27. UCR REL.C |
|---|---|---|---|---|---|---|
| 1. | | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |

OFFENDERS UPDATE ONLY

| 28. OFFENDER'S NAME (OR DESCRIBE CLOTHING, ETC.) | 29. HOME ADDRESS | 30. SEX—RACE—AGE CODE | HEIGHT | WEIGHT | EYES | HAIR | COMP |
|---|---|---|---|---|---|---|---|
| 1. | | | | | | | |
| 2. | | | | | | | |

| 31. C.B. NO. | I.R. NO., Y.D. NO. OR J.D.A. NO. | 1 OFFENDER REL. CODE | C.B. NO. | I.R. NO., Y.D. NO. OR J.D.A. NO. | OFFENDER REL. CODE | 32. NO. ARRESTED/UNIT | ARRES STAT |
|---|---|---|---|---|---|---|---|
| OFF. | | OFF. 2 | | | | | |

| 33. OFF'S. VEHICLE ☐ USED ☐ STOLEN | YEAR | MAKE | BODY STYLE | COLOR | V.I.N. | STATE LICENSE NO. | STAT |
|---|---|---|---|---|---|---|---|

| 34. SERIAL NOS. OR IDENTIFICATION NOS. | ☐1 DNA | ☐2 VERIFIED | ☐3 CORRECTED | LIST ALL CORRECTIONS & NEW OR ADDITIONAL NOS. OBTAINED IN NARRATIVE. |
|---|---|---|---|---|

| 50. OFFENSE/CLASS. THIS DATE (IF SAME ENTER DNA) | REV. CODE | 51. METHOD CODE | 52. METHOD ASSIGNED ☒1 FIELD ☐2 SUMMARY | 1 UNIT NO. 642 | 53. STATUS ☒0 PROGRESS | ☐1 SUSPENDED | ☐2 UNFOUND |
|---|---|---|---|---|---|---|---|
| DNA | | | | | | | |

STATUS CONT'D
☐3 CLRD. CLOSED  ☐4 CLRD. CLOSED  5 EXC. CLRD. CLOSED  6 EXC. CLRD. OPEN  7 CLSD. NON-CRIM.

54. IF CASE CLEARED, HOW CLEARED
☐1 ARREST & PROSEC.  ☐2 DIRECTED TO JUV. CRT.  ☐3 COMPL. RFUSD. TO PROSECUTE  ☐4 COMMUNITY ADJUSTMENT  ☐5 OTHER EXCEPT.  ☐ ADULT ☐

55. ☐ FOR SUMMARY CASES ONLY – THE ORIGINAL CASE REPORT IS SUBSTANTIALLY CORRECT, AND CONTACT WITH THE VICTIM HAS DISCLOSED NO ADDITIONAL PERTINENT INFORMATION.

80. NARRATIVE

FIELD INVESTIGATION:    PROGRESS REPORT
DATE AND TIME ASSIGNED:    26 Jan 88, at 1700 hrs.

INTERVIEWED:    PIERCE, Janice F/B 31 yrs. Dob. 11 May 56
    3841 W. Adams, 1st fl. tele. 722-5134

    RHOINEY, Eugene M/B 37 yrs. Dob. 20 Nov 50
    1315 S. Kolin 1st fl.

    LEWIS, Carolyn F/B 36 yrs. Dob. 28 Nov 51
    4240 W. Gladys, 1st fl. tele. 533-0273

    SULLIVAN, Sharon F/B 24 yrs. Dob. 25 Nov 63
    3841 W. Adams, 1st fl. tele. 722-5134
    CONTINUED ON PAGE TWO

| 90. EXTRA COPIES REQUIRED (NO. & RECIPIENT) | 91. DATE THIS REPORT SUBMITTED | | | TIME | 92. SUPERVISOR APPROVING (PRINT NAME) STAR NO. |
|---|---|---|---|---|---|
| NORMAL | DAY 26 | MO. Jan | YR. 88 | 2330 | 736 |

| 93. REPORTING OFFICER (PRINT NAME) | STAR NO. | 94. REPORTING OFFICER (PRINT NAME) | STAR NO. | SIGNATURE |
|---|---|---|---|---|
| Det. W. Wendt | 4268 | Det. T. Pufpaf | 10740 | |

| SIGNATURE | SIGNATURE | 95. DATE APPROVED (DAY—MO.—YR.) | TIME |
|---|---|---|---|
| W Wendt | Pufpaf | 29 Jan 88 | 2000 |

CPD-11.411-B (Rev. 8-85)  *MUST BE COMPLETED IN ALL CASES.

K0015255

EDWARDS, Stephen                          PAGE TWO

EVIDENCE:                  Area 4 Inventory #465634
                           1 yellow, green, and white striped fitted bed sheet.
                           1 white with blue dots fitted bed sheet.
                           1 white with blue flowers pillow case.
                           1 roll 2" gray duct tape.
                           All above items recovered from the basement at 3841
                           W. Adams.

TO BE INTERVIEWED:         ROBERTS, Ray M/B 29 yrs. lives in or near Horner
                           Projects.

INVESTIGATION:             On 26Jan88 at 1630hrs the R/Ds recieved information from
                           Det's DAL PONTE and HARRIS of this command that they
learned that the victim in this case had been represented by Attorney Deborah
J GUBIN in his ongoing Burglary case. They learned from attorney GUBIN that the
victim had been living with a P/B by the name of Janice PIERCE on the first floor
at 3841 W. Adams with a listed telephone number of 722-5134. They also learned that
the victim had been identified by family members at the County Morgue. They further
interviewed the victims mother and learned that the victim had a girlfriend by
the name of Carolyn LEWIS and that she lived at 4240 W. Gladys.
         The R/Ds proceeded to 3841 W. Adams and interviewed
Janice PIERCE and a friend of the victims, Eugene RHOINEY. While at the apartment
the R/Ds obtained a Consent to search form from Janice PIERCE and recovered the
items that are listed in the Evidence category of this report. We were shown to
a room in the basement that was stated to be the victims 'apartment'. This room was
inspected and found to contain 1 king size bed , a coffee table and a 19" color T.V.
with a stand. Some misc. items were on the floor and in a small side closet there
were two coats, one imitation suede with fur collar and one navy blue parka on hanger.
Outside the victims room is the basement proper that is unfinished. Immediately
outside the victims room there was a single day bed that, after inspection, was found
to have been made with a yellow, green and white striped fitted sheet that is similar
to the sheet ligatures that were found on the victim. Across from the daybed were
misc. tools and tool boxes , one of which contained a roll of 2" gray duct tape.
The other items recovered were found in a pile in the very front of the basement.
                           Janice PIERCE was interviewed and the following is
a summary of what she related:

Janice PIERCE              stated that Steve moved into her house during the summer
                           of this past year and lived in a room in the basement.
She said that on Friday night the 22nd of Jan she had several people over to her
house to watch the championship fight. She said that all that attended got high
but added that only Steve, his girlfriend 'Cat', her boyfriend Eugene and a friend
named 'Ray' spent the night. At approximately 6:00 A.M. she hears an argument in the
basement and goes downstairs. When she got downstairs she heard an argument wherein
'Cat' was accusing Steve of taking her car and $20.00 during the night. Shortly
thereafter 'Cat' left. At about 8:40 A.M. 'Cat' came back to her apt. and accused
Steve of stealing her VCR from her apartment during the night while she was asleep.
Janice said that she gave 'Cat' $20.00 to calm her down and appease the argument
and added that she heard Eugene tell 'Cat' that he would check around the neighborho
to see if he could get her VCR back for her. 'Cat' then left and said she was going
work.  Janice said that a few minutes after 'Cat' left she left her apt. to visit
friends in the Horner homes and said that she took a Madison ave bus to get there.
She said that when she left, 'Steve', Eugene, Ray and another tenant named Sharon were
in the apt. She stated that she did not return to her building until about 11:00 P.M
Saturday night and that when she arrived home Eugene, Ray and Sharon were in the apt.
She said she has not seen Steve since she left in the morning.

                           CONTINUED ON PAGE THREE..... PER 02

EDWARDS, Stephen                              PAGE THREE


INVESTIGATION(cont)          Eugene RHOINEY was interviewed and the following is a summa
                             of what he related:


Eugene RHOINEY            stated that he has known the victim for several years and
                         introduced him to Janice when he learned that he needed
a place to stay. He also said that he was at Janice's apt on the night of the fight
and said that he also stayed the night. He heard the argument between Cat and Steve
and heard Cat accuse Steve of taking her car during the night while she was asleep. .
He said that at about 6:00 or 7:00 A.M. Saturday morning Cat left. At about 8:40 A.M
she came back and accused Steve of going over to her apartment and stealing her
VCR. He said that she also complained of being minus $20.00 and said that he saw
Janice give Cat $20.00. He told her that Steve did not bring a VCR into the apt but
added that he would try to get it back for her. After Cat left he said that the phone
rang and a male black asked to talk to the 'white guy' Eugene said that he talked to
the male black and inquired why he wanted to talk to the 'white guy'. He was told
by this male black that he was trying to find a 'white guy' that had stolen his car.
At this time Steve got on the phone and spoke to the subject and agreed to go with
him to see a witness to the theft to prove that he was innocent. A short time later
two male blacks pulled up in a beige station wagon and Steve went out and got into
to car. Eugene could not describe these two male blacks other than that they were
no older that their forties. He stayed around the house until about 4:00 P.M. and the
went out and returned about 10:00 A.M. He said that he has not seen Steve since he
left and said that when Steve left he was wearing a dark ski jacket.


                         The R/Ds also located Sharon SULLIVAN F/B24 DJB 25Nov63
who live in a rear room on the first floor of Janice PIERCE's building. She said that
on Saturday morning she was awakened by an argument between Cat and Steve. She
said that the argument took place in the kitchen and that she did not come out of her
room. She said that she did not se Cat or Steve leave and said that she stayed in her
room for the rest of the day.


                         The R/Ds next went to 4240 W. Gladys and interviewed
'Cat' now known as Carolyn LEWIS. The following is a summary of what she related:


Carolyn LEWIS AKA Cat       was interviewed at her house. She related that she met
                            the victim in November of 87. They met while walking down
the street. Carolyn was introduced to Janice and Eugene through Stephen. On Friday
night, Carolyn and Stephen went to some friends house to watch the fight. After
the fight they went back to Stephens house at 3841 W. Adams arriving at about
midnight. Carolyn states that were were a lot of people in the house at that time
and she did not want to stay. She asked Stephen to go back to her house, but he
would not leave, so she she went into his room, took off her clothes and went to
sleep. At about 0600 hrs. she awoke and she could hear a conversation through the
wall in the adjacent bathroom. She states that Stephen and another person were
talking. As she continued to listen she could hear that the conversation was about
her. The other male was telling Stephen that he should take all of Carolyns possessio
Carolyn got out of the bed and noticed that her clothing was no longer in the bed-
room where she left them. She went over to the bathroom and saw a M/B, now known
as Ray Roberts. She then went into the bathroom and saw Stephen putting a hypo
syringe into his pocket. Carolyn states that this is the first time she ever saw
Stephen with any narcotic paraphenqlia and she was surprised. She and Stephen then
began to argue about his use of narcotics. Carolyn then saw her clothing and she
began to get dressed. When she put on her jeans she noticed that her car and house
keys were in the pocket. She states that she always keeps her keys in her coat
pocket. She also noticed that $20.00 was missing from her pocket. She then accused
Stephen of taking her money and her car while she was asleep. Carolyn finished
dressing and left the house.

                              CONTINUED ON PAGE FOUR

HOMICIDE/1st DEGREE MURDER

EDWARDS, Stephen                          <u>PAGE FOUR</u>

INVESTIGATION CON'T:            Carolyn LEWIS went on to state that when she walked
                                outside she noticed that her car was not parked in the s
spot that she left it. She went home and when she entered her living room she noticed
that her VCR was missing from her TV set. Carolyn returned to 3841 W. Adams and
now accused Stephen of entering her house during the night and taking her VCR.
She and Stephen again began to argue. At this time Janice offered to give Carolyn
$20.00. Eugene then told her that he would check around and see if he could find
her VCR. Carolyn then left and went to work. She states that she never saw Stephen
again.

                                The itmes recoverd from the basement at 3841 W. Adams
will be sent to the Crime Lab to be compared with the bindings taken off of the
victim.

                                Investigation continues....


REPORT OF:                      Det. William Wendt #4268
                                Det. Thoams Pufpaf #10740



Final Response

FILED
SUPREME COURT 1st DIST.

OCT 1 1 2006

STEVEN M. RAVID
CLERK

No.1-05-2489
IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT


EUGENE RHOINEY,
Petitioner-Appellant,

—vs—

PEOPLE OF THE OF ILLINOIS

Appeal from the Circuit Court
of Cook County, Illinois

No.88 CR 6091 (02)

Honorable
James M. Schreier,
Judge Presiding


RESPONES TO APPELLATE
COUNSEL FINLEY MOTION
AND MOTION TO WITHDRAW

The office of the State Appellate, has always represented
petition    on Appeals, Direct and post-conviction petitions, with
the exception of one post-conviction appeal, that the Appellate
Court assigned a different lawyer. Which all representation on
appeals was inffective.


In support of this respones petitioner states:

1. Petitioner-Appellant, Eugene Rhoiney was convicted for first
degree murder under perjury and manufactored evidence. Appellate
Defender office represented him on appeal in the appellate
court. His conviction and sentence were affirmed on direct
appeal . Because no briefs was filed on ineffectiveness assistanc
of trial lawyer or on the perjury that clearly was in the
Trial transcripts on direct appeal in appellate court number
(1- 89--2891 ) see People v. Rhoiney 252 Ill. app. 3d. 320
( 1st Dist. 1993 ) Also Trial cou rt showed bias and prejudice
not granting petition equal protection of the law.

2 . On May 2, 1990, Rhoiney petitioner filed a 2-1401
petition, which was denied on June 20, Because petitioner
had no reasonable level of assistance of counsel, see 2page
transcript of hearing. Also petitioner place of incarceration
was on lock down,  Which means no phone calls and no law
Library and late mail, See prison lock down dates.

3.  On October 4 , 1993 pet tioner filed a state habeas
petition, In hopes that petitioner could get a court to review
all the constitutional violations. That he raise on post-conviction
petitions that the Trial court never decided nor rule on the claim
and that the appellate defender office never filed a brief

Which such acts did not grant petitioner no inches of what the law so require. This Habeas petition was denied on January 27, 1994. Thedismissal was affirmed on appeal. There is no mystery to who handled this appeal, which surely would have been a conflict of interest if the briefs was filed in the persuit in petitioner interest therefore the dismissal was affirmed on appeal and the PLA was denied on October 6, 1994.

4.    On March 17, 1994 petitioner a post-conviction petition in hopes of relief, h aving his constitutional violations decided on. Trial court proceeding were deficient and it was dismissed on March 28, 1994. The same appellate defender office was asigned to represent petitoner on appeal and filed a Finley Motion instead of a brief in petitioner interest. Because it would  ave been a conflict of interesst in their office by showing Ineffective assistance of counsel on Direct Appeal and all petitioner other appeals this office han dled.

*Conflict Appellate Counsel 1st District*

5.    On December 1, 1995 petitioner filed another post-conviction petition and Trial court proceedings was deficient and Appellate defender office filed a Finley Motion. for the same reas n in 4. above.

6.    On May 2, 1998, petitioner filed another post-conviction petition, The same occurance happen as in 4,5 above.

7.    On April 4, 2005 petitioner appellant filed another post-conviction petition  upported by accompany affidavit and Trial records, that showed police could not have obtain an warrant for petitioner arrest when he was taken to the police station and petitioner would have been released on post-trial motions Iftrial counsel was effective nor would jury have convicted petitioner had they known all the facts and inconsistacce perjury given byt state witnesses. Also  this casewould have been long reversed had appellate counsel was effective. Trial court dissmissed petition on May 3, 2005. Once again as routine appellate counsel filed a Finley Motion for thesame rea on above.

8.    After an continueous repeat from trial Judge and App llate defender office. Petitioner has conclued that, since appellate counsel has delva:::'.e stated unsupported history of this cause that the record Do not reflect before petitioner arrest up to t/is Finley Motion and permission to with draw. A memorandum supporting petitioner respones for relief is attached.

WHEREFORE, the appellant petitioner pro-se respect fully moves forrespones and motions to be reviewed in this cause.

Respectfully submitted.
*Eugene Rhoiney*
EUGENE RHOINEY
APPELLAINT  PETITIONER
PRO SE

WHEREFORE, the Appellant Defent pro-se respectfully moves to responce to Appellate counsel Doouments and Motion on appeal in this cause.


Respectfully submitted,

*Eugene Rhoiney*

EUGEME RHOINEY
pro-se Appellant Defender
P.O. BOX 112 route 53
Joliet Illinois 60434

No.1-05-2489
IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

EUGENE RHOINEY,
Petitioner-Appellant,

-vs-

PEOPLE OF THE STATE OF ILLINOIS
Respondent-Appellee,

Appeal from the Circuit Court
of Cook County, Illinois

No.88 CR 6091 (02)

Honorable
James M. Schreier,
Judge Presiding

MEMORANDUM IN SUPPORT OF RESPONES
SEEKING RELIEF FROM TRIAL COURT
JUDGEMENT AND APPELLATE COUNSEL
FINLEY MOTONS

STATEMENT OF FACTS

At 9;45 a.m. on January 24, 1988, police disovered a
dead body be hind the Jewel food store at 3552 west grand ave
Chicago IL.(POLICE REPORT) decease unknown.

Office of the medical examinator for cook county Illinois
and the Report of postamortem examination;Dated January 1,
24, 1988. Gave e pert fact findings, That the date of death
was 1/24/88.after the deceased body was completely examined
on January 25, 1988.

During police investigation. Police learn whom  deceased
parents were (medical certificate of death ) (Supplementary
Report page two )

Police Field Investigation of January 26, 1988 learned
that deceased was represented by attorney Deborah J. Gubin
and that deceased lived with a F/B by the namne of Janice
Pierce at 3841 w. Adams, Also at this time police learned
deceased mother that he had a girl friend by the name Carolyn
Lewis and that she lived at 4240 w. Gladys.

Po lice went to decease apartment and met his landlord
and one of decease friends Rhoiney. Which police obtain permissio
to search decease apartment. and recovery the items 1 yellow
green and white striped fitted bed sheet.
1 white blue dots fitted bed sheets
11 whit blue flower pillow case.
1 Roll 2" gray duct tape. which all items was suspective to
have been tied into murder ( Field Report page 2 )

1

Detectives learned of all the people and some of the
events that took place in decease life from the 22, Jan. 1988
until his death 24 Jan. 1988 from Pierce and Rhoiney. Detectives
learned of a arguement between decease and girl friend Carolyn
Lewis. Detectives than interviewed Sharon Sullivan that lived
in the back room in pierce house, Sullivan stated         she
was awaken by decease and Lewis argument that took place in
the kitchen, but she stayed in her room all that day, So do
not know nothing eles.

Detectives wanted to interview Ray  Robinson that lived
in ornear the Horner projects.

Detectives interviewed decease girl friend Lewis the
next morning at Lewis house at 4240 W. Gladys. and learned
why decease and Lewis was arguing and that decease use drugs
and that s M/B Ray Robinson was with steve and threathening to
take all Lewis possessions Lewis also stated her keys and
clothes was moved and $20 was missing. Than she stated even
her house and Pierce gave her $ 20 to replace her stolen money
and Rhoiney said he will check around and see if he could
find her V.C.R. Lewis than stated she never saw deceasse again.

Detectives learned that a bed sheet mat ched a blind use
on decease and got a dearch warrant on 29, Jan. 1988and then
treated decease apartment as a crime scene.

On Jan. 31,1988 the detectives reinterviewed Sullivan
and Pierce after bringing them to the police station to scare
them. So now Sullivan now recalls one more person at the
house a man name Jackie Gaston which was a friend of pierce
she stated.Now the detectives tells Pierce what Sullivan said
about Gaston being at her house on the 23, Jan. 88 So Pierce
now remembers Gaston and told them Gaston told her he seen
decease at a drug house and that decease was acting like a fool.

On Jan. 30, 1988 detectives returned to Pierce and decease
house and found Jackie Gaston sleep in decease apartment. THEN
Took HIM TO THE POLICE STATION TO INTERVIEW HIM.Gaston stated
decease drove Lewis car add was trying to sale a V.C.R. on the 23
Jan.88 and decease tryed to get him to sale the V.C.R. ,m But Gas
Gaston refuesed to help decease and Gaston went to Pierce
house and Sullivan let him in and Ray Robinson wad there and
decease was still out in the streets trying to sale the V.C.R.
Gaston then stated Rhoiney and Pierce came home later and
they all set around watching T.V. and he smoked all Robinson
cigarettes up , So Rhoiney gave him money to go buydRobinson
more cigarettes and after returning with the cigarettes he
ask Rhoiney for money to get home. Gaston said rhoiney said
clean the basement and the will pa;y  him. Gaston cleaned
the basement and finished Sunday morning and went up stairs
and fell asleep. When he woke up Rhoiney paid him $ 7 for
cleaning the basement.

Gaston states as he was getting readyu to leave two friends
from Aurora illinois came by and picked him up and took him
took him to Aurora and he stayed in Aurora unstil Jan, 29 88

Detectives reinterviewed Lewis since Gaston said decease
drove a car matching LEWIScar. She stated decease could have'
had keys made the one time he kept her car and did work on it.
Lewis now tells detectives that Rhoiney contacted her to compare
what the detectives asked thenm and what the detectives asked
them and what they told detectives and that Rhoiney was concerned
about  bed sheets they took from decease apartment because
they matched the sheets found on decease body.

Lewis was shown photos of the sheets and could not recall
ever seeing sheets or any sheets similar in decease bed room
or on the day bed out si de decease room.

Detectives have Ray Robinson in police reports giving
statements twice putting the murder on Rhoiney. Ray Robinson
was beat and threathen to go aling with what police said what
was put in the police .This police burtality was investigated
by MORT SMITH June 5, 1989 I.A. which showed police statements
to  Robinson that Robinson allegly made after reviewing such
statements Robinson circled and undrlined every thing that was
not said by him.

During police investigation Dyes told police about a young
boy Angelo Roberts being present present when Rhoiney committed the
crime, and Sullivan showed police where Angelo Roberts lived.Angelo
Roberts was picked up and taken to police station and charged with
Concealing a Homicidal Death on March 88. On the 23, March 88,
Angelo Roberts was charged with murder of Steven Edwards.

Eugene Rhoiney refuse to give police & States Att. a statement
during their interview at the police station.

Each timeDyes gave police statements he added more and more
events about decease last days alive, and began fingers at his bro-
ther-en-law and Rhoiney.

All the statements given to police and trial court .
Doing police investigation and to jury where inconsistanceand
contradicted by POST MORTEM REPORT and DEATH CERTIFICATE
which states in such reports, The date of death was Jan. 24,1988
on a Sunday. accordenly to all testimony that STEVEN EDWARDS
was killed Saturday morning Jan. 23, 1988 along wisth ther
perjury testimony. Which is listed below proves RHOINEY convictio
is soley based on perjury.WHICH STATES AS FOLLOWS:

1/26/88 SUPPLEMENTARY REPORT, FIELD INVESTIGATION REPORT.
JANICE STATED SHE LEFT HER HOME SAT. leaving RHOINEY and
others there along whuntil she returned at 11:00 p.m. ( POLICE
REPORT PAGE # 2 )

a). Janice Pierce stated she met Rhoiney at a
party Saturday night and he took her home ( Tr. 822)

3

2.   Janice Pierce stated Jan.22, 1988 friday night she heard some ne yell down stairs , she went to see what happen and saw Stephen crawling on thr floor bleeding from the head. She asked what had happened and was told that Stephen hit Ray with a stool. Ray was laying on the couh, he said his back was hurting. Ray & Janice went upstairs and Janice rudded Ray back.

a.) On Jan 26, 1988 Janice never told police that Stephen was crawling on the floor bleeding from the head. From the fight where Stephen hit Ray on the back with a bar stool, nor did she tell the police that she had left Stephen on the floor bleed from the head.

3). Janice Pierce stated she told the police she never saw what the police took outof her house, if in fact they took any thing out of her house and the first time she ever seen that evidence was in the police station (Tr. 822 ).

a0. Jan. 26, 1988 police report stated that they obtained a consent to search form from Janice Pierce and recovered items that are listed in the evidence category of the report, page # 2.

1. Carolyn Lewis gave no information to police about the bed sheets in her statement, ( Field Report Jan.,1988)

a). Carolyn lewis stated she liiked around the apartment for her clothes afthe spending the night at decease house, sleeping in decease bed, ( Field report page 3-4   3-4 Jan, 26, 1988 ).

2. Carolyn Lewis re-interview from the police field investiga progress report date and time assigned 29,Jan, 1988 she stated she never seen the sheets the police showed her photos of use in crime as evidence or never seen any sheet similar to what they showed her on decease bed or on the day bed out side his room (POLICE REPORT PAGE #4 )

a). Carolyn Lewis testified that she described the bed sheets use in this crime to police, ( Tr. 555 ).

1. Jackie Gaston was found sleeping in decease apartment by field policeinvestigator on Jan. 30, 88 ( Progress report) ( page )

a). Gaston stated he never seen the basement floor boards while cleaning the basement, ( Tr. 851- 852 )

2. Jackie Gaston stated to police he last seen decease at a d dope with T.V.  and VCR trying to sale them Jan, 23, 88 Saturday decease was driving a burgundy colored car,

a).Jackie stated he last seen Steven at a dope house Satlkuraday  Jan. 23,88 ( police report Jan. 31, 88 page #3 )

b). Jackie stated he left decease at a dope house
and went to decease apartment and stayed until the
morning ( POLICE REPORT PAGE # 3)

1. Appellant EUGENE RHOINEYrefues to give police statements or
speake with the assistance states attorney. Rhoiney tóókhis
fifth admendment right doing police station investigation

a).Police stated Rhoiney gave a prior statement and
claimed the statement was a lie ( Tr. 642 )

b). Police station reports clearly stated EUGENE RHOINEY
refues to speak with police or assistance states
attorny Delcine  Thompson ( see police report 23,
Jan,,88 page # Field investigation 18, March 88 page
#  8) also attached high lighted.

2. Appellant Rhoiney had clearly established he was taking
the fifth, before trial, which had been disscussed
between attorney and prosecutor and Tri al court had
such knowledge. Reasons was because Rhoiney had already
been to prison on a Murder charge.

a0. Assistance states attorney testimony could not
be cross- examined that she gave as hear-say, unless
Rhoiney invoked his fifth admendment right and took
the stand.

b). State prosecutor clearly shifted the burden on
RHOINEY BY KNOWING HE WAS NOT GOING TO TAKE THE STAND
AND ALLOWED HEAR_SAY TESTIMONY THAT WAS GIVEN THAT Rhoine
allegly gave.

1. Assistance States Attorney Delcine Thompson attemped to
interview Eugene Rhoiney but Rhoiney refues to speak or talk
with her. (Field investigator police report 18, March 1988
page # 8 )

A). ASAstated she had a conversation with Eugene
Rhoiney, (Tr. 797, )

B). ASA continues to testify she had a interview
conversation with Rhoiney (Tr. 798 ).

c). ASA now states detective Harris and Delponte
 was present doing her interview with Rhoiney (Tr.
798)

D). A side bar was held out the presence of the jury
to disscuss Rhoiney did refues to talk to ASA and
invoking his right to and attorney (Tr.799).

2. ASA testified that Rhoiney told her after it was clearly established he refuese to speak with her, That Carolyn Lewis was a friend of his (Tr. 800 ).

      A). Carolyn Lewis stated she met Eugene and Pierce Friday night the 22,Jan. 88 thurSteven, So its no way she could have been Rhoiney friend (Field investigato Jan. 26,1988 page #3 )

One of the arresting detectives typed up a w.ritten report of allegled statements Rhoiney made. But a different/another arresting detective signed the false statement report.

      a). see Motion to suppress statements.

1. Dyes Roosevelt two different statements he gave upon arriving at Janice Pierce house on the 23 Jan..88 Saturaday FIRST INTERVIEW ( March 18,m 88 )at dyes house.

      a). Ray.cocked drugs for him self ( FIRST INTERVIEW ) March 18, 1988 )

      b) Dyes stated he sat around smoking marijuana at Janice house in second inteerview on the 19, March ( police report page # 5,6 )

2. Dyes first police interview on 3/18/88 he never mentioned Rhoiney or a murder just a fight between decease and his brother-en-law ( Field investigator progress report 18march 1988 )

      a). Dyes now states Rhoney was present at the fight between his brother en law and decease and Rhoiney hit decease with pipe. ( MARCH 19, 1988 )

      b.) Pierce was up stairs when she heard some one yell downs stairs, She said she went to see what had happened and saw Stephen crawling on the floor bleeding from the head, She asked what had happened and was told that Stephen had hit Ray with a stool Ray was laying on the couch he said his back was hurt ( 18,Mar. 88)

      c). Robinson, stated Stephen hit him across the back with a stool. Robinson hit Stephen with his fists a few times, then Ray went up stairs, and went to sleep. Leaving Stephen and Robinson in the basement.(19,Mar.88)

6

3. Dyes arrived at Janice house on Saturaday 23rd 1000 hrs
and than Dyes and Ray left to go cash Ray check. Ray brought some
drugs and they returned to Janice Perice house to cook the drugs.
The decase ask for some of the drugs Ray said no, Then the deccase
hit Ray over the back with a chair. (P.R. page #6)
  A. Dyes took the chair from decease stopped the fight
     and left. ( Police Report March 20, 1988 page #6)

4. Dyes testifed that he watched the Larry Holmes and Tyson
Fight at Janice houes and spent the night from friday to Saturaday
Jan. 22-23 saturaday morning.(Tr.576-577) (Line 24 on 576 and line
1 on 577)
  A. Field Investigator Report dated 18,March,1988
     Dues testifyed that he arrived at Pierce house on
     saturaday 23 early morning-(Police Report page#6)
5. Dyes testifyed that Robert the young kid was at Janice Pierce
house saturaday morning when Dyes woke up at Janice Pierce house
(Tr.577 line 4)
  A. Dyes gave statements to police that him and his brother.
     en-law Ray Robinson did not spent a night at Pierce house
     so he could not have known who was at her house saturaday
     morning or who was their friday 22 to the 23 saturaday
     morning (Police Report March 18,1988 page#6)
  B. Ray Robinson, Dyes brother-law gave statements to police
     that Stephen, Eugene, Janice and Caroly lewis was the
     Stephen, Eugene, Janice and Carolyn Lewis was the only
     people at Pierce house saturaday morning on the 23,Jan,
     1988 and not the young kid Roberts.(Field Investigation
     police report page#4 March 18,1988)
  C. Ray Robinson said to police that him and his brother-en-
     law Dyes did not spent a night at Pierce house(March 18,
     1988 page #4 Police Report)

6. Dyes Restifyed that after he took Ray Robinson to cash his
check they went straight back to Janice Pierce house (Tr.577-578)
line 1)
  A. Ray Robinson gave police statement that his brother-en-
     law Dyes took him to buy some dope after he cashed his
     check (Police Report page#4 March 18, 1988 Field Invest-
     igator Report)
7. Dyes testifyed that Eugene came down stairs and broke the
fight up between Robinson and Stevens.(Tr.580 line#9)
  A. Dyes gave police statement that Dyes broke the fight up
     between Steven and Robinson. (Field investigator Report
     March 18, Jan. 1988 page#6)

8. Dyes two different statements he gave upon arriving at Janice
Pierce house on the 23,Jan.88 saturaday(Field Investigation rrogress
Report 18, March 88)
  A. Ray cocked drugs for him self(first interview)(March 18,
     1988) at Dyes home)
  B. Dyes stated he sat around smoking Marijuana at Janice
     house in second interview on the (19th. March,88) police
     Report page 5,6 at Dyes home)

7

9. Dyes First Police interview on 3/18/88 he never mentioned
Rhoiney or a murder. Just a fight Between Decease and his brother-
en-law (Field Investigator Progress Report 18, March 1988)

    A. Dyes now states Rhoiney was present at the fight between
       his brother-en-law and decase and Rhoiney hit decease with
       pipe. (March 19, 1988)

    B. Pierce, was upstairs when she heard someone yell downstairs.
       She said she went to see what had happened and saw Stephen
       crawling on the floor bleeling from the head. She asked what
       had happened, and was told that Stephen had hit Ray with a
       stool. Ray was laying on the couch, he said his back was
       hurt( 19, Mar 88)

    C. Robinson, stated Stephen hit him acoss the back with a
       stool. Robinson hit stephen with his fists a few times, then
       Ray went up stairs, and went to sleep. Leaving Stephen and
       Robinson in the basement. (19 Mar. 88)

No. 1-05-2489

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ) | Appeal from the Circuit Court |
| ) | of Cook County, Illinois. |
| Respondent-Appellee, ) | |
| ) | |
| vs ) | No.88CR6091 (02). |
| ) | |
| EUGENE RHOINEY, ) | Honorable |
| ) | Aames M. Schreier, |
| Petitioner-Appellant. ) | Judge Presiding. |

MOTION FOR REASONABLE LEVEL OF ASSISTANCE FROM
COUNSEL ON POST-CONVICTION PETITION. MOTION
FOR ENTRY OF PROCEDUAL RULES ON POST-CONVICTION
PETITION IN CIRCUIT COURT. MOTION OBJECTING TO
APPELLATE COUNSELOR MOTION TO APPELLATE
COUNSELOR FINLEY MOTION.

Now Come Eugene Rhoiney petitioner pro-se pursuant to the illinois Appellate Court First District New rule Effective as of September 1,2004.

Petitioner seeks entry of        Rules that Governs Post-Conviction proceedings under Section 122-2. 1(b) of the Act (725 ILCS/122-2. 1(b) West 1996). Petitioner seeks reasonable level of assistance from counsel on Post Conviction procedual Criminal Law ┌10 Key 1602 (Formerly 110K998(20).

Trial court conduct impeded counselor access to the factual or legal basis for this claim. It was not reasonably available to counsel. Trial Court failure to disclose all materials and under this certain circumstances a procedual failure attributed to an decision By appellate counsel not in pursuit of prtitioner interest.

And the failure of counsel to raise a constitutional issue reasonably unknown to her is one situation in which the requirement is met for this Court to Reject the Finley motion. Also the post-conviction petition proceedings were deficient, being that petitioner actual innocence claim is supported by affidavit and expert witnesses.

This Post-Conviction Petition of actual innocence accompanyed with Affidavit / trial record . Petitioner motions this court to Review DeNovo, The dismissal of this post-conviction petition with out an evidentiary hearing is reviewed denovo People v. Coleman 183 lll.2d 366. 389 233 Ill. Dec 789, 701 N.e. 2d 1063(1998) and use it's Judicial Jurisdictional powers to Release Pititioner from prison sense all the facts stated by Expert witnesses Dr. Shaku Teas and in affidavit are to be taken as true and correct, or reverse trial judge denial and remand this cause back to the Circuit Court under different Judge for an evidentrary hearing.

In support there of petitioner submits the attached affidavits and exhibits.

Respectfully Submitted,

*Eugene Rlwomecp*

Petitioner Pro-Se

*10*

## AFFIDAVIT OF EUGENE RHOINEY

Eugene Rhoiney being first duly sworn on oath, deposes and states as follows;

1. Petitioner filed Post-Conviction Petition as a poor person and motioned the Court for appointment of counsel. Under section 122-2.1(b) of the Act (725 Ilcs 5/122-2.1 (West 1996)

2. The circuit court did not grant petitioner no reasonable level of assistance from counsel, even after petitioner made the choice to be represented by counsel. 110K1602K 110K998(20)

3. Trial Judge docketed this post-conviction petition of Newly Discovered Evidence of actual innocence for further proceedings**619 ***848 People v, Thomas, 195 Ill.2d 37. 40. 252 Ill. Dec. 684, 743 N.E. 2d 552 (2001) See, proceeding Transcript Attached with only the alledged Court Clerk and several different official court reporters and several dates, of continuences.

4. The state never answered this petition or move to dismiss it. 725 ILCS 5/122-5(west 1996) :Thomas, 195 Ill. 2d. at 40.252 Ill.Dec. 684, 743 N.E.2d 552. This petition was never disposed of on a motion to dismiss. The post-conviction petition made a substantial showing of a constitutional violation. This post-conviction should have proceeded to an evidentiary hearing. People v. Hobley 182 Ill. 2d 404, 428, 231 Ill. Dec. 321, 696 N.E. 2d 313 (1998). An evidentiary hearing is warranted, all well pleaded facts in the petition and in supporting affidavit are to be taken as true. People v. Caballero, 126 Ill. 2d 248, 259, 128 Ill. Dec. 1. 533 N.E 2d 1089 (1989)

5. The gist of petitioner claim is that the eyewitness for the state made a confession to affiant in petition affidavit that he liad at trial to protect his brotheren-law and him-self. Petitioner filed his petition supported by an affidavit of one witness, who swore that the prosecutor key witness admitted to that witness, that he lied at trial. Petitioner supports a post-conviction petition with evidence that a key witness, out of court and not under oath, said he lied at trial. The trial Court must hold an evidentiary hearing to determine whether the witness committed perjury at trial. As this is a New Rule of Law in the Illinois First Appellate District. A new Rule 36 of Law.

6. On the date of March 21,2005 a meeting was set up at the prison law library so I can      hear person ally the statement / confession that the state's key witness gave about lying at my trial. So imediately by being in the law library I requested an affidavit. And had several law clerks to asist. Me in typing the Post-Conviction petitioner together this very same day. I received this information, that I could never had knowledge of. See affidavits attached to original newly discovered actual innocent petition.

7. Also see Exhibits #3 and #4 in moton for reconderation of trial court denial under supreme Court Rule 651. The factual findings and testimony from Expert witnesses that also prove petitioner actual innocents and that the States key witness lied at trial.

8. Shortly there after petitioner filed his post-conviction petition claim of Newly discovered evidence and actual innocence, the affiant and his family was threathened by street gangs. Affiant was unawhere that petitioner had already filed the post-conviction petition. There fore affiant disclosed to petitioner, the serious violant threaths made upond his family and himself. And asked/ requested petitioner to not file his petition for safty reasons of affiant family. petitioner informed affiant at that time, that petitioner had already filed the petition.

9. Affiant had no choice, but to report such serious urgent matters to the athorities. Prison Internal Affairs and Attorney General Lisa Madigan.

10. After petitioner Newly Discovered Evidence of actual innocence; accompanyed by supporting affidavits and Expert witnesses. Trial Court Dismissed Petitioner, Post-Conviction Petition on May 3rd 2005 and demonstrated a miscariage of justice, which not for the claimed constitutional error, petitioner wouldn't have been sentence to life in prison. see Hudson 195 Ill.2d at 124, 253 Ill. Dec. 712 745 N.E. 2d, 1246 citing Sawyer V. Whitley, 505 U.S. 333 112 S.CT. 2514, 120 L.Ed 269 (1992)

CASE NO.  08cv 4261

ATTACHMENT NO.  1

EXHIBIT  _____

TAB (DESCRIPTION) _____

Petitioner filed a motion for reconsideration to the cheif judge, to prevent the appellate court from having to rule on trial court rediculous, bias, prejudice, deficient denial order , he entered. Also petitioner attached affidavit and other documents supporting his claim of actual innocence. So this cause would be asigned to another judge to determine, if indeed perjury was committed. Yet trial court denied motion for reconsideration on June 20,2005, that was mail by U.S. postal to Chief Justice Judge on May 25,2005. See Motion for Reconsideration with attachments.

12. Trial court never forward petitioner no documents nor transcripts to any of the dates this matter was before him;Except a denial order entered on May 3, 2005 and a denial for motion to Reconsider on June 20,2005, for the violation of constitutional claims accompanyed by supporting affidavits with expert fact finding proving petitioner's actual innocence.                    7/14/05

13. Petitioner filed notice of appeal himself for reason of Deficiency: no reasonable level of assistance of counsel/appointed by trial court after the decision was made from petitioner to be represented by counselor to the trial court. No representation for petitioner at all was given.110 K 1602 K 110 K 998(20)

14. The First District Appellate Court appointed petitioner's appeal to the First District Appellate Defender office for the State of Illinois urder criminal law 110 K 641, 13(7) to guarantee petitioner effective assistance of appellate counsel to grant petitioner the appellate proceduals of a single complete opportunity to demonstrate his alleged constitutional deprivations from the trial court as of right. U.S.C.A. on July 22,2005

15. The Appellate Defender office First District for the State of Illinois contacted petitioner by mail, through the U.S. postal service. Informing petitioner their office has been a signed to represent petitioner's appeal, along with the format/instructions to the appeal process from their office and the Appellate Court First District of Illinois.



16.    The Appellate office mailed petitioner a 20 page
Transcript from the Trial Court proceedings of this matter
Dated July 27 2006 , I recieved August 2 2005.

17.    August 2 , 2005petitioner was assigned an Appellate
counsel, see attached.

18.    After recieving the 20 page transcript from the Appellate
Defender office. That enlisted all the procdeding from the
Trial Court. Petitionerread over the transcript over and over.
Petitioner reviewed the transcript so many times, That petitioner
concluded with out doubt it must be some typo erro, Because
it was surly  petitioner first time ever gaining the knowledge
to any;of the events in the transcript with the eception
ofTr. E - June 20th denial of Motion For Rrconsideration.

19.    Petitioner imediately wrote a letter motion requesting
................ Defender office to focus on the mirits of his actual
innocent newly discofered efidence. Andpetitioner mailed all
documents Trial court sent petitioner and that petitioner sent
Trial court ,for reasons. Petitioner explanned to Appellate
Defender office. Petitioner also  doubted if the trial court
forwarded their office all the documensts.In that letter
Petitioner stated that sŦreet gangs has learned of affiant
affidavit and now threatheN affiant and his family. also
attached.

20.    On August 21, Appellate counsel wrote petitioner sa ying
she is reading petitioner transcript and will arrange for an
unmonitored collect phone call and for petitioner to have ready
any issues he wants  to disscuss about the case.

21.    Appellate court clerk wrote petitioner informingj  petitione
about a new Rule of the appellate court, edplanning why letter
and attachments was forwarded to the Appellate defender offece
letter and attached. Dated, August 25, 2006.

22.    On August the 29, 2006 appellate counsel arranged phone
call during our very brief phbne conversation. Appellate counsel
told petitioner his newly discoverʒe evidence of actual innocence
was hear-say.

23.    Dn to petitioner disblief. petitioner wrote appellate counsel
on August 29,2006 asking for a stamp file copy of the documents
and letter

24.

24.  On August 31,2006, Appellate counsel wrote petitioner
informing petitioner that she has decided along with another
Appellate counsel associate of hers, That petitioner had no
meritorioud issues to be raised and that she filed a Finley
Motion which she enclosed a copy, also informing petitioner
she will ask for permission to withdraw as counsel.ATTACHED

25.  Appellate counsel motioned the court for missing volumes
of the records that effects her performances as aneffective
Appellate counsel attached September 1, 2006.

26. September 8,2006 the appellate court research division
wrotePETITIONER INFORMING PETITIONER THAT HIS APPELLATE COUNSEL
DECISION IS UP TO THE Appellate court and for me to let the
court know by Octobert 13, 2006 why i dissagree and how to
do so, See letter dated. September 8, 2006.

II.
LAGAL ANALYSIS

Prosecutors are prohibited from convincing another to commit
any prejury 18 U.S.C. 1622 (1994)

Prosecutors persuaded Assistance State Attorney and Dyes
to perjure themself. Subornation of perjury that involved instigating
them to commit perjury doing trial and police investigation United
v. Lahey, 55 F. 3d. 1289, 1293 N.3 (7th Cir. 1995). However it was
necessary that the police threaten and beat one witness, that I
ronically never showed up at Rhoiney trial, But the Police department
internally affairs contacted this witness Ray Robinson and showed
him the statements he allegly gave to Assistance States Attorney and
Police, which after Robinson reviewed such statements they force him
to sign, that he never gave. Internal Affairs corrected the report,
Therefore Robinson was no use to prosecutors at Rhoiney trial United
States V. Echeles, 352 F.2d 892, 894 (7th 1965) the knowledge that
perjury was going to be use at Rhoiney trial was the essential ingre-
dient tthat got Rhoiney indicted and convicted. Ray Robinson original
Police Report after beating and I.A. Report after speaking with Ray
Robinson.(attached) See also U.S. v. Derrick 163 F3d 799, 828 (1998)
(holding prosecutors suborned perjury because they knew their wit-
nesses would testify falsely). Due to testimony of Assistance State
Attorney and Dyes, which they both equally addmitted to one or more
lies, with out no persuadsion and answered related to some material
facts falsely (U.S.v. Scop 940 F.2d. 1004, 1011, 7Cir. 1991) Petit-
ioner Rhoiney shows A.S.A. Delcine Thompson and Rooservelt Dyes
made false declarations under oath. Assistance States Attorney Delcine
Thompsom trial testimony that was hear-say, could not be cross examined
unless petitioner Rhoiney fifth admendment right would have been
invoked. Plus prosecutors knew up front Rhoiney was not taking the
stand!! There fore he could not rebutt her false testimony.

THE Illinois Supreme Court decision in Garcia v. Illinois does
apply because it is a new rule of law which should be applied
to cases on post- conviction petitions accompanyed with affidavit
Its holding should have appied to this instant case for an
Evidentiary hearing. Petitioner argues that pursuant to Garcia
v . Illinois 298 App. 3d.34,697 N.E. 2d. 1230 ,232 Ill.
Dec. 300 (1998') Petitioner post-conviction petition denied
with out a evidentiary hering must be reverse. * 35 pursuant
to the Illinois Supreme court mandate, The Illinois cause to
the trial court with instructions to conduct an evidentiary
hearing. * 36 Clearly espouses a new rule of law. A new ru le
is a rule that breaks new ground or imposes new obligations
on the state or federal government Teague 489 U.S. at 301
109 S. Ct. at 1070. The purpose of this rule is to both promote
the state interest in the finality of its criminal convictions
and to validat reasonable, good faith interpetations of existing
precedents made by state courts. Butler v. Mckellar 494 U.S.
407,414, 110 S. ct.. 1212, 1217 (1990).
   As a result a new rule of criminal law will be applied
on collateral review since it falls with in one of two exceptions
Teague 489 U.S. at 307, 109 S.ct. at 1073,  Flowers, 138
Ill. 2d. at 241.The first exception is where the now rule
places certain kinds of primaruy Private individuals conduct
beyound the power of the criminal law making authority to
proscribe. Teague 489 U.S. at 307, 109 S. ct. at 1073. Flowers
138 Ill. 2d. at 241 In other words. the new rule decriminalizes
certain conduct. Gilmore v. Taylor, 508 U.S. 333, 345,113
S, Ct. 2112, 2119 (1993)The second exception applies where the
new rule requires the observance of  those procedures that....
arc implicit in the concept of ordered liberty Teague 489 U.S. a
307, 109 S. cst. at 1073 Flowers 138 Ill. 2d. at 241. The
sscope of this exception is limited to those new procedures
wi th out which the likelihood of an accuarate conviction
is seriously diminished.

   Trial court clearly demonstrated his departure as a Judge
with bias and prejudice. Wh rein petitioner case, petitioner
post conviction proceedings were so fundalmental deficient
and was not governed by section 122-2 1 (b)of the Act (725ILCS 5/
122-2. 1 (b) (west 1996). Petitioner motioned trial court
for appointment of counsel and to file post-conviction petition
as a poor person at the same time petition was file, both
are attached to petition. The matter of petitioner, post-convicti
petition was docketed for further proceedings *619*** 848
 People v. Thomas, 195 Ill. 2d. 37, 40,252, Ill. Dec. 684,
743,N.E. 2d. 552 (2001) The state never answered t he petition
nor moved to dismiss i t. 725ILCS 5/122-5 (west 1996) Thomas
195Ill. 2d. at 40. 252 Ill. Dec. 684, 743 N.E. 2d. 552.



The circuit court never considered the petition and by
the state never answering to the petition, Trial court erro in
not granting petitioner a hearing, because at this stage
the allegations of the post-conviction pe tition , which is
supported by the trial records and accompanying affidavits
Which made a substantial showing of violation of a constitutional
right. This matter should have proceeded to an evidentiary
hearing. People v. Hobley 182 Ill. 2d. 404, 428,231  Ill. Dec.
321,696 N.E. 2d.. 313 (1998).

For purposes of determing whether an evidentiary hearing is
warranted, all petitioner well-pleaded facts in the petition
and in the supporting affidavits must be taken as true. People
v. Caballero, 126Ill. 2d. 248 ,259,128 Ill. Dec. 1533 N.E.
2d..1089 (1989). Certain constitutional issues that were not and could
not have been adjudicated on direct appeal. Towes 182 Ill.2d. at
502, 231. Ill. Dec. 557, 696,N.E. 2d. 1128. Although issues that
was raised on previous post-convictions, but never  decided on in
the circuit court nor on appeal are not barred from consideration
Towns, 182 Ill. 2d at 502-03, 231 Ill. Dec. 557, 696 N.E. 2d 1128.
Petitioner well-pleaded facts showed that delays was not due to his
culpable negligence" 725 ILCS 5/122-1(c)(West 1996)
    The analytical tool that is to be used to determine whether
fundamental fairness requires that an exception be made to a claim
raised in a sucessive petition may be considered on it's merits to
prevent a fundamental miscarriage of justice. Because petitioner
clearly showed actual innocence and showed if not for constitutional
he would not have been found quilty for murder. Hudson 195 Ill. 2d
at 124. 253 Ill. Dec. 712, 745 N.E. 2d. 1246 citing Sawyer v. Whitley,
505 U.S. 333, 112 S.Ct. 2514. 120 L. Ed. 269 (1992)

The appellant first trial counsel, that started appellant trial
and post trial motions was dismissed and reasigned to the appellate
defender office. Before appellant jury trial to the appellate defender
office. Before appellant jury trial was completed. After appellant was
found guilty. Appellant appeal was asigned to the same appellate
defender officeas where first counsel was transfer too, towork. "This
raised a potentrial conflict of interest". A conflict of interestcan
clearly be constructed after a review of the appellate defenders
office finley motions and motion to withdraw. At the very heart of
the appellate defender office conduct, especially since appellate
counsel on this appeal admitted she consultrd with other attorneys
in their office about appelants case. After a clear review of the
records of trial testimony and police reports. This court can clearly
see how prosecutors knowingly used subornated perjury to convict
appellant-petitioner.

The appellant first trial counsel, that started appellant trial and post trial motions was dismissed and reasigned to the appellate defender office.

Before appellant jury trial was completed. After appellant was found guilty. Appellant appeal was asigned to the same appellate defender office as where first trial counsel was now working."This raised a potentrial conflict of interest". A conflict of interest can clearly be construed after a review of the appellate defender office finley motions and motion to withdraw. At the very heart of the appellate defender office conduct, especially since appellate counsel on this appeal admitted she consulted with other attorneys in their office about appelants case. After a clear review of the records of trial testimony and police reports. This court can clearly see how prosecutors knowingly used subornated perjury to convict appellant-petitioner."See #9 of Motion to withdraw From the Appellate Defender Office chief-n-case.

*Send back*
*Tonight*

## REPLY TO INVESTIGATION REQUESTS

Defendant's Name: ___Eugene Rholney___          Docket No. ___B 0173___

Charge: ___Murder___                    Indt. No. ___88-6091___

Requested By: ___Shelby Kaiszin___      Trial Date: _____

Date: ___June 5, 1989___                Judge: ___Scholar___

Investigator Assigned: ___Matt Smith___      Date Completed: ___On going___

Summary of the investigation conducted and date discussed with
Assistant Public Defender.

THE FOLLOWING IS A PROGRESS REPORT:

A/I was requested to locate Ray Robinson and interview him as to his

conversation with Chicago Police D tectives during their investigation

of this case.  Further, A/I was requested to show Ray Robinson page 4

of the Supplementary Report containing the interview conducted of Ray

Robinson by the Chicago Police Detectives and determine if he actually

said the things that are written in that report.

DATE: ___June 2, 1989___

TIME: ___6:45 p.m.___

LOCATION: ___Red Top Parking Lot 1600 W. Madison.___

___Chicago, Illinois___

INTERVIEW: Ray Robinson

A/I located and interviewed Ray Robinson at the above mentioned

location.  A/I showed Ray Robinson page 4 of the Supplementary

Police Report.  A/I also read the report to Ray Robinson

Ray Robinson indicated that some parts of the report are not

true.  A/I asked Ray to indicate the parts of the report that

Investigation continues...
Continued on page 2

are not true. Ray Robinson did so by circling and underlining

the parts of the report that are not true.

A/I recieved a signed statement from Ray Robinson indicating

that he was read and read the mentioned police report and that he

circled or underlined the parts of the report that are not

true and that were not said by him.

Investigation continues...

(Send back)

Date: June 3, 1989
Time: 6:45 pm
Location: Red Top Parking lot 1600 W. Madison Chicago, Il

I, Ray Robinson read and was read the section
of police report #RD K-031-585 in which I
was interviewed by Chicago Police Attorney Tomas & Dr.
Doyle. I circled and underlined everything in that
report that is not true. Everything I circled & underlined
was not said by me. I remember being a little
drunk at the time of this interview. Detective Morris
punched me in the stomach 2 or 3 times and was yelling
at me and calling me names. I was scared during the
interview. I give the above of my own free
will and as a result of no threats or promises made
to me.

Signed X Ray Robinson          X 6-3-89

[signature] 6-3-89
Witness X [signature]

IN THE

APPELLAT ____ COURT OF ILLINOIS

FIRST ____ JUDICIAL DISTRICT

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS ) | Appeal from the Circuit Court |
| ) | of Cook County, Illinois |
| Plaintiff, ) | No. 1-89-2891 |
| ) | |
| v. ) | |
| ) | |
| EUGENE RHOINEY ) | Honorable James M. Schreier, |
| ) | Presiding Judge |
| Defendant. ) | |

## NOTICE OF FILING AND PROOF OF SERVICE

TO: Richard A. Devine
Cook County State's Attorney
300 Daley Center
Chicago, Illinois

Please be advised that I shall file with the Clerk of the Appellat _____ Court of

Illinois, _____ First _____ Judicial Circuit, on _____ the

attached motion and supporting documents.

This certifies that I have served the above named parties with a copy of said motion, by enclosing

same in envelopes, properly addressed, postage prepaid, and by depositing said envelopes in the mail

via the U.S. mail, by way of the Stateville Correctional Center on _____

20 _____.

S/S *Eugene Rhoiney*

SUBSCRIBED AND SWORN TO BEFORE ME THIS

11th DAY OF October 20 06.

_Phyllis Baker_
NOTARY PUBLIC

"OFFICIAL SEAL"
Phyllis Baker
Notary Public, State of Illinois
My Commission Exp. 01/21/2007

# SUPPLEMENTARY REPORT

CHICAGO POLICE – FOR USE BY B.I.S. PERSONNEL ONLY

All descriptions and statements in this entire report are approximations or summarizations unless indicated otherwise.

**4. DATE OF ORIG. OCCURRENCE—TIME** 24 Jan. '88 0940

| 1. OFFENSE-CLASSIFICATION LAST PREVIOUS REPORT | 1 UCR OFF. CODE | 2. ADDRESS OF ORIG. INCIDENT/OFFENSE | 3. BEAT OF OCCUR. |
|---|---|---|---|
| HOMICIDE/1st. DEGREE MURDER | 0110 | 3552 W. GRAND ☒ VERIFIED ☐ 2 CORRECTED | 1121 |

**5. VICTIM'S NAME AS SHOWN ON CASE REPORT** EDWARDS, Stephen — CORRECT ☒ YES ☐ NO — **7. BEAT ASSIGNED** 5432

**8. TYPE OF LOCATION OR PREMISE WHERE INCIDENT/OFFENSE OCCURRED** PARKING LOT — LOCATION CODE 330 — **9. NO. OF VICTIMS** 1 — **10. NO. OF OFFENDERS** Unk.

**50. OFFENSE/CLASS. THIS DATE** D N A — UNIT NO. 1642 — ☒ 2 PROGRESS

**80. NARRATIVE**

FIELD INVESTIGATION: PROGRESS REPORT

DATE & TIME ASSIGNED: 29 Jan. 88 at 0830 hrs.

INTERVIEWED: GASTON, Jackie Lee M/B 38 yrs. D.O.B. 1 Sep 4_
729 S. Saxton, Aurora Ill. N/P. Married
Unemployed.

RE-INTERVIEWED: ROBINSON, Ray M/B 30 yrs. DOB 26 Jun 57
111 N. Wood # 1208

Continued On Page # 2

Normal

**91. DATE THIS REPORT SUBMITTED** 31 Jan. 1988 1500

**93. REPORTING OFFICER** Det. D. Dal Ponte 14241

**94. REPORTING OFFICER** Det. G. Harris 2510

**95. DATE APPROVED** 31 JA 88 1700

HOMICIDE/1st. DEGREE MURDER                    PAGE # 2                      K 031-525
EDWARDS,Stephen                                                             31 Jan. 88

RE-INTERVIEWED;                                LEWIS, Carolyn F/B 36yrs.DOB 28Nov. 51
                                               4240 W Gladys 1st. Fl. 533-0273

                                               PIERCE, Janice F/B 31yrs.DOB 11 May 56
                                               3841 W. Adams 1st. Fl.722-5134

                                               RHOINEY,Eugene M/B 37 yrs.DOB.20 Nov.5
                                               1315 S. Kolin 1st. Fl.

                                               SULLIVAN,Sharon F/B 24yrs.DOB 25 Nov 6
                                               3841 W. Adams 1st. Fl.722-5134

INVESTIGATION;                                 On 29 Jan 88 R/D's were given informat
                                               that a bed sheet matching the one used
bind the victim was recovered from the basement apt. at 3841 W.Adams.The R/D'
obtained Search Warrant # 88 S.W.4388, approved by Felony Review ASA Grussel
signed by Judge Ryan of Br, 43 on 29 Jan. 88.
                                               R/D's on 29 Jan.88 at 1230 hrs. along
                                               with Sgt. Johnson of this command serv
the search warrant at 3841 W. Adams.A copy of this warrant was given to the o
er of the building Janice Pierce.Mobile Crime Lab # 9608 responded to this a
ress and processed the basement and the apartment therein as a possible crime
scene

                                               On 31 Jan. 88 Warrant # 88 S.W.4388 wa
                                               returned to Br.66 by Sgt. Carson of th
011 th district.

                                               The occupants of the house,Janice Pier
                                               Sharon Sullivan and Ray Robinson were
brought into the Area to be re- interviewed.Sharon Sullivan upon being re-int
viewed related the following which is in summary and not verbatim;

SULLIVAN,Sharon                                SULLIVAN related the same basic facts
                                               given in an earlier interview.However
she now recalls that another M/B was present in the home on Saturday night.
This person was a man named JACKIE GASTON she said this man was a friend of
JANICE PIERCE'S and that he came to the house early in the evening,and she
(SHARON) overheard him tell JANICE that he had seen STEPHEN that evening.She
could at nothing further to this investigation.
                                               The R/D's then re-interviewed JANICE
PIERCE the following is a summary of her statement and is not verbatim;

PIERCE, Janice                                 Recalled that JACKIE GASTON was at her
                                               home on Saturday 23 Jan. 88.She recall
that he had come over in the evening and had called her aside.He told her tha
seen STEPHEN over at the drug house and that he was acting like a fool.JANICE
could not recall being told anything more by JACKIE.
                                               R/D's then re-interviewed Ray Robinson
who related the following which is a summary and not verbatim;

ROBINSON,Ray                                   related the same facts as he gave in a
                                               earlier interview.He did after being a
ed,recall that JACKIE GASTON was in JANICE'S home on Sat. evening.He said he
was sleeping and when he awoke all his cigarettes had been smoked by JACKIE.
EUGENE RHOINEY sent JACKIE out to buy more cigarettes for Ray.He could add no
hing further.

Continued On Page # 3

INVESTIGATION CONT';                     On Jan. 30 at about 1045 hrs. the R/D
                                         returned to 3841 W. Adams and found
JACKIE GASTON asleep in the basement.GASTON was transported into the Area to
interviewed,the  following is a summary of what he said and is  not verbatim

GASTON,Jackie                              Stated that he last saw STEPHEN EDWAR
                                           on 23 January (Saturday) at about 183
1900 hrs.He said he JACKIE was at a dope house at Jaskson and Homan and that
STEPHEN had come there looking for him.GASTON recalled that STEPHEN had a VC
and a color TV that he was trying to sell.He said that the man that ran the
house did not trust STEPHEN and that he would not deal with him.STEPHEN then
tried to get GASTON to come with him to try to get ride of this merchandise,
GASTON refused.GASTON said he went back into the dope house and STEPHEN walk
away,only to return seconds later to ask GASTON to go with him again.GASTON
told STEPHEN that he wasn't going anywhere and STEPHEN left.GASTON recalled
STEPHEN was driving a Burgundy colored car.He said he stayed at the dope hou
for a couple of hours and then walked to JANICE PIERCE'S house getting there
about 2030 or 2100 hrs.GASTON tecalled that SHARON SULLIVAN had let him intc
house and that only RAY,SHARON and himself were in the home.EUGENE RHOINEY a
JANICE came home later and they all sat around watching TV.GASTON said he ha
smoked up all of RAY'S cigarettes and that EUGENE had sent him out to buy mc
when he returned with the cigarettes he  told EUGENE that he needed money tc
get home,EUGENE told him to clean the basement and that he would  pay him.He
said he swept the basement out and finished about 0400 hrs.(Sunday morning).
he then went back upstairs where he fell asleep.He said he woke up about 080
hrs. and EUGENE paid him for cleaning the basement ($7.00).As he was getting
ready to leave two friends of  his from Aurora (KENNY & MICHEAL) arrived anc
drove him back to Aurora.GASTON said he has not left Aurora since that morni
and only returned to Chicago on Friday 29 Jan.He said that he had  met STEPH
through JANICE and EUGENE a couple of months ago and that he  knew STEPHEN v
a dope addict.GASTON could add nothing further at this time.
                                         The R/D's then contacted CAROLYN LEW:
and she agreed to come into the Area to be re interviewed the following is a
summary of what she related and is  not verbatim;

LEWIS,Carolyn                            Since LEWIS drives a Burgundy Mercur:
                                         Cougar she was interviewed to ascert:
whether or not STEPHEN could have had her car at the dope house on 23 Jan.8
(Saturday).Lewis stated as she  had in an earlier interview that after she
STEPHEN at JANICE'S house on Saturday morning she had not seen him again.Sh
said she  came home from work at about 1730 hrs.Saturday evening and remain
home all night.When she woke up the next morning her auto was parked in the
spot and had not been moved.LEWIS further stated that as far as she knew ST
did not have keys to her car,however it is possible that he had a set of ke
made,since he did take  her car on one occassion to work on it.
                                         LEWIS added that on 26 Jan.88(Tuesda
                                         after detectives PUFPAF & WENDT had
her home EUGENE RHOINEY called her on the phone and wanted to come to her h
and talk about what the police had said.LEWIS said EUGENE wasvery concerned
about the fact that the police had taken a sheet that was similar to the on
STEPHEN was tied up in,from his home.LEWIS refused  to let him come over an
agreed to call him in the morning and would if he still wanted to talk abou
incident.She called the next morning and agreed to meet at Sacramento & Jac
She said that EUGENE got in her car and they compared what the police had as
each of them.

continued On Page # 4